FILED _____ LODGED
RECEIVED _____ COPY

7 | OCT 1 5 2012 | 7

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

James Arnett,

      Plaintiff,

vs.

Benjamin Snow Howard, et al.,

      Defendants.

No. 4:12-CV-00311-DCB-DTF

**MEMORANDUM IN OPPOSITION**

## Opposition To Defendants' Motion To Dismiss

Representing himself *Pro Se*, Plaintiff James Arnett filed this Complaint [Doc. 1] against Defendants Howard, et al., in the United States District Court For The District Of Arizona on 24 April 2012.

Plaintiff alleges that Defendant Howard has acted as authorized agent for [a jurisdictional Diversity of] additionally named Defendants, as well as acting as an individual, in the contracting of Plaintiff, within the District of Arizona, for the manufacture of an Audio Book,  TV Commercial Spot, and a Motion Picture of three hours in length, based upon Defendant Howard's text book, "Overcoming Life's Trauma", which were manufactured and produced by Plaintiff;

1    Whereas, Defendants have withheld and refused to make complete payment

2    for goods and services, despite commissioning the manufacture thereof, receiving,

3    accepting, and using Plaintiff's goods and services on his internet website,

4    breaching contract, resulting in significant damages to Plaintiff, by the alleged

5    actions and by definition under the Arizona Revised Statues (A.R.S.) Title 47.

6

7    Additionally, Plaintiff alleges that Defendants defrauded Plaintiff on the

8    misrepresentation and transfer of a 1994 Suzuki motorcycle [Exhibit A], in regard

9    to its year of manufacture and its very dangerous condition, as well as ongoing

10   acts, notably inconsistent with Good Faith, to avoid making any substantial or

11   complete payment for the goods and services provided by Plaintiff, which cross

12   over into Fraud, by alleged actions and by definition under A.R.S., Title 44.

13

14   Whereas, Defendants have disregarded all efforts to settle this debt prior

15   to litigation [Exhibit B], and by disregarding the Plaintiff's attempts to serve

16   Waiver and Summons, and by disregarding the Waiver issued by the United States

17   Marshal Service, until personal Service was accomplished by the United States

18   Marshal on 6 September 2012 [Doc. 17], additional and ongoing damages have

19   been caused by Defendants to Plaintiff, as both direct and as cascading damages.

20

21   Defendants have filed  a "Motion To Dismiss & Memorandum In Support"

22   [Doc. 18] on 26 September 2012, asserting (1) Lack Of Personal Jurisdiction,

23   (2) Improper Venue, (3) Failure to state a claim upon which relief can be granted.

24

25   Therefore, Plaintiff OPPOSES Defendants' Motion To Dismiss [Doc. 18]

26   and respectfully requests that this honorable Court deny Defendants' Motion, in

27   whole or in part, on the following grounds:

28

1

## DOCUMENT STRUCTURE

2

3

4  **I.**   **PERSONAL JURISDICTION IS PROPER – page 5.**

5       A.    PRIMA FACIE EVIDENCE IS SUFFICIENT – page 5.

6       B.    GENERAL PERSONAL JURISDICTION – page 6.

7       C.    SPECIFIC  PERSONAL JURISDICTION – page 6.

8             (Arizona Long-Arm Statute)

9             1.    Purposeful Availment/Purposeful Direction – page 7.

10                  (*Calder* Test)

11                        (1)    Intentional Act

12                        (2)    Expressly Aimed at the Forum State

13                        (3)    Caused Harm

14            2.    Arising Out of – page 10.

15                  (Ninth Circuit "But For" Test)

16            3.    Fair Play and Substantial Justice – page 11.

17                  (Ninth Circuit "Reasonable" Seven Factors)

18                        (1)    The extent of a defendant's purposeful interjection.

19                        (2)    The burden on the defendant in defending in the forum.

20                        (3)    The extent of conflict with the sovereignty of the

21                               defendant's state.

22                        (4)    The forum state's interest in adjudicating the dispute.

23                        (5)    The most efficient judicial resolution of the controversy.

24                        (6)    The importance of the forum to the plaintiff's interest in

25                               convenient and effective relief.

26                        (7)    The existence of an alternative forum.

27            4.    Analysis – page 14.

28

1      D.     ADDITONALLY NAMED DEFENDANTS (ALTER EGO) page 15.

2           1.     Defendant Lifeline Media LLC – page 17.

3           2.     Defendant Nationwide Affordable Housing Inc. - page 18.

4           3.     Defendant Ben Howard Trust – page 19.

5           4.     Analysis – page 21.

6  **II.**   **VENUE IS PROPER - page 22.**

7      A.     United States Code 28 U.S.C. § 1391(a)(2) – page 22.

8      B.     The Burden on Plaintiff  - page 23.

9      C.     Analysis – page 24.

10  **III.**  **MOTION FOR LEAVE OF COURT TO AMEND – page 25.**

11  **IV.**  **SUMMARY – page 25.**

12

13              **ATTACHMENTS (Prima Facie Evidence)**

14

15  Exhibit A – Plaintiff's 1994 Suzuki VS1400 Motorcycle.

16  Exhibit B – Defendant Howard's entire pre-litigation negotiations.

17  Exhibit C – Affidavit of Mr. Edgar A. Ybarra.

18  Exhibit D – Affidavit of Mr. Steven M. Adelson.

19  Exhibit E – Airline Ticket purchase.

20  Exhibit F – Field Phone records.

21  Exhibit G – Defendants' online public exhibition of Motion Picture.

22  Exhibit H – Corporate record Defendant Lifeline Media LLC

23  Exhibit I – Corporate record RFA Financial LLC

24  Exhibit J – Corporate record Defendant Nationwide Affordable Housing Inc.

25  Exhibit K –  Motorcycle Bill Of Sale and Insurance card.

26  Exhibit L – Odometer reading in Utah (at over 10K miles).

27  Exhibit M – Motorcycle brake pad damage (at over 11K miles).

28  Exhibit N – Proof of minor Payments by Defendant Howard.

# I. PERSONAL JURISDICTION IS PROPER

Regarding Defendant BENJAMIN SNOW HOWARD;

## A. PRIMA FACIE EVIDENCE IS SUFFICIENT

Whereas, Defendant Howard has NOT denied his business trip into the Forum State, in or around February 2011, for the express purpose of soliciting the manufacture of goods and the acquisition of services from Plaintiff - now, "Prima facie" evidence in the form of two affidavits from Mr. Edgar A. Ybarra (an Emmy Award winning television journalist in 2011 and in 2012) [Exhibit C], and from Mr. Steven M. Adelson (a freelance journalist and writer) [Exhibit D], are attached to this document in support, placing Defendant Howard at the Tucson, Arizona work studio of Plaintiff Arnett, in or around February 2011.

Plaintiff believes, that when a court determines an issue of Personal Jurisdiction based upon affidavits, *"[the] very limitations dictate that plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss."* *Data Disc, 557 F.2d at 1285*, as the *Schwarzenegger* Court stated:

> *In such cases, we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction. Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between parties over statements contained in the affidavits must be resolved in the plaintiff's favor.*

*Schwarzenegger, 374 F.3d at 800 (citations and internal quotations omitted).*

1   Because no statutory method for resolving the personal jurisdiction issue exists,

2   Plaintiff believes, the District Court determines the method of its resolution. See

3   *Data Disc, 557 F.2d at 1285 (citing Gibbs v. Buck, 307 U.S. 66, 71-72 (1939)).*

5   Therefore, Plaintiff believes his Prima Facie evidence is sufficient as the

6   foundation for the Jurisdiction that this honorable Court has over Defendants.

8   ## B. GENERAL PERSONAL JURISDICTION

10   Plaintiff has NOT asserted that General Jurisdiction exists over Defendants.

12   ## C. SPECIFIC  PERSONAL JURISDICTION

14   The elements constituting sufficient Minimum Contacts, even by

15   telephonic means, appear to be met under Arizona Supreme Court decision in *The*

16   *Planning Group of Scottsdale, v. Lake Mathews Mineral Properties, LTD, CV-10-*

17   *0189-PR (Ariz. 2011)*, whereby, the Arizona "Long-Arm" Statute applies.

