# Davis Miles
## McGuire Gardner

80 E. Rio Salado Pkwy., Ste. 401
Tempe, AZ  85281
Telephone:  (480) 733-6800
Fax: (480) 733-3748
efile.dockets@davismiles.com

Scott F. Gibson - SBN 10884
SGibson@DavisMiles.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| JAMES ARNETT,<br><br>       Plaintiff,<br><br>vs.<br><br>BENJAMIN SNOW HOWARD, LIFELINE MEDIA LLC, a Texas entity, NATIONWIDE AFFORDABLE HOUSING, a Texas corporation, and the BEN HOWARD TRUST, an IDAHO TRUST,<br><br>       Defendants. | **CASE NO.  CV-12-0311-TUC-DCB-DTF**<br><br>**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT & MEMORANDUM IN SUPPORT**<br><br>**(Assigned to Magistrate Judge D. Thomas Ferraro)** |

Defendants Benjamin Snow Howard ("Howard"), Lifeline Media LLC ("Lifeline"), Nationwide Affordable Housing ("NAH"), and the Ben Howard Trust ("the Trust") request that the Court dismiss Plaintiff's First Amended Complaint. Plaintiff has not remedied the pleading flaws raised in the Motion to Dismiss Defendants previously filed in response to the original Complaint. This Motion to Dismiss is based on the following grounds from Rule 12 of the Federal Rules of Civil Procedure:

1

1.  Lack of personal jurisdiction.

2.  Improper venue.

3.  Failure to state a claim upon which relief can be granted.

Defendants request dismissal of this lawsuit on each of these grounds in the alternative. Plaintiff's First Amended Complaint ("Complaint") should either be in a Utah court or dismissed for failing to state claim. Each ground will be addressed in turn.

### 1.  Lack of personal jurisdiction

The Amended Complaint fails to allege sufficient facts that would establish this Court's personal jurisdiction over Defendants. Under Ninth Circuit case law, the plaintiff bears the burden of establishing personal jurisdiction over the defendant.[1] Prior to trial, a defendant may file a motion to dismiss a complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.[2]

Since no specific federal statute governs personal jurisdiction in this case, Arizona's long-arm statute applies.[3] Arizona's long-arm statute provides for personal jurisdiction to the fullest extent allowed by the Due Process Clause.[4]

Under U.S. Supreme Court precedent, the Due Process Clause requires that, absent traditional bases for personal jurisdiction such as physical presence or consent, nonresident defendants must have certain *minimum contacts* with the forum such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.[5] If a court finds that a defendant's contacts with the forum state are enough to satisfy the Due

---

[1] *Ziegler v. Indian River Country*, 64 F.3d 470, 473 (9th Cir. 1995).

[2] *Data Disc Inc. v. Systems Tech. Assocs. Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

[3] *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th. Cir. 1995).

[4] Ariz. R. Civ. P. 4.2(a); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997).

[5] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Process Clause, the court will exercise either "general" or "specific" jurisdiction over the defendant, depending on the nature of the defendant's contacts with the forum state.[6]

A court may exercise *general* jurisdiction over a defendant "[i]f the defendant's activities in the state are 'substantial' or 'continuous and systematic,' . . . even if the cause of action is unrelated to those activities."[7] If a defendant's contacts with the forum state are not substantial, systematic or continuous enough for general jurisdiction, then the court must determine if exercising *specific* jurisdiction over the defendant would comport with Due Process. The Ninth Circuit has a three-part test to determine if specific jurisdiction exists: (1) the defendant has *purposefully availed* himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directs conduct at the forum that has effects in the forum; (2) the claim *arises out of* the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is *reasonable*.[8]  Plaintiff cannot meet any of the parts of the test.

The Ninth Circuit has established that district courts should apply different specific jurisdiction tests to contract and tort cases.[9] In cases arising out of contractual relationships, including those with related tort claims, the Ninth Circuit applies the "purposeful availment" test, which

> [R]equires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state. This focus on the defendant's affirmative conduct is designed to ensure that the

---

[6] *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-415 nn. 8-9 (1984).

[7] *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050-51 (9th Cir. 1997)(citation omitted).