19   That Court articulated, jurisdiction hinges on one question: "*Considering all*

20   *of the contacts between the defendants and the forum state, did the defendants*

21   *engage in purposeful conduct for which they could reasonably expect to be haled*

22   *into the state's courts with respect to that conduct?*" Plaintiff asserts that

23   Defendants fully expected their liabilities to be held up to the laws and statutes of

24   Arizona, and deliberately refused, on every occasion, the demand for execution of

25   a promised, formal contract, in a deliberate attempt to frustrate Arizona Law.

27   Therefore, Plaintiff DOES assert that Specific Personal Jurisdiction exists

28   over Defendants, under the Arizona Long-Arm Statute by the following reasoning:

1   **1. Purposeful Availment/Purposeful Direction**

2

3        Purposeful availment requires affirmative conduct which allows or promotes

4   the transaction of business within the forum. *Decker Coal Co. v. Commonwealth*

5   *Edison Co., 805 F.2d 834, 840 (9th Cir. 1986).*

6

7        Plaintiff believes, a defendant has engaged in affirmative conduct and

8   thereby "purposely availed himself of the benefits of a forum if he has deliberately

9   'engaged in significant activities within a State or has created "continuing

10  obligations" between himself and the residents of the forum.'" *Gray, 913 F.2d at*

11  *760* (quoting *Burger King, 471 U.S. at 475-76*); see *Cybersell, Inc., 130 F.3d at*

12  *417* (stating that "the 'purposeful availment' requirement is satisfied if the

13  defendant has taken deliberate action within the forum state or if he has created

14  continuing obligations to forum residents") (citing *Ballard v. Savage, 65 F.3d*

15  *1495, 1498 (9th Cir. 1995)).* Additionally, purposeful availment is present when

16  the defendant "[has] performed some type of affirmative conduct which allows or

17  promotes the transaction of business within the forum state." *Sher, 911 F.2d*

18  *at1362* (quoting *Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir.*

19  *1988)).*have arisen. See *Terracom, 49 F.3d at 561.*

20

21        Because Defendant Howard allegedly traveled into the Forum State for the

22  express purpose of commissioning the manufacture of significant goods and for

23  the acquisition of services from Plaintiff [Doc. 1 ¶1-3], both in person and later,

24  remotely by telephone [Doc. 1 ¶4], as well as Defendant Howard allegedly

25  booking [Exhibit E] and purchasing the airline travel for Plaintiff [Doc. 1 ¶4], he

26  performed acts aimed at, and had a direct effect in the Forum [Exhibit N].

27  Notably, Defendant had provided Plaintiff with a field phone as early as

28  November 2010 [Exhibit F] for Minimum Contacts by paying the bill as a

1   continuing obligation for (CSS coding) consulting services on the identical matter

2   from which this case arises, for seven months within the Forum, prior to Plaintiff

3   leaving for four months in Utah. Defendant Howard has purposefully availed

4   himself of the laws of Arizona, by affirmative conduct which allowed and

5   promoted the transaction of business with the Forum.

6

7        Purposeful direction is evaluated under the three-part "effects" test found in

8   the Supreme Court's decision of *Calder v. Jones, 465 U.S. 783 (1984)*. The Ninth

9   Circuit described in its Calder three-part test, as follows:

10

11        *Calder stands for the proposition that purposeful availment is satisfied even*

12        *by a defendant "whose only 'contact' with the forum state is the 'purposeful*

13        *direction' of a foreign act having effect in the forum state." . . . [Under]*

14        *Calder, the "effects" test requires that the defendant allegedly have*

15        *(1) committed an intentional act, (2) expressly aimed at the forum state,*

16        *(3) causing harm that the defendant knows is likely to be suffered in the*

17        *forum state.*

18

19   See *Schwarzenegger, 374 F.3d at 803 (citing Dole Food, 303 F.3d at 1111*

20   *(internal citations omitted))*. Consistent with the purposeful direction analysis,

21   Plaintiff asserts that Defendant Howard aimed his conduct at Arizona and,

22   likewise, that Arizona suffered the effect of such conduct. Keeping in mind that

23   not every "foreign act with foreseeable effects" in the forum state will support a

24   finding of specific jurisdiction, *Dole Food Co., 303 F.3d at 1112 (citation*

25   *omitted)*, Defendant's alleged conduct will be scrutinized under the Calder

26   "effects" test to determine the appropriateness of finding jurisdiction here, under

27   the following criteria:

28

1              (1) *Intentional Act*

2          Because Defendant allegedly received extensive consulting by phone from

3      Plaintiff, then traveled into Tucson, Arizona, for the express purpose of acquiring

4      services from Plaintiff, by making an offer of equity ownership and paying all

5      personal expenses to facilitate the manufacture of goods, Defendant received

6      partial services (CSS Web coding), before leaving the Forum with an agreement to

7      begin manufacture at a later date [Doc. 1, ¶1-4], said contact and conduct are

8      sufficient to constitute the commission of an intentional act.

9

10              (2) *Expressly Aimed at the Forum State*

11         Plaintiff asserts that Defendant Howard expressly aimed his conduct at

12     Arizona by individually targeting Plaintiff, a resident of Arizona.  The effect of the

13     intentional acts of Defendant Howard, having been expressly aimed at the Forum

14     State, have caused the plaintiff grievous harm.

15

16              (3) *Caused Harm*

17         Plaintiff has yet to be fully or substantially compensated by Defendant

18     Howard for the production of a Motion Picture of three hours in length,

19     predominantly comprised of "green screen" and computer animated visual effects,

20     requiring substantially more labor and expertise to manufacture than a

21     traditionally filmed product; an Audio Book product; and a broadcast standard TV

22     Commercial Spot [Motion to enter Prima Facie evidence on Disc to follow].

23     Plaintiff alleges that Defendant failing to perform had the effect (direct and

24     indirect) of injuring Plaintiff, a resident of the Forum State [Doc. 1].

25

26         Plaintiff believes that the final prong of the Purposeful Direction Test is

27     satisfied and asserts that Defendant purposefully directed his activities at Arizona

28     and that Defendant should have reasonably anticipated being sued in Arizona.

## 2. Arising Out of

The Ninth Circuit has adopted a "BUT FOR" test for determining whether a plaintiff's cause of action arises out of the defendant's forum-related activities. *Doe, 112 F.3d at 1051*; see *Omeluk, 52 F.3d at 271*. The "arising out of" requirement is met if, but for the contacts between the defendant and the forum state, the cause of action would not have arisen. See *Terracom, 49 F.3d at 561*.

Plaintiff's claims arise out of Defendant's Forum-related activities, directed at Plaintiff, a resident of the Forum. This second prong requirement for Specific Jurisdiction is met if Plaintiff would not have been injured "BUT FOR" Defendant Howard's conduct in the Forum.

Defendant Howard's alleged non-payment for goods and services, and public exhibition of the Motion Picture and TV Commercial Spot [Exhibit G] is sufficient to show harm to Plaintiff in his principal place of business in Arizona. As a result of Defendants' alleged conduct, Plaintiff has lost his work studio in Tucson, Arizona, which has caused a suspension of business operations and income - BUT FOR Defendant Howard's conduct and non-payment, no injury would have occurred.

**3. Fair Play and Substantial Justice**

The third and final prong is whether the exercise of jurisdiction comports with traditions notions of fair play and substantial justice, as to make it reasonable. The Ninth Circuit considers the following Seven Factors in determining whether the exercise of specific jurisdiction over a defendant is reasonable:

(1)     the extent of a defendant's purposeful interjection;

(2)     the burden on the defendant in defending in the forum;

(3)     the extent of conflict with the sovereignty of the defendant's state;

(4)     the forum state's interest in adjudicating the dispute;

(5)     the most efficient judicial resolution of the controversy;

(6)     the importance of the forum to the plaintiff's interest in convenient and effective relief;

(7)     the existence of an alternative forum."

See *Ziegler, 64 F.3d at 475* (citing *Terracom, 49 F.3d at 561*) (finding that all seven factors must be weighed, but none are dispositive); see also *Worldwide Volkswagen, 444 U.S. at 292* (listing several of the seven factors). These Seven Factors demonstrate the following:

**(1)     The extent of a defendant's purposeful interjection**

Defendant Howard's purposeful interjection of his alleged activity and conduct were sufficient, by personal, physical interjection into the Forum, as well as remotely, by telephonic means, to "bookend" the damages his alleged conduct and purposeful interjection effected in the Forum State, as well as making a subsequent purposeful interjection into the Forum to solicit and contract Plaintiff's associate, Mr. Gerren Ard from the Forum State, in the direct matter of this Case.