[8] *Bancroft & Masters. Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citation omitted).

[9] *Ziegler*, 64 F.3d at 473.

3

> defendant is not haled into court as the result of random, fortuitous, or attenuated contacts.[10]

"A defendant has purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a State or has created 'continuing obligations' between himself and the residents of the forum.'"[11] Additionally, the Ninth Circuit performs a *qualitative* evaluation of the defendant's contact with the forum state to determine whether the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."[12]

As the U.S. Supreme Court has established, the existence of a contract with a resident of the forum state is insufficient by itself to create specific personal jurisdiction over the nonresident.[13] The Ninth Circuit has also noted that "'temporary physical presence' in the forum does not suffice to confer personal jurisdiction."[14] Additionally, the "ordinary 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'"[15] But "[p]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."[16] "[T]he purposeful availment analysis turns upon whether the defendant's contacts are attributable to 'actions by the defendant *himself*,'

---

[10] *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citation omitted).

[11] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)).

[12] *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993)(quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[13] *Burger King*, 471 U.S. at 478.

[14] *Roth v. Garcia Martinez*, 942 F.2d 617, 621 (9th Cir. 1991)(citation omitted).

[15] *Id.* at 622.

[16] *Id.* at 473.

or conversely to the unilateral activity of another party."[17] When determining whether a defendant has purposefully availed himself in cases arising out of alleged contractual relationships, courts must also consider the *future consequences* of the alleged contract, along with the *terms* of the contract and the *actual course of dealing* of the parties.[18] A court should also consider where performance of the contract was to or did take place.[19]

To determine whether the plaintiff's cause of action "arises out of" the defendant's contacts with the forum state, the Ninth Circuit has employed a "but for" requirement, which is met if *but for* the contacts between the defendant and the forum state, the cause of action would not have arisen.[20]

As for the "reasonableness" requirement, if the first two requirements of specific jurisdiction are met, a court presumes that exercise of jurisdiction over the defendant is reasonable, and the burden then shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[21] The Ninth Circuit considers seven factors to determine if exercise of specific jurisdiction over a defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiffs interest in convenient and effective relief; and (7) the existence of an alternative forum.[22]

---

[17] *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986)(citation omitted).

[18] *Gray*, 913 F.2d at 760.

[19] *See Roth*, 942 F.2d at 622.

[20] *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995).

[21] *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

[22] *Ziegler*, 64 F.3d at 475.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

*Analysis*

While Defendants *strongly* disagree with the Plaintiff's account of the facts, for purposes of this motion to dismiss Defendants must assume the truth of Plaintiff's allegations as follows: Howard contacted Plaintiff in November 2010 over the internet (via "Skype") to ask Plaintiff to help produce a website.[23] Howard shipped a mobile telephone to Plaintiff to enable communication about the website project.[24] On February 5, 2011, Howard came from Utah to Plaintiff's work studio in Arizona for the purpose of completing the website, which Plaintiff had worked on as a free personal favor to Howard.[25]

While staying at Plaintiff's work studio in Arizona, Howard (allegedly) offered Plaintiff a job as a "major equity partner" working on a film project in Utah over a two-month period.[26] Plaintiff agreed to the offer but told Howard that he would let him know when he was available.[27] Several months after Howard returned to Utah, Plaintiff called Howard on the telephone to let Howard know that he was now available for the project.[28] Howard reiterated his offer over the phone.[29]

Plaintiff's complaint then states that "[t]he parties were to formalize the agreement together in Utah."[30] Plaintiff agreed and Howard booked Plaintiff a flight to Utah to begin working on the project.[31] Plaintiff's own allegations indicate that his performance under the alleged contract took place in Utah (with a brief time in Idaho) and Howard's additional

21

22

23

24

25

26

27

28

[23] (First Amended Complaint ¶ 1).

[24] (First Amended Complaint ¶ 1).

[25] (First Amended Complaint ¶ 1).

[26] (First Amended Complaint ¶ 2).

[27] (First Amended Complaint ¶ 3).

[28] (First Amended Complaint ¶ 4).

[29] (First Amended Complaint ¶ 4).