1    Defendant Continued Obligations with Plaintiff for seven months in this

2    Forum, from November 2010 until Plaintiff departed for Utah in June 2011 as

3    agreed,  having provided Plaintiff with a Cricket field phone with a Tucson (520)

4    area code number [Exhibit F], from which to gain ongoing development

5    consultation services in the direct matter of this Case.

6

7    Additionally, Defendant allegedly had set up by himself, as the means of

8    Plaintiff's transportation home (of which, approximately half the journey was on

9    the highways of the Forum), as an alleged attempt to create the conditions most

10   favorable to causing a highway wreck, as a covert means, with a high probability

11   of relieving himself of his substantial debt to Plaintiff.

12

13   **(2)    The burden on the defendant in defending in the forum**

14   The burden upon Defendants in defending a lawsuit in Arizona rather than

15   in Utah is slight due to the geographic proximity of Utah, a neighboring state,

16   fully sharing its southern border with Arizona. Defendant Howard is allegedly an

17   individual of means, with major interests in approximately 50 companies, trusts

18   and accounts in Utah, Texas, Idaho, Mondiaen in Amsterdam, properties in

19   Nevada [Exhibit O], and other interests in Mexico, with substantial assets,

20   estimated at well over two million dollars.  Additionally, Defendants maintain

21   their representing attorney in Tempe, Arizona, who has ECF filing access, and

22   who has full electronic and telephonic communications with Defendants. It is also

23   yet to be determined if the physical presence of Defendants in this Forum are even

24   necessary or required, beyond their attorney, at this early stage of the proceedings.

25

26   Whereas, Plaintiff is representing himself *Pro Se*, and does indeed need to

27   appear physically for requisite filings, appearance hearings, trial, and any other

28   proceedings which this honorable Court may require of him.

1    Additionally, Plaintiff does not enjoy ECF filing access, nor enjoys regular
2  internet access, but needs to physically travel to the District Courthouse in Tucson,
3  in order to file in person. Traveling to any alternate forum state to file is unfeasible
4  and impossible for Plaintiff, for the reason of damages already allegedly caused by
5  Defendants, requiring Plaintiff to proceed in this case under the *In Forma*
6  *Pauperis* (I.F.P) provision of the Rules.

7

8    **(3)     The extent of conflict with the sovereignty of the defendant's state**
9    This matter extends no conflict with the sovereignty of the state of Utah, as
10  no prior claims have been filed by Plaintiff with any court of that forum state.

11

12    **(4)     The forum state's interest in adjudicating the dispute**
13    Arizona has a substantial interest in protecting and granting relief to its
14  residents from breeches of contracts, frauds, etc., regardless of where the alleged
15  defendant resides.

16

17    **(5)     The most efficient judicial resolution of the controversy**
18    Because the substantial body of evidential proofs are located in Tucson,
19  Arizona, as well as Plaintiff's key and primary witness (Mr. Ard does not have the
20  wherewithal to travel to Utah), the most efficient judicial resolution of the
21  controversy can only be accomplished within the Forum State. Any other forum
22  would, in effect, make proceeding impossible for Plaintiff, and effectively end any
23  reasonable expectation and possibility of obtaining any adjudication for relief.

24

25    **(6)     The importance of the forum to the plaintiff's interest in**
26          **convenient and effective relief**
27    Because it is impractical [and otherwise impossible] for Plaintiff to pursue
28  relief in any other forum, whereas, Defendants have the wherewithal to engage an

attorney in this Forum, lodge and travel at will by a surplus of means, Fair Play and Substantial Justice demand a Forum where the aggrieved party would not be effectively forced into certain dismissal by default. It should also be noted that Arizona Law materials are fully available to Plaintiff to research at the District Court and public libraries within this Forum.

### (7)    The existence of an alternative forum

Four Defendants are named in this matter: (1) Defendant Howard, a resident of Utah; (2) Defendant Lifeline Media LLC., a Utah entity; (3) Defendant Nationwide Affordable Housing Inc., a Texas corporation; (4) Defendant Ben Howard Trust, an Idaho trust. If this Case is removed to any alternate forums, that would, in effect, allow Defendants to create four cases in redundancy, as a burden on a plurality of District Courts, and make proceeding impossible for Plaintiff, effectively ending any reasonable expectation and possibility of obtaining any adjudication for relief. The Federal Rules of Civil Procedure may provide for Consolidation under Rule 42(a).

## 4.    Analysis

A non-resident defendant who purposely directed activities at Forum residents must present a compelling case that the presence of other considerations would render jurisdiction unreasonable. *Burger King Corp. v. Rudzewics, 471 U.S. 462, 105 S.Ct. 2174 (1985).* Defendants' arguments are uniformly insufficient and conclusionary, thereby failing to present a compelling case to dismiss.

Therefore, based on the foregoing Due Process being satisfied, Plaintiff respectfully requests that this honorable Court deny Defendants' Motion To Dismiss Defendant Benjamin Snow Howard from Specific Personal Jurisdiction.

## D. ADDITONALLY NAMED DEFENDANTS (ALTER EGO)

Whereas, Defendant Howard is the authorized agent and sole member of record for each entity additionally named as Defendants in this case [Exhibit H & Exhibit J], Plaintiff asserts that each of the same are an "Alter Ego" of Defendant Benjamin Snow Howard, and respectfully requests that this honorable Court find Specific Personal Jurisdiction over the additionally named Defendants, as it may over Defendant Howard, under the Arizona *Alter Ego* Doctrine.

Plaintiff alleges that it would be unjust to allow the additionally named Defendants to escape their liabilities in this Forum because those entities are nothing more than the conduits through which Defendant Howard carries out his personal and professional business, in such a way that unity of interest AND ownership are combined, to the degree that any distinction between the personalities of the corporations and the owner(s) have ceased to exist.

Plaintiff alleges that Defendant Howard improperly and unilaterally used trust and corporate funds and assets for his personal benefit with full Unity Of Control, that he breached contract and committed Fraud by misrepresenting the motorcycle owned by his trust, offering it as a "bonus" in addition to the [still unpaid] contract. He continued to breach contract by fraudulent means at every turn, while personally sanctioning Fraud and promoting injustice under the corporate form of both Defendant Lifeline Media LLC., who never paid for the manufacture of the Motion Picture and other media, whereas, Defendant Nationwide Affordable Housing Inc. was the alleged source for Defendant Howard's funding for his personal and business expenses directly and materially related to the contract in breach.

1    Ultimately, any distinction between Defendant Lifeline Media and
2    Defendant Howard ceased to exist when the Motion Picture (conspicuously
3    marked as "presented by Lifeline Media LLC." in the opening credits) was
4    personally placed online by Defendant Howard at his *www.benshoward.com*,
5    and his *www.benshoward.net* personal web sites, fed via embedded link from his
6    Vimeo service account at *www.vimeo.com/33328737*.
7
8    Plaintiff believes that the individual defendant is "*held liable for the torts of*
9    *the corporation*" if the Plaintiff can show that "*(1) [the individual] authorized or*
10   *participated in the actions or (2) the corporation is [the individual's] alter ego.*"
11   *Maloof v. Raper Sales, Inc., 113 Ariz. 485, 488, 557 P.2d 522, 524 (1976)*; see
12   *Rhoads v. Harvey Publications, Inc., 124 Ariz. 406, 408, 604 P.2d 670, 672 (App.*
13   *1979)*. "Under an alter ego theory, plaintiff must prove (1) unity of control and (2)
14   that observance of the corporate form would sanction a fraud or promote
15   injustice." *Gatecliff v. Great Republic Life Ins., 170 Ariz. 34, 37, 821 P.2d 725,*
16   *728 (1991) (citing Dietel v. Day, 16 Ariz. 206, 208, 492 P.2d 455 (App. 1972))*.
17
18   Unity of control means there "is such a unity of interest and ownership that
19   the personalities of the corporation and the owners cease to exist."
20   *Bischofshausen, Vasbinder & Luckie v. D.W. Jaquays Min. & Equip. Contractors*
21   *Co., 145 Ariz. 204, 208–09, 700 P.2d 902, 906–07 (App. 1985) (quoting Ize*
22   *Nantan Bagowa, v. Scalia, 118 Ariz. 439, 442, 577 P.2d 725, 728 (App. 1978))*.
23
24   An officer or shareholder need not be the sole shareholder to have unity of
25   control over a corporation. See *Firstmark Capital Corp. v. Hempel Financial*
26   *Corp., 859 F.2d 92, 93 (9th Cir. 1988)* (defendant president and chief executive
27   officer who "owned 95% of the stock" in the corporation was found to have unity
28   of control). There is unity of control when a defendant CEO "disregard[s]