[30] (First Amended Complaint ¶ 4).

[31] (First Amended Complaint ¶¶ 4-5).

promises to formalize the equity partnership were also made in Utah.[32] All of Plaintiff's other allegations have to do with events that took place in Utah.[33]

Plaintiff has not alleged sufficient facts that establish a prima facie case for this Court to exercise personal jurisdiction over Defendants. The Court should note the complete absence of any allegations that would establish jurisdiction over Defendants Lifeline, NAH, or the Trust. Of the named Defendants, only Howard is alleged to have had any contact with Arizona. Therefore, at the least, there is no basis for this Court's exercise of personal jurisdiction over Lifeline, NAH, or the Trust.

Plaintiff has also not alleged sufficient contacts to establish this Court's *general* jurisdiction over Howard. The brief, isolated contact Howard is alleged to have had with Arizona is in no way substantial, systematic or continuous. As to *specific* jurisdiction, Plaintiff has not alleged sufficient facts that would demonstrate Howard has purposefully availed himself of the benefits of Arizona in connection with the alleged contract. While Plaintiff alleges that Howard was briefly physically present in Arizona (for a different reason) and offered Plaintiff a job in Utah, the Court should look at the future consequences of the alleged contract and the course of dealing. According to the allegations, the parties understood that formalization and performance of the contract would be in Utah. Plaintiff alleges that he performed his obligations in Utah. Howard's alleged brief contact with Plaintiff in Arizona did not result in a clearly-defined or executed contract, and it is not enough for purposeful availment.

As to the "but for" analysis, Howard's isolated contact with Arizona did not, in itself, give rise to the cause of action. Even assuming the existence of the contract (which Howard strongly disagrees with), it was not Howard's Arizona conduct that gave rise to Plaintiff's causes of action. Plaintiff's claims all arise out of conduct that allegedly occurred in Utah.

---

[32] (First Amended Complaint ¶¶ 3-30).

[33] (First Amended Complaint ¶¶ 19-32).

To satisfy the "but for" test in this case, Howard would had to have committed breach of contract and torts against Plaintiff all while in Arizona and *because of* the visit to Arizona, but that is simply not what Plaintiff has alleged.

Even if the Court is inclined to find that Plaintiff has established purposeful availment for specific jurisdiction, it is not reasonable, under the third prong, for the Court to exercise specific personal jurisdiction over Howard. Considering the seven factors of reasonableness: (1) the extent of Howard's alleged purposeful interjection into Arizona is minimal; (2) the burden on Howard of litigating in Arizona is great; (3) if this Court exercised jurisdiction over Howard it would conflict with the sovereignty of Utah since the alleged actions took place in Utah and are governed by Utah law; (4) Utah has an interest in adjudicating the dispute—under Utah law; (5) the most efficient judicial resolution of the dispute would be in Utah where witnesses and evidence are located (since most alleged events took place in Utah); (6) if Plaintiff is indeed entitled to relief, a Utah court would afford him the same; and (7) Utah is a viable alternative forum for this case.

It would not comport with the Due Process Clause for this Court to exercise personal jurisdiction over any of the Defendants in this case. Therefore, Defendants request that the Court grant their Motion to Dismiss based on lack of personal jurisdiction.

### 2.   Improper venue

Plaintiff's complaint should also be dismissed for improper venue. According to 28 U.S.C. § 1391(c), there are specific rules for where cases may be brought in federal court:

> A civil action may be brought in—
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Additionally, the Ninth Circuit has provided the following guidance for applying this venue statute in breach of contract cases:

> The overriding purpose of § 1391(a) is to further the convenience of the parties. We believe that the spirit of § 1391(a) is better served in this case if venue for a claim based on breach of contract be the place of intended performance rather than the place of repudiation. We favor this rule because the place of performance is determined at the inception of the contract and therefore parties can anticipate where they may be sued. Furthermore, the place of performance is likely to have a close nexus to the underlying events.[34]

This holding reveals the Ninth Circuit's venue preferences in breach of contract cases. Because the court prefers "place of intended performance" over "place of repudiation" for venue, it logically follows that (in the absence of an agreement otherwise) the court would prefer "place of intended performance" over "place of preliminary negotiations" or "place of initial indefinite offer and conditional acceptance." Furthermore, in this case the place of performance (Utah) does, in fact, have a close nexus to the underlying events.