1    corporate formalities" and "use[s] corporate funds for his own . . . personal
2    purposes . . . [and] makes all the important management decisions for [the
3    corporation] including those that result in the corporate activity that underlies the
4    alter ego and fraud judgment." *Id.*

5

6        Considering each criterion that establishes Alter Ego, the additionally named
7    Defendants in this case appear to qualify as the Alter Egos of Defendant Howard:

8

9    **1.    Defendant Lifeline Media LLC**

10        Plaintiff alleges that Defendant Lifeline Media LLC., recently discovered to
11   be a Utah entity [Exhibit H], is an Alter Ego of Defendant Howard, created in or
12   around June 2011, by renaming an existing LLC under his sole control, formerly
13   named "RFA Financial UT, LLC." [Exhibit I], renaming it "Lifeline Media LLC."
14   in the presence and witness of Plaintiff. This action was accomplished online by
15   Defendant Howard, who consulted no one in the corporate form to make the name
16   change, but merely consulted Plaintiff for a "catchy" brand name for his "new"
17   media company. Defendant Howard stated that the purpose of the renaming action
18   was to save himself money, instead of paying for a new LLC filing (paraphrased).

19

20        Plaintiff alleges that equity interest in the LLC, and interest in its
21   products (which Plaintiff was manufacturing) were claimed by Defendant Howard
22   to be determined by him, once he knew the "true worth" of the company and its
23   assets. By continually alternating promises between equity ownership and "work
24   for hire" payment, either from the LLC or from himself, any distinction between
25   Defendant Howard and Defendant Lifeline Media LLC. had ceased to exist.

26

27        Plaintiff alleges that on or around 8 December 2012, Defendant Howard
28   uploaded the Motion Picture, for public exhibition, which was conspicuously

1   marked in the opening credits as a "presentation" of Defendant Lifeline Media
2   LLC., demonstrating Unity Of Control AND the observance of the corporate form,
3   sanctioning a fraud and promoting injustice, meeting the criteria for Alter Ego.

4

5       Therefore, Plaintiff respectfully requests that this honorable Court deny
6   Defendants' Motion To Dismiss Defendant Lifeline Media LLC. from Specific
7   Personal Jurisdiction, and find that Venue is Proper, under the *Alter Ego* Doctrine.

8

9   **2.      Defendant Nationwide Affordable Housing Inc.**
10      Plaintiff alleges that Defendant Nationwide Affordable Housing Inc., a
11  Texas entity [Exhibit J], is an Alter Ego of Defendant Howard, under his sole
12  management as its authorized agent since its inception in 1995, which is NOT in
13  good standing with the Texas Secretary Of State, because it has not satisfied all
14  franchise tax requirements as of 30 September 2012.

15

16      Plaintiff alleges that Defendant Howard transferred and used funds
17  unilaterally from Defendant Nationwide Affordable Housing Inc., at will, to fund
18  the operations of Defendant Lifeline Media LLC., and to pay for business and
19  personal expenses prior to the creation of the LLC., demonstrating Unity Of
20  Control AND the observance of the corporate form sanctioning a fraud and
21  promoting injustice against Plaintiff, meeting the criteria for Alter Ego.

22

23      Further, Defendants' Corporate Disclosure Statement filing [Doc. 19] stated
24  that  no parent corporation exists for any of the Defendants. However, Defendant
25  Howard stated to Plaintiff that Defendant Nationwide Affordable Housing Inc.
26  was indeed the main funding source for Defendant Lifeline Media LLC., as he
27  maintained and transferred his assets through corporate entities for tax purposes.
28  Defendant Howard's I.R.S. documentation shall substantiate this allegation.

1    Therefore, Plaintiff respectfully requests that this honorable Court deny

2    Defendants' Motion To Dismiss Defendant Nationwide Affordable Housing Inc.

3    from Specific Personal Jurisdiction, and find that Venue is Proper, under the *Alter*

4    *Ego* Doctrine.

5

6    **3.    Defendant Ben Howard Trust**

7    Plaintiff alleges that Defendant Ben Howard Trust, an Idaho trust, is an Alter

8    Ego of Defendant Howard because he represented the Motorcycle as his personal

9    vehicle, yet the Idaho Title of the vehicle listed the owner as Defendant Ben

10   Howard Trust. Defendant Howard's signature was the only authorization needed to

11   lawfully execute the transfer of title to Plaintiff, demonstrating Unity Of Control.

12

13   Plaintiff alleges that the day after Defendant Howard signed the Bill Of Sale,

14   he also INSURED the property that he had just released and no longer owner

15   [Exhibit K] but was then owned by Plaintiff, which, compounded by Defendant

16   Howard withholding the transfer of Title for the month following, by stating and

17   claiming that Plaintiff was lawful to ride the vehicle home to the Forum State,

18   without a transferred Title or license plate, demonstrates that observance of the

19   corporate form had sanctioned a Fraud and promoted injustice.

20

21   Further, Plaintiff alleges that Defendant Howard insured the vehicle with the

22   intention of executing a two-fold scheme: If Plaintiff left without the Title -

23   Defendant Howard could insure Plaintiff as an additional driver with accidental

24   death & dismemberment coverage from which to profit, if Plaintiff did not survive

25   the treacherous ride of nearly 1000 miles through the storm over Utah and

26   Arizona, that he purposefully delayed Plaintiff's departure to coincide with said

27   storm on a dangerous motorcycle without adequately functioning brakes, in order

28   to be free of his considerable debt to Plaintiff by covert means, or; should Plaintiff

1    survive and pursue the debt rightfully owed to him, Defendant Howard could then

2    threaten to report the "theft" of the vehicle (since he had never signed the Title

3    transfer until the commotion on the day before departure) in order to coerce

4    Plaintiff into abandoning his claim in a court of law.

5

6         Plaintiff alleges that brakes in the class and weight of the Motorcycle have a

7    typical service life minimum of 30,000 miles and much higher, depending on

8    riding habits. Because the vehicle's odometer read just above 10,000 miles in Utah

9    [Exhibit L], it is not likely that the odometer reading was true and accurate, as it

10   was represented by Defendant Howard, that by just above 11,000 miles at the

11   destination in Arizona, the brake pads should NOT have been worn through both,

12   the pads and their metal backings [Exhibit M].

13

14        Regardless of Defendant Howard's schemes, Plaintiff forcefully demanded

15   and received the transferred Title before leaving Utah, mitigating the Fraud he

16   expected. But Defendant Howard did not disclose the very dangerous condition of

17   the vehicle's [metal to metal] braking system, exponentially multiplying the level

18   of risk, which he had placed Plaintiff into unawares. However this alleged scheme

19   played out, it is sufficient to show fraudulent conduct, and sufficient to show that

20   an injustice resulted from the corporate form.

21

22        Plaintiff alleges that Defendant Howard demonstrated Unity Of Control

23   AND the observance of the corporate form sanctioning a Fraud and promoting

24   injustice, meeting the criteria for Alter Ego.

25

26        Therefore, Plaintiff respectfully requests that this honorable Court deny

27   Defendants' Motion To Dismiss Defendant Ben Howard Trust from Specific

28   Personal Jurisdiction, and find that Venue is Proper, under the *Alter Ego* Doctrine.

**4.    Analysis**

Because this honorable Court has not required an evidentiary hearing, it is sufficient that Plaintiff has plead facts to show a Prima Facie case that this honorable Court has personal jurisdiction over the additionally named Defendants under the *Alter Ego D*octrine. *Ballard, 65 F.3d at 1498*.

Therefore, Plaintiff respectfully requests that this honorable Court deny Defendants' Motion To Dismiss any or all of the Defendants in this Case from Specific Personal Jurisdiction, and find that Venue is Proper, under Arizona's *Alter Ego* Doctrine.