Here, in Plaintiff's Complaint, a very substantial part (nearly all) of the alleged events or omissions giving rise to Plaintiffs claims occurred in Utah. Plaintiff has alleged that the place of performance of the contract was Utah. All of the other claims in the complaint are based on events that allegedly took place in Utah. Defendants could not have reasonably anticipated being sued on the alleged contract in Arizona. Given Plaintiff's allegations, the balance weighs heavily in favor of proper venue being in Utah rather than Arizona.

Given the foregoing, Defendants request that the Court either dismiss Plaintiff's complaint for improper venue or transfer this case to the proper venue—the U.S. District Court for the District of Utah.

---

[34] *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986)(citations omitted).

### 3. Failure to state a claim upon which relief can be granted

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim."[35] Dismissal under 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[36] To survive a motion to dismiss, a plaintiff's complaint must have sufficient facts "to state a facially plausible claim to relief."[37]

Plaintiff's complaint contains four separate claims against Defendants: (1) Breach of Contract, (2) Fraud, (3) Fraud, and (4) Endangerment. Each of these claims fails to state a claim upon which relief can be granted. Additionally, while Plaintiff has included Lifeline, NAH, and the Trust as Defendants, he has failed to allege the actual involvement of these entities to any material extent whatsoever. Plaintiff attempted to bring these three entities into the case by alleging that Howard, "acting as the authorized agent for [NAH]," stated that NAH was "financing the venture." Plaintiff also alleged that Lifeline was eventually "created to administrate the venture."  These allegations fail to establish how these three entities even belong in the case as Defendants. Therefore, at the least, the Court should dismiss Lifeline, NAH, and the Trust from this case. Plaintiff has obviously included these entities only in an attempt to create some artificial leverage of some kind against Howard.

1. Breach of Contract

Plaintiff's claim for Breach of Contract fails to state a claim. In Arizona "[i]t is well established that, in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages."[38]

---

[35] *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).

[36] *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988).

[37] *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010).

[38] *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004)

As a preliminary matter, Plaintiff's citations to Arizona's version of the Uniform Commercial Code (UCC) are inappropriate, because the contract he has alleged is not governed by the UCC. It is well-established basic contract law that the UCC governs contracts for the sale of movable goods, but not services.[39] Contracts for services fall outside the UCC statutes, and are therefore governed by the common law. Here, Plaintiff repeatedly characterized the contract as one for his "services," although he later claimed he was to produce "Goods." Obviously, an employment contract to produce and direct a film is a contract for services—not for movable goods. Consequently, all of Plaintiff's citations to the Arizona UCC are inapplicable to this case, and the special UCC contract rules do not apply. The contract, as alleged by Plaintiff, is governed by the common law of Arizona.

Plaintiff has failed to allege sufficient facts that establish the existence of a contract between Plaintiff and Defendants. Under Arizona law, existence of an enforceable contract requires proof of offer, acceptance, consideration, and *sufficient specification of terms so that the obligations involved can be ascertained*.[40] Additionally, "[a] party will not be subjected to a contractual obligation where the character of that obligation is so indefinite and uncertain as to its terms and requirements that it is impossible to state with certainty the obligations involved."[41] The Arizona Court of Appeals has explained:

> Although the terms and requirements of an enforceable contract need not be stated in minute detail, it is fundamental that, in order to be binding, an agreement *must be definite and certain so that the liability of the parties may be exactly fixed*. Terms necessary for the required definiteness frequently include time of performance, place of performance, price or compensation, penalty provisions, and other material requirements of the agreement.[42]

---

[39] *See* Ariz. Rev. Stat. Ann. §§ 47-2102 & 47-2105

[40] *Adiutori v. Sky Harbor Intern. Airport*, 880 F.Supp. 696, 709 (D. Ariz. 1995).

[41] *Aztec Film Productions v. Tucson Gas & Elec. Co.*, 463 P.2d 547, 549 (Ariz. Ct. App. 1969).