## II. VENUE IS PROPER

**A.     United States Code 28 U.S.C. § 1391(a)(2)**

Pursuant to 28 U.S.C. § 1391(a)(2), "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, *or a substantial part of property that is the subject of the action is situated*..." (emphasis added by Plaintiff).

Whereas, a substantial part of property that is the subject of this action is situated in the Forum State, being that ALL of the property is located in the Forum State, specifically the Motion Picture in its elements and the Motorcycle;

Specifically, Plaintiff's computer equipment and corresponding data storage of the Motion Picture [in all of its digital elements] are in his possession, as well as the Motorcycle, which is NOT in a safe condition to ride on the U.S. Interstate highway system into another forum, due to the originally undisclosed [by Defendants] mechanical issues with its braking system. Plaintiff possesses no means to ship the motorcycle or the computer equipment, upon which, the Motion Picture resides in digital, electronic form.

Plaintiff believes that Venue should be firmly anchored in the Forum State by the provision of 28 U.S.C. § 1391(a)(2) over Defendant Howard and the additionally named Defendants, disregarding 28 U.S.C. § 1391(c) by virtue of the Prima Facie appearance of *Alter Ego*, whereas, 28 U.S.C. § 1391(c) applies only to *bona fide* corporate entities.

**B.      The Burden on Plaintiff**

Additionally, Mr. Gerren Ard, Plaintiff's principal witness, with firsthand knowledge of many key events, which occurred both in Arizona and in Utah, is a resident of the Forum State, with no means of transportation to any other forum. Mr. Ard has stated to Plaintiff, that his intent is to file his own complaint *Pro Se* I.F.P. in this Forum against Defendants as well, and has since begun drafting his complaint in earnest. It should be noted that Arizona Law materials are available to Plaintiff to research at the District Court and public libraries within this Forum.

Plaintiff also believes that the reasoning behind the courts determination of Proper Venue is for the convenience of all parties, primarily the aggrieved party, while including the Court's convenience too, often consolidating and eliminating duplication of a civil action in a plurality of forums as a matter of judicial preference and practice for general efficiency and convenience.

Defendant Howard is the sole authorized agent and sole member representing each of the additionally named Defendants in this civil action. In so much as Defendants have denied jurisdiction in this Venue, Plaintiff asserts that Defendants shall challenge all venues as a matter of strategy, to force dropping any combination of additionally named Defendants in Utah, Texas, and Idaho, in an effort to make it economically impossible for Plaintiff to seek relief by any reasonable means.

Whereas, Defendants offered the underlying case law of *Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27, 33 (8th Cir.1973)* in their memorandum, they neglected to indicate the full scope of the citation, which was summarized in 47 with, *"...Since venue is a procedural rule of convenience, the convenience of the aggrieved party should be first accommodated."*

1       Plaintiff claims the above citation, as the *aggrieved party*, whereby, he
2  should be first accommodated, in as much as the grievous economic condition of
3  Plaintiff is a direct result of the alleged injury Defendants have inflicted upon him;
4  whereas, Defendants offer no compelling claim of burden whatsoever to
5  defending themselves in the Forum Sate.

6

7       Any change of forum represents an insurmountable burden upon Plaintiff,
8  beyond his means to pursue relief. Plaintiff is acting *Pro Se* for the lack of
9  wherewithal to hire a qualified attorney in this or any other forum.

10

11 **C.  Analysis**

12      Wherefore, under 28 U.S.C. § 1391(a)(2), Venue is proper, while no
13 reasonable expectation or compelling reason can be offered by Defendants in
14 which justice would be better served in any alternate forum, considering the
15 circumstances and allegations of this Case, where the interests of this Forum and
16 Plaintiff's interest in obtaining relief far outweigh any alleged burden to the
17 Defendants in this Case.

18

19      Plaintiff brings this Case before this honorable Court with clean hands,
20 having performed, whereas, Defendants continue to benefit from Plaintiff's work
21 without paying for it, merely by virtue of refusing to be held accountable in any
22 meaningful way to pay off this substantial and legitimate debt, perpetrated against
23 a resident of this Forum.

24

25      Based on the foregoing reasons, this honorable Court should deny
26 Defendants' Motion To Dismiss, in whole or in part, for improper Venue.

27

28

### III.   MOTION FOR LEAVE OF COURT TO AMEND

Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiff shall file a subsequent Motion, respectfully requesting this honorable Court's Leave to Amend the Complaint [Doc. 1] for the following errors and omissions:

A.   Correction of Typos ;

B.   Addition of Prima Facie Evidence;

C.   Correction of Claims In Complaint [Doc. 1, ¶37 through ¶58];

D.   Moving to File Electronic Prima Facie Evidence on Disc.

Based on the foregoing reason, this honorable Court should render moot Defendants' Motion To Dismiss for any failures in the Claims of the Complaint [Doc. 1] at this time.

### IV. SUMMARY

Whereas, Defendants have filed  a "Motion To Dismiss & Memorandum In Support" [Doc. 18], asserting (1) Lack Of Personal Jurisdiction, (2) Improper Venue, (3) Failure to state a claim upon which relief can be granted – Plaintiff respectfully requests that this honorable Court defeat Defendants' Motion To Dismiss by the following determinations:

(1) DENY Lack Of Personal Jurisdiction;

(2) DENY Improper Venue;

(3) Render MOOT, failure to state a claim upon which relief can be granted, by reason of Plaintiff Moving to Amend under Rule 15(a).

1    Plaintiff apologizes to this honorable Court for the volume of this document,
2  however, establishing Jurisdiction and Venue required great diligence to assemble
3  into a comprehensive, logical and organized form, with pages 3 and 4 herein
4  [DOCUMENT STRUCTURE] designed to provide a checklist, as well as an index
5  to this Memorandum In Opposition.

6

7    Whereas, Plaintiff does not wish to characterize, Defendants are indeed fully
8  cognizant of their business, continued obligations and contact within this Forum,
9  and most notably, their non-performance to make payment, whereby, it comes as
10 no surprise whatsoever to Defendants that Plaintiff's Prima Facie evidence of
11 Minimum Contacts is entered herein. This additional exercise in dodging
12 accountability further underscores Defendants ongoing pattern of continuing to
13 attempt evading any court of law, which may adjudicate for them to pay their
14 legitimate debts. Therefore, Plaintiff prays that all Defendants named shall be held
15 accountable by the Authority of this honorable Court.

16

17    Respectfully submitted this _15th_ day of October 2012.

18

19

20

21

22    James Arnett, In Propria Persona (I.F.P.)

23    9288 N. Monmouth Court

24    Tucson, Arizona 85742

25    (520)878-9779 (home)

26    (520)304-0129 (field)

27    jamesarnettaz@gmail.com (email)

28

**EXHIBIT "A"**

MOTORCYCLE. Plaintiff's 1994 Suzuki VS1400 Motorcycle in Utah. Please note the absence of its [Idaho] license plate, which Defendant Howard removed, leaving the exposed, bare mounting bracket, immediately beneath the tail light.





## EXHIBIT "B"

EMAIL. Please note, when payment was demanded by Plaintiff, Defendant Howard denied any contract ever existed, despite having uploaded the TV Commercial Spot and Motion Picture online in the promotion of his business three months prior (believing that having escaped all demands to formalize the contract in writing, and had escaped his liability to pay his debt to Plaintiff). Defendants' denial was immediately followed with bogus threats of civil and criminal penalties for Plaintiff attempting to collect the debt, followed by a "love" overture to speak on the telephone, in order to escape the documentation of any negotiations, consistent with his modus operandi to avoid producing documentation throughout the time in Utah. This single email was the full extent of Defendant Howard's negotiation to settle his debt.

 **Ben S Howard** elderb123@gmail.com                    Feb 25  

to me

James,

I am not sure why you have chosen to do this. You were never contracted as you claim. I have received legal counsel on this matter and what you are doing constitutes extortion by very definition which holds serious *criminal* and *civil* penalties. I have been advised that the texts and e-mails you have sent me make this an open and shut extortion case.

extortion |ik'stôrSHən|

noun

the practice of obtaining something, esp. money, through force or threats.

DERIVATIVES

**extortioner** noun

I suggest you seriously consider your next course of action since the consequences can be sever.