[42] *Pyeatte v. Pyeatte*, 661 P.2d 196, 200 (Ariz. Ct. App. 1983)(emphasis added).

Here, Plaintiff's allegations of the existence of a contract between himself and Defendants are fundamentally deficient. Plaintiff acknowledges that there is no written contract between the parties. In his Complaint, Plaintiff alleged that Howard orally offered him a position as a "major equity partner" in a filming project in exchange for his directing and production services. Plaintiff has not alleged the existence of at least one definitive essential term: price. The term "major equity partner" is not defined or explained in the alleged offer. According to Plaintiff, Howard never promised a specific amount or percentage of equity, and also never promised a specific amount or rate of compensation. As Plaintiff alleged, the precise terms concerning compensation were left open and not finalized or formalized. Under the facts as pleaded by Plaintiff, there is no way for the Court to determine with definite certainty what Defendants' alleged contractual obligations were.

If, hypothetically, Defendants (under the facts of this case as alleged by Plaintiff) eventually assigned Plaintiff an equity interest in the project of 25%, the Court would not be able to determine, in a subsequent breach of contract claim, if that particular percentage equity was what Defendants contractually obligated themselves to. If Plaintiff were to then claim that he was expecting 50% equity, the Court would have no basis to resolve the dispute, because the term was left open and uncertain by the parties. "The court's function . . . cannot be that of contract maker. Nor can the court create a contract simply to accomplish a purportedly good purpose."[43] Since, according to Plaintiff's allegations, essential terms were always left open and unformalized, this Court cannot supply terms that the parties did not specifically agree to, and the Court cannot divine the parties' expectations in the absence of stated specifics. Plaintiff seems to have alleged nothing more than a promise to negotiate or formalize precise terms at some time in the future, which is not a binding contract.

---

[43] *Pyeatte v. Pyeatte*, 661 P.2d 196, 201 (Ariz. Ct. App. 1983)(citations omitted).

As a side note, Plaintiff has no standing to make claims for Mr. Ard or anyone else. Plaintiff seemingly attempts to represent the interests of other individuals—none of which are included in this lawsuit. Such attempts are improper, and the Court should disregard them.

Since Plaintiff has failed to allege the existence of all of the elements required for a binding contract, namely, *sufficient specification of terms so that obligations involved can be ascertained*, his claim for breach of contract should be dismissed for failure to state a claim.

## 2. Fraud

As Plaintiff's Complaint recites, the nine well-known elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; and (9) his consequent and proximate injury.[44] Additionally, Rule 9(b) of the Federal Rules of Civil Procedure states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Plaintiff has failed to allege facts that would satisfy each of the elements of fraud, and has failed to state with particularity the circumstances constituting fraud. He has not stated, with particularity, precisely what representation Howard made to Plaintiff—the complaint is too vague to extract what exactly Plaintiff claims Howard said or represented. Paragraph no. 64 of the Complaint seems to allege that Howard's "material

---

[44] *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 77, 985 P.2d 556, 562 (Ariz. Ct. App. 1998).

misrepresentations and/or omissions" were concerning whether he was a tortfeasor in an unrelated Georgia case. Other than that, Plaintiff only states that "Defendants misrepresented material facts," but without stating, with particularity, what exactly those representations were. Since it is unclear what the alleged representation was (other than a totally irrelevant reference to Howard's involvement in Georgia litigation), Plaintiff has also failed to properly allege with particularity that the statement was false, that it was material, or that Howard had knowledge of the representation's falsity or ignorance of its truth.

Furthermore, under Arizona law, "[a] claim of fraud . . . does not lie for a promise to do something in the future."[45] To the extent Plaintiff is claiming that Howard's alleged promise to give Plaintiff equity in the project (in the future) constitutes fraud, such a claim is inappropriate under the law, because "in order to support a claim for fraud, the representation must be of a matter of fact existing in the present, and not merely an agreement or promise to do something in the future . . . ."[46]

Since Plaintiff has not sufficiently alleged facts with particularity that, if proven, would state a claim for fraud against Defendants, this claim should be dismissed.