James, you've been one of my best friends for years am I have no interest in becoming enemies. I love you and I just don't understand. I would welcome a call from you.

 **James Arnett** jamesarnettaz@gmail.com                    Feb 25  

to Ben



# EXHIBIT "C"

### MR. YBARRA'S STATEMENT

·     I recognize the individual in the two photographs below from James Arnett's apartment in Tucson, Arizona, where I saw him, in or around February 2011.

    I also recall Steven M. Adelson there on the same occasion, as we were looking over the progress of Arnett's "Blocked" film.

State of Arizona )
County of Pima )

On this ___ day of ___ 20___, _EDGAR A YBARRA_ personally appeared before me whose identity I proved on the basis of satisfactory evidence to be the signer of the above instrument and he/she acknowledged that he/she executed it.

_____
Notary Public

OFFICIAL SEAL
LAUREN DAY
NOTARY PUBLIC-ARIZONA
PIMA COUNTY
My Comm. Exp. Sept. 6, 2016

_____
Edgar A. Ybarra
(520)480-8943

_AR DL D01404643   9/45_
AZ License

_10.9-12_
Date





Photographs of Ben S. Howard from his Facebook.com page at http://www.facebook.com/benshoward

## EXHIBIT "D"

### MR. ADELSON'S STATEMENT

In or around February 2011, I attended a gathering of individuals in the apartment of James Arnett of Tucson, Arizona. At the time, Mr. Arnett was editing his feature motion picture BLOCKED. The purpose of this gathering was to look over the progress of this movie and offer comments.

I recognize the individual in the two photographs below. Although I do not recall his name, I do recall seeing him at the apartment on the evening Mr. Arnett presented his film. I also recall Edgar A. Ybarra was also there on the same occasion.

State of Arizona
County of Pima
On this _9th_ day of _OCT_ 20_12_, _STEVEN M. ADELSON_
personally appeared before me whose identity
I proved on the basis of satisfactory evidence
to be the signer of the above instrument and
he/she acknowledged that he/she executed it

_Notary Public_

**OFFICIAL SEAL**
**LAUREN DAY**
NOTARY PUBLIC-ARIZONA
PIMA COUNTY
My Comm. Exp. Sept. 6, 2015

Steven M. Adelson
(520)721-4233

AZDL B14644601
AZ License

10-9-12
Date

 

Photographs of Ben S. Howard from his Facebook.com page at http://www.facebook.com/benshoward

# EXHIBIT "E"

## PLANE TICKET.

Changes have been made to your 6/5/2011 flight    BEN  x     

Expedia Travel Services notifications@expedia.com                                    5/28/11
to me

**Your Flight Details Have Changed**
Passenger(s): ARNETT/JAMES
Expedia Itinerary Number: 137137017384
United Airlines confirmation code: T1FX7M

Dear Expedia Traveler,

United Airlines made the following change(s) to your itinerary:

* Changed the flight number for 2 of your flights.

Airlines will occasionally adjust flight schedules. United Airlines has done their best to find an alternative that offers minimal disruption to your trip and we have updated your itinerary accordingly. It is not necessary to call us regarding the change.

Your updated flight itinerary is below, and you can always view your most up-to-date itinerary at Expedia.

**Tucson to Denver**
| Flight Change Details | Sunday, Jun 05, 2011 at 8:42 AM | Change in Flight |
|---|---|---|
| | United Airlines | Flight Number: UA6279 6858 (change) |
| | From: (TUS) Tucson AZ, USA | Depart: 8:42 AM |
| | To: (DEN) Denver CO, USA | Arrive: 11:40 AM |
| | Status: CONFIRMED | Class: Coach |
| | Equipment: CRJ-700 Canadair Regional Jet | Seat: 13B |
| | Operated By: /UNITED EXPRESS/SKYWEST AIRLINES(UA) | |

**Denver to Salt Lake City**
| Flight Change Details | Sunday, Jun 05, 2011 at 1:56 PM | Change in Flight |
|---|---|---|
| | United Airlines | Flight Number: UA6727 6617 (change) |
| | From: (DEN) Denver CO, USA | Depart: 1:56 PM |
| | To: (SLC) Salt Lake City UT, USA | Arrive: 3:27 PM |
| | Status: CONFIRMED | Class: Coach |
| | Equipment: CRJ-700 Canadair Regional Jet | Seat: |
| | Operated By: /UNITED EXPRESS/SKYWEST AIRLINES(UA) | |

Sincerely,
The Expedia Travel Team

Please do not reply to this e-mail as this mailbox is not monitored.

You are receiving this transactional email based on a recent booking or account-related update on Expedia.com.

CONTACT US
To contact us or send feedback, please click here or contact us via postal mail at: Expedia, Inc., attn: EMC Team, 333 108th Avenue NE, Bellevue, WA 98004. For additional assistance, visit the Expedia Customer Support Center, or call 1-800-Expedia.

CST# 2029030-40

@2009 Expedia, Inc. All rights reserved. [...] plane logos
are registered trademarks, or trademarks [...] herein may be trademarks of their respect [...] ntioned

For internal use only
* TPID: 1
* TUID: 2304S8865
* Itinerary Number: 137137017384

OQPOTG

| from: | James Arnett jamesarnettaz@gmail.com |
|---|---|
| to: | B Howard <elderb123@gmail.com> |
| date: | Sat, May 28, 2011 at 9:52 AM |
| subject: | Fwd: Changes have been made to your 6/5/2011 flight |
| mailed-by: | gmail.com |



## EXHIBIT "F" page 1 of 2

TELEPHONE RECORDS. Please note, Plaintiff's Cricket field phone (520)304-0129 was originally ordered by and in Defendant Howard's name. The phone was drop-shipped to Plaintiff bearing a (520) area code, NOT Utah (801). Additionally, the bill for the telephone was paid intermittently by Defendant starting in November 2010 in order to establish Continued Obligations during development of Defendant's web site for marketing the Book, Audio Book, Motion Picture and TV Commercial Spot. The (520)358-5638 line was added later by Plaintiff for his mother's emergency cell phone.



Payment History    Inbox   x

AL-MUNT CORP cellphonecity1@yahoo.com          2:08 PM (10 minutes ago)
to me

*Khalifa Riad Muntasser*

Office: 520-579-6679

Corporate Headquarters
3720 W Ina Rd, Suite 134
Tucson, AZ 85741

Payment History List.docx
35K  View  Download

**account summary**

| Name | BEN HOWARD | Amount Due | $0.00 |
|---|---|---|---|
| Account Number | 340-9367508-1 | Future Charges 10/09/2012 | $70.76 |
| Billing Address | PO BOX 223 HUNTSVILLE, UT 84317  Edit | My Bill | View |
| Status | Active | | |
| Automatic Bill Pay | Not Enrolled | | |
| | | | BridgePay Request |

**Current Lines of Services**
Wireless Lines: 2          Broadband Lines: 0

(520) 304-0129
(520) 358-5638

Top of Form

/x EPDw UKLTozλ

Payment History List

Re-print Receipt  Cancel

## EXHIBIT "F" page 2 of 2

| Provider | Product | Date | Account ID | Confirmation ID | Payment | LD | Fee | Total | User | Payment Method | | Action |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cricket | Service Payment | 6/12/2012 1:10:34 PM | 5203040129 | QPAYWP327000285 | $34.00 | $0.00 | $3.00 | $37.00 | 12350041 | Cash | | |
| Cricket | Service Payment | 5/10/2012 1:41:41 PM | 5203040129 | QPAYWP318931571 | $70.76 | $0.00 | $3.00 | $73.76 | 12350041 | Cash | | |
| Cricket | Service Payment | 4/12/2012 1:57:49 PM | 5203040129 | QPAYWP311738909 | $70.76 | $0.00 | $3.00 | $73.76 | 12350041 | Cash | | |
| Cricket | Service Payment | 1/11/2012 2:25:31 PM | 5203040129 | QPAYWP287903708 | $70.76 | $0.00 | $3.00 | $73.76 | 12350041 | Cash | | |
| Cricket | Service Payment | 3/1/2011 4:46:03 PM | 5203040129 | QPAYWP208041189 | $117.00 | $0.00 | $3.00 | $120.00 | 12350041 | Cash | | |
| Cricket | Service Payme | 2/9/2011 5:56:07 PM | 5203040129 | QPAYWP203002596 | $38.00 | $0.00 | $3.00 | $41.00 | 12350041 | Cash | | |
| Cricket | Service Payme | 1/11/2011 4:57:31 PM | 5203040129 | QPAYWP196039484 | $37.40 | $0.00 | $3.00 | $40.40 | 12350041 | Cash | | |
| Cricket | Service Payment | 12/30/2010 5:01:58 PM | 5203040129 | QPAYWP193102386 | $39.78 | $0.00 | $3.00 | $42.78 | 12350041 | Cash | | |