3. Fraud (motorcycle bonus)

In this claim, Plaintiff alleges that Howard misrepresented several things about the condition of a motorcycle Howard allegedly gave to Plaintiff as a "bonus." This claim simply misses the basic purpose and scope of what a claim for fraud really is. As set forth above, there are nine well-known elements required to state a claim for fraud. And again, Plaintiff fails in this claim to state, with particularity, facts that would satisfy each element.

---

[45] *MH Inv. Co. v. Transamerica Title Ins. Co.*, 162 Ariz. 569, 574, 785 P.2d 89, 94 (Ariz. Ct. App. 1989).

[46] *Walters v. First Federal Sav. and Loan Ass'n of Phoenix*, 131 Ariz. 321, 325, 641 P.2d 235, 239 (Ariz. 1982).

Plaintiff has alleged that he had a contract with Defendant to work on a film production. According to Plaintiff's own allegations, he was already under a contractual duty to work (and was working) at the time Howard allegedly gave Plaintiff the motorcycle as a "bonus." Plaintiff claims that Howard gave the motorcycle as a bonus incentive to persuade Plaintiff to continue working on the project. However, according to Plaintiff's own pleadings and theory, he was obligated (under the alleged contract) to continue working even if the motorcycle bonus never happened. Since Plaintiff's Complaint indicates that Howard was under no obligation to give the motorcycle as a bonus, and Plaintiff promised nothing new in exchange for the bonus, the motorcycle was really a completely gratuitous *gift* from Howard.

With that determination in place, a claim for fraud concerning representations of the condition of a gift is legally impossible and ridiculous. Plaintiff did not give or promise anything in exchange for the gift—at least nothing that he was not already obligated to do (under the alleged contract). A plaintiff cannot claim fraud unless he relies on something to his detriment. In the gift context, the receiver of the gift cannot claim fraud if the gift was not exactly as the gift giver described it to be. How has the gift receiver relied? How has he been harmed? A fraud claim is fundamentally incongruent with this kind of gift-giving context.

Plaintiff's claim of fraud concerning the motorcycle bonus is fundamentally inappropriate as a claim, especially given the more stringent pleading requirements for fraud claims. The Court should dismiss this cause of action for failure to state a claim upon which relief can be granted.

4. Endangerment

Plaintiff's claim for "endangerment" is based on a provision from Arizona's criminal code (Ariz. Rev. Stat. Ann. § 13-1201). However, the Arizona Court of Appeals has

explained that "[t]he general rule is that 'no private cause of action should be inferred based on a criminal statute where there is no indication whatsoever that the legislature intended to protect any special group by creating a private cause of action by a member of that group.'"[47]

Here, there is nothing in the criminal "endangerment" statute cited by Plaintiff that provides an individual a private cause of action for civil damages. Therefore, the Court should dismiss this claim for failure to state a claim upon which relief can be granted.

## CONCLUSION

Based on the foregoing, the Court should dismiss Plaintiff's claims against all named Defendants for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. If the Court is not inclined to grant the motion to dismiss for improper venue, Defendants request a transfer of venue to Utah.

RESPECTFULLY SUBMITTED this 15th day of January, 2013.


**DAVIS MILES MCGUIRE GARDNER, PLLC**


By___/s/ Scott F. Gibson_____
       Scott F. Gibson
       80 E. Rio Salado Pkwy., Ste. 401
       Tempe, AZ 85281
       *Attorneys for Defendants*

---

[47] *Phoenix Baptist Hosp. & Medical Center, Inc. v. Aiken*, 877 P.2d 1345, 1350 (Ariz. Ct. App. 1994)(citation omitted).

16

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** was served upon all persons entitled to receive notice in this case via ECF notification or by U.S. Mail on January 15, 2013 to the following:

Magistrate Judge D. Thomas Ferraro
United States District Court
Evo A. DeConcini U.S. Courthouse
405 West Congress Street, Suite 6660
Tucson, AZ  85701

James Arnett
9288 N. Monmouth Court
Tucson, AZ 85742
*Plaintiff Pro Per*


/s/ Annette T. Hernandez

17