## EXHIBIT "G"

DEFENDANT BENEFITTING FROM MOTION PICTURE. Please note, the "Top URL Embeds" for this online video of the Motion Picture at www.vimeo.com/33328737 are from Defendant's Facebook page(s), and Defendants' www.benshoward.com and www.benshoward.net web sites. Also note the Motion Picture was "uploaded" by Defendant Howard, on behalf on Defendant Lifeline Media.






by **Ben Howard** 9 months ago

✔ Follow     + Add to...     Stats     ↓ Download

| All-Time | Weekly |
| --- | --- |
| 181 Plays | Sep 28, 2012 – Oct 5, 2012 |

‹ Prev

**Weekly Overview**   Top URL Embeds

| Domain | Loads | Plays |
| --- | --- | --- |
| benshoward.net | 83 | 31 |
| facebook.com | 36 | 34 |
| benshoward.com | 29 | 10 |

0 Likes

0 Comments

Learn about Stats



## EXHIBIT "H"

DEFENDANT LIFELINE MEDIA CORPORATE RECORD. Please note, RFA Financial UT, LLC. appears as the former business name. Also note that Defendant Howard is the only officer and registered agent.

A Secure Online Service from Utah.gov

# Utah Business Search - Details

## LIFELINE MEDIA, LLC

Update this Business

**Entity Number:** 7977714-0160
**Company Type:** LLC - Domestic
**Address:** 6204 E 1800 N Eden, UT 84310
**State of Origin:**
**Registered Agent:** BEN HOWARD
**Registered Agent Address:**
6204 E 1800 N(EDEN UT 84310) PO BOX 223
Huntsville, UT 84317

View Management Team

**Status: Active**

Purchase Certificate of Existence

**Status:** Active *as of 04/21/2011*
**Renew By:** 04/21/2013
**Status Description:** Good Standing
**Employment Verification:** Not Registered with Verify Utah

**History**

View Filed Documents

**Registration Date:** 04/21/2011
**Last Renewed:** 05/08/2012

**Additional Information**

**NAICS Code: 9999 NAICS Title:** 9999-Nonclassifiable Establishment

**Former Business Names**

RFA FINANCIAL UT, LLC

« Back to Search Results

## EXHIBIT "I"

FORMER IDENTITY OF DEFENDANT LIFELINE MEDIA. Please note, Defendant Howard's residence (in 2011) is the corporate location.

Rfa Financial Ut, LLC
Claim this Profile
**Address:**
6204 E 1800 N
Eden, Utah
84310-9508
Phone:
Website:
Category:
No Information Provided
No Information Provided
Investment Advice,
Investment Advice
This is My Company

Research This Company

- Summary
- Photos

Contact:    Ben Howard Est. Total Employees: 2
State of Inc: UT         Year Established:      2011
                        Est. Total Sales:      $ 91,000.00

# Basic Review

No Information Provided
RFA FINANCIAL UT, LLC

**EXHIBIT "J" page 1 of 3**

DEFENDANT NATIONWIDE AFFORDABLE HOUSING INC. CORPORATE RECORD. Please note, despite the "typo" of "Ben S. Howrad" which defeats a search of the Texas corporation records, Defendant Howard is the sole owner, officer and agent of Defendant Nationwide Affordable Housing Inc.

Link to Window on State Government - Susan Combs, Texas Comptroller of Public Accounts

Susan Combs, Texas Comptroller of Public Accounts

image of star

Taxable Entity Search Results

# Franchise Tax Certification of Account Status

**This Certification Not Sufficient for Filings with Secretary of State**

Obtain a certification for filings with the Secretary of State.

It takes up to two weeks for this search to update when payment is made through the mail or at a taxpayer service office. This agency may manually issue a Certificate of Account Status (good standing) when an entity makes a payment to bring its account current. The paper certificate issued by our office is valid and represents the entity's status with our office as of the date of the certificate.

| Certification of Account Status | Officers And Directors Information |

| | |
|---|---|
| Entity Information: | **NATIONWIDE AFFORDABLE HOUSING, INC.** 2324 CHEEK SPARGER RD BEDFORD, TX 76021-2678 |
| Status: | **NOT IN GOOD STANDING** |
| Registered Agent: | BEN S HOWRAD 1100 WEST PIPELINE STE. 202 HURST, TX 76053 |
| Registered Agent Resignation Date: | |
| State of Formation: | TX |
| File Number: | 0135849400 |
| SOS Registration Date: | June 8, 1995 |
| Taxpayer Number: | 30117844982 |

texas.gov | Statewide Search from the Texas State Library | State Link Policy | Texas Homeland Security

**Susan Combs**, Texas Comptroller • Window on State Government • Contact Us
Privacy and Security Policy | Accessibility Policy | Link Policy | Public Information Act | Compact with Texans

**EXHIBIT "J" page 2 of 3**

Please note, despite the ADDITIONAL "typo" of "Ren S. Howard", which defeats a search of the Texas corporation records, Defendant Howard is the sole owner, officer and agent of DEFENDANT NATIONWIDE AFFORDABLE HOUSING INC.

Link to Window on State Government - Susan Combs, Texas Comptroller of Public Accounts

Susan Combs, Texas Comptroller of Public Accounts

image of star

Taxable Entity Search Results

# Officers and Directors

NATIONWIDE AFFORDABLE HOUSING, INC.

Return to: Taxable Entity Search Results

Officer and director information on this site is obtained from the most recent Public Information Report (PIR) processed by the Secretary of State (SOS). PIRs filed with annual franchise tax reports are forwarded to the SOS. After processing, the SOS sends the Comptroller an electronic copy of the information, which is displayed on this web site. The information will be updated as changes are received from the SOS.

You may order a copy of a Public Information Report from open.records@cpa.state.tx.us or Comptroller of Public Accounts, Open Government Division, PO Box 13528, Austin, Texas 78711.

| Title | Name and Address | Expiration/Resignation Date |
|---|---|---|
| *PRESIDENT* | **REN S HOWARD**<br>2324 CHEEK SPARGER RD<br>BEDFORD , TX 76021 | |

texas.gov | Statewide Search from the Texas State Library | State Link Policy | Texas Homeland Security

**Susan Combs**, Texas Comptroller • Window on State Government • Contact Us
Privacy and Security Policy | Accessibility Policy | Link Policy | Public Information Act | Compact with Texans

## EXHIBIT "J" page 3 of 3

Please note, DEFENDANT NATIONWIDE AFFORDABLE HOUSING INC.
is NOT in "good standing" with the Texas authority.

Texas Comptroller Stationary

September 30, 2012

### CERTIFICATE OF ACCOUNT STATUS

This is in response to your inquiry about the status of

NATIONWIDE AFFORDABLE HOUSING, INC.

This entity is not in good standing as it has not satisfied all franchise tax
requirements.

If you need any additional information or assistance, please contact the Texas State
Comptroller's field office in your area or call (800) 252-1381, toll free, nationwide.
The Austin number is (512) 463-4600.

Taxpayer number: 30117844982
File number: 0135849400

Form 05-342 (Rev. 12-07/14)

## EXHIBIT "K"

BILL OF SALE & PROOF OF INSURANCE. Please note, the date of the Bill of Sale from Defendant Ben Howard Trust is 31 August 2011, transferring ownership of the 1994 vehicle (represented as a 1995 model to Plaintiff), whereas, the date Defendant Howard insured this vehicle was the NEXT day on 1 September 2011, as these two discrepancies indicate.

Utah State Tax Commission

## Bill of Sale

TC-843
Rev.7/06

Division of Motor Vehicles · 210 North 1950 West · Salt Lake City, Utah 84134 · Telephone (801) 297-7780

☐ Automobile ☐ Light Truck, Van or Util. ☐ Heavy Truck (over 12,000 lbs) ☐ Trailer
☑ Motorcycle ☐ Off-Highway Vehicle ☐ Snowmobile ☐ Boat

In consideration of _____ Dollars (S _____)

paid to me by JAMES ARNETT
Buyer

I, _____ do hereby sell and convey to the
Seller
buyer the following vehicle, as is: 1995 SUZUKI VS 1400
Make Model
JS1VX51L0R2102837 and _____
Vehicle Identification Number License Number

I, warrant to the Buyer that the said vehicle is free and clear of any lawful claims and demand of all and every person, whatsoever.

Used vehicles are sold as accepted and are not guaranteed.

This form does not represent documentary evidence of ownership unless accompanied by the outstanding certificate of title.

Seller's Signature

Date signed 8-31-11

**INSURANCE IDENTIFICATION CARD - Utah**

Policy Number: 37128338-2   Effective Date: 09/01/2011 to 09/01/2012
Insurer:  Progressive Classic Insurance Co
          P.O. Box 6807 Cleveland, OH 44101
Your Agent:
          HEINERS INS CENTER
          801-621-2620
Named Insured:
          BEN S HOWARD

| Vehicles: Year | Make | Model | VIN |
|---|---|---|---|
| 1994 | Suzuki | VS1400GLP | JS1VX51L0R2102837 |
| 2004 | Suzuki | DR-Z400S | JS1SK43A742100356 |
| 2007 | Yamaha | WR450F | JYACJ12YX7A002731 |

Form 4950 (12/07)

## EXHIBIT "L"

MOTORCYCLE ODOMETER READING. Please note, the mileage of the 1994 Suzuki VS1400 while in Utah had not passed 11,000 miles, indicated on the odometer. This mileage was represented by Defendant Howard to Plaintiff as "original miles".





## EXHIBIT "M"

MOTORCYCLE REAR BRAKE PAD. Please note, after a journey of approximately 1,000 miles from Defendant Howard's residence in Eden, Utah to Plaintiff's residence in Tucson, Arizona, the entire braking system had failed. Plaintiff discovered that the brake pads were not as recently serviced as Defendant had represented, but were in fact, metal on metal, the calipers having worn through the pads and metal backings to the degree where the metal backing mount on the rear brakes were worn so thin, the caliper had perforated it, making direct contact with the braking disc, destroying the disc and the caliper piston. This type of damage is NOT consistent with mileage under 30,000 original miles.



## EXHIBIT "N"

PROOF OF MINOR PAYMENTS BY DEFENDANT HOWARD. Three money orders (one to Plaintiff, two to Mr. Gerren Ard) with shipping label, photographed by Defendant Howard prior to shipping them into the Forum State.



**EXHIBIT "O"**

DEFENDANT HOWARD'S ALLEGED 37 LLCS IN NEVADA. Defendant Howard listed as "Manager" of the following entities in and around Las Vegas, Nevada. Please note that the majority of these entities were filed during the time-frame that Plaintiff was in Utah with Defendant. Source: Nevada Secretary Of State database.

| ENTITY NAME | NEVADA ID | REG. NUMBER | FILE DATE |
|---|---|---|---|
| 4113 JEFFS HOLDINGS LLC | NV20111311527 | E0263972011-9 | 5/9/2011 |
| 4113 JEFFS PROPERTIES LLC | NV20111311536 | E0263982011-0 | 5/9/2011 |
| COUNT FLEET PROPERTIES LLC | NV20111343144 | E0291042011-2 | 5/20/2011 |
| COUNT FLEET ENTERPRISES LLC | NV20111344176 | E0291922011-8 | 5/20/2011 |
| 181 EAST HOLDINGS LLC | NV20111357905 | E0303792011-6 | 5/26/2011 |
| 181 EAST PROPERTIES LLC | NV20111358023 | E0303902011-1 | 5/26/2011 |
| 6622 WEST HOLDINGS LLC | NV20111369434 | E0313612011-8 | 6/1/2011 |
| 6622 WEST PROPERTIES LLC | NV20111369512 | E0313692011-6 | 6/1/2011 |
| 655 SOUTH HOLDINGS LLC | NV20111430635 | E0367982011-5 | 6/28/2011 |
| 655 SOUTH PROPERTIES LLC | NV20111430690 | E0368032011-3 | 6/28/2011 |
| SUMMER MEADOW ENT. LLC | NV20111470892 | E0402792011-6 | 7/18/2011 |
| SUMMER MEADOW PROP. LLC | NV20111470918 | E0402812011-0 | 7/18/2011 |
| BIRCHTREE HOLDINGS LLC | NV20111497223 | E0426782011-3 | 7/28/2011 |
| BIRCHTREE PROPERTIES LLC | NV20111497299 | E0426842011-1 | 7/28/2011 |
| WILD MAPLE HOLDINGS LLC | NV20111498130 | E0427602011-4 | 7/29/2011 |
| WILD MAPLE PROPERTIES LLC | NV20111498239 | E0427682011-2 | 7/29/2011 |
| SNOW PEAK HOLDINGS LLC | NV20111502143 | E0431202011-2 | 8/1/2011 |
| SNOW PEAK PROPERTIES LLC | NV20111502213 | E0431272011-9 | 8/1/2011 |
| DUSKYWING HOLDINGS LLC | NV20111502519 | E0431532011-1 | 8/1/2011 |
| DUSKYWING PROPERTIES LLC | NV20111502617 | E0431582011-6 | 8/1/2011 |
| CRIMSON PATCH HOLDINGS LLC | NV20111502798 | E0431692011-9 | 8/1/2011 |
| CRIMSON PATCH PROPERTIES LLC | NV20111502849 | E0431732011-5 | 8/1/2011 |
| EAST CIRCLE HOLDINGS LLC | NV20111518479 | E0445692011-5 | 8/11/2011 |
| 3114 SOUTH HOLDINGS LLC | NV20111530094 | E0455922011-6 | 8/11/2011 |
| 3114 SOUTH PROPERTIES LLC | NV20111530115 | E0455942011-8 | 8/11/2011 |
| SOUTH SILVERADO HOLDINGS LLC | NV20111613114 | E0529902011-3 | 9/24/2011 |
| SOUTH SILVERADO PROP. LLC | NV20111613133 | E0529912011-4 | 9/24/2011 |
| BURNING OAK HOLDINGS LLC | NV20111653889 | E0566512011-1 | 10/14/2011 |
| BURNING OAK ENTERPRISES LLC | NV20111654062 | E0566622011-4 | 10/14/2011 |
| 4819 ENOCH HOLDINGS LLC | NV20111671845 | E0582432011-1 | 10/25/2011 |
| 4819 ENOCH PROPERTIES LLC | NV20111671924 | E0582492011-7 | 10/25/2011 |
| 3839 WEST HOLDINGS LLC | NV20111677091 | E0587232011-2 | 10/27/2011 |
| 3839 WEST PROPERTIES LLC | NV20111677129 | E0587252011-4 | 10/27/2011 |
| 138 SOUTH HOLDINGS LLC | NV20111679001 | E0588982011-2 | 10/28/2011 |
| 138 SOUTH PROPERTIES LLC | NV20111679038 | E0589022011-9 | 10/28/2011 |
| 530 EAST HOLDINGS LLC | NV20111679064 | E0589042011-1 | 10/28/2011 |
| 530 EAST PROPERTIES LLC | NV20111679103 | E0589082011-5 | 10/28/2011 |

## CERTIFICATE OF SERVICE

I hereby certify that on this day, ___ October 2012, I physically filed the preceding MEMORANDUM IN OPPOSITION, MOTION FOR LEAVE, and MOTION at the Office of the Clerk of the Court.

I also hereby certify that I have mailed these three documents by the United States Postal Service, to the following Attorneys for Defendants Howard, et al.:

DAVISMILESMCGUIRE GARDNER, PLLC
Scott F. Gibson
80 E. Rio Salado Pkwy., Ste. 401
Tempe, AZ 85281

Respectfully submitted this 15th day of October 2012.

James Arnett, In Propria Persona (I.F.P.)
9288 N. Monmouth Court
Tucson, Arizona 85742
(520)878-9779 (home)
(520)304-0129 (field)
jamesarnettaz@gmail.com (email)