

1
2
3
4
5
6

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

James Arnett,                        )

        Plaintiff,               )

vs.                                  )    **No. 4:12-CV-00311-DCB-DTF**

Benjamin Snow Howard, et al.,        )    **RESPONSE TO MOTION**

        Defendants.              )

_____ )

### Response To Defendants' Motion To Dismiss

    Representing himself *Pro Se*, Plaintiff James Arnett filed his First Amended Complaint [Doc. 35] against Defendants Howard, et al., in the United States District Court For The District Of Arizona on 7 January 2013, as ORDERED by this honorable Court [Doc. 34].

    On 15 January 2013, Defendants filed their Motion To Dismiss [Doc. 37], as their (de facto) Answer to Plaintiff's First Amended Complaint [Doc. 35].

    Plaintiff hereby OPPOSES Defendants' Motion To Dismiss [Doc. 37].

    Whereas, Plaintiff's First Amended Complaint [Doc. 35] contains sufficient

1   allegations, affidavits and compelling Prima Facie evidence to demonstrate
2   Jurisdiction as a matter of Due Process, Plaintiff's prior filings [Docs. 25 & 32],
3   further demonstrate at length and in great detail, Jurisdiction, as well as having
4   demonstrated Proper Venue by a volume of supporting Case Law, for both
5   Jurisdiction and Venue to be proper in the Forum of this honorable Court for the
6   District of Arizona. Without burdening this honorable Court and Parties with re-
7   articulating arguments already in the Record, Plaintiff hereby incorporates
8   Documents 25 & 32 into this Response, as though set forth in full herein.
9
10   Defendants now argue that Plaintiff has failed to remedy pleading flaws in
11   his First Amended Complaint. By contrast, the United States Supreme Court has
12   determined, "*The Federal Rules reject the approach that pleading is a game of*
13   *skill in which one misstep by counsel may be decisive to the outcome, and accept*
14   *the principle that the purpose of pleading is to facilitate a proper decision on the*
15   *merits.*" Cf. Maty v. Grasselli Chemical Co., 303 U. S. 197.
16
17   THEREFORE, Prima Facie is sufficient [Doc 25 pages 5-6 lines 5-6].
18
19                              **I. JURISDICTION**
20   Whereas, Defendants argue that Plaintiff, "*...fails to allege sufficient facts*
21   *that would establish this Court's personal jurisdiction over Defendants.*" [Doc. 37
22   page 2, lines 9-10], it is made manifest by the allegations and Exhibits therein that
23   Defendant Howard, acting as the sole agent, owner and beneficiary of the
24   remaining Defendants, has fully satisfied all Tests [in Plaintiff's Doc. 25] for:
25        (1)   Purposeful Availment [Doc 25 page 7-8, lines 1-5];
26        (2)   Purposeful Direction [Doc 25 page 8-,9 lines 7-28];
27        (3)   The "But For" test [Doc 25 page 10, lines 1-28];
28        (4)   The Seven Factor Reasonable test [Doc 25 page 11-14, lines 1-28].

1    A surplus of alleged facts are evident in Plaintiff's allegations [Doc. 35],

2  supported by Prima Facie evidence, demonstrating seven months of interjection

3  into this Forum (a full year, if counting back from Defendant first engaging

4  Plaintiff in regard to the project), prior to the four months of production in Utah:

5    (1)    Exhibit "F": Emails make it evident that Defendant Howard's

6  conduction of business using Skype, in regard to his business venture with

7  Plaintiff, go back as far as May 2010, with Defendant seeking Plaintiff's hands-on

8  Services for development of his Website, since at least August 2010 [Exhibit "F"].

9  All of these email communications are verifiable in the Gmail.com online system.

10    (2)    Exhibit "C": Field Phone Records from November 2010,

11  demonstrates *extraordinary* use of a telephone, purchased by Defendant with a

12  (520) Tucson area code, then shipped to Plaintiff for the express purpose of

13  conducting business more continuously and systematically within this Forum.

14    (3)    Exhibits "A" & "B": The affidavits of **Mr. Adelson** and **Mr. Ybarra**,

15  which make evident Defendant Howard's physical entry into this Forum for the

16  express purpose of offering to partner with Plaintiff for the production of an

17  Audio-book, a 30 Second TV spot, and a Motion Picture ("Goods") in order to

18  expand the commercial foundation for his venture, (NOT A DIFFERENT

19  REASON) represented by Defendant's Website, which Plaintiff was providing

20  CSS coding expertize to publish Defendants' Website online.

21    (4)    Exhibit "D": Email confirming Air Transportation purchased by

22  Defendants for the transportation of Plaintiff from this Forum to Utah.

23

24    Additional Exhibits make it evident that Defendant maintained substantial,

25  systematic and a Continuous Relationship in this Forum for an additional five

26  months, after the four months of production in Utah concluded, with his

27  expectation of final assembly within this Forum, for a total of about twelve

28  months of interjection within this Forum to establish a Continuing Relationship;

1   (5) Exhibit "E": Payments made into this Forum from Defendants to

2 Plaintiff and **Mr. Ard**, which remove any doubt that Defendants had any pretense

3 of any lack of obligation, regarding their deficient Performance.

4   (6) Exhibit "T": Defendants' email demonstrates his expectation of being

5 haled into this Forum, by (allegedly) lying, as having no Contract whatsoever with

6 Plaintiff, followed by bogus threats of civil and criminal consequences to induce

7 Plaintiff to forbear seeking Judicial relief, availing himself of this Forum's laws.

8   (7) Exhibit "H": Affidavit of **Mr. Ard**, bearing witness in concurrence

9 with the truth of Plaintiff's allegations, to the extent of the events he witnessed.

10   Whereas, Defendants have stated, *"While Defendants strongly disagree*

11 *with the Plaintiff's account of the facts, for purposes of this motion to dismiss*

12 *Defendants must assume the truth of Plaintiff's allegations..."* [Doc. 37 page 6,

13 line 2-4], Defendants have CONCEDED (*de facto*) to this honorable Court, that It

14 may assume the same truth in Plaintiff's allegations, affidavits, and Prima Facie

15 evidence as being true and correct (which shall be demonstrated to be so, under

16 the scrutiny of this honorable Court) as facts not in legitimate dispute.

17   It is well known that, at this stage of the litigation the Plaintiff's burden is

18 relatively light. *"The decisive answer to this is that the Federal Rules of Civil*

19 *Procedure do not require a claimant to set out in detail the facts upon which he*

20 *bases his claim. To the contrary, all the Rules require is a 'short and plain*

21 *statement of the claim' that will give the defendant fair notice of what the*

22 *plaintiff's claim is and the grounds upon which it rests. The illustrative forms*

23 *appended to the Rules plainly demonstrate this. Such simplified "notice pleading"*

24 *is made possible by the liberal opportunity for discovery and the other pretrial*

25 *procedures"* Conley v. Gibson 355 US 41 47 48 S.Ct. 99 103, 2 L.Ed.2d 80 1957.

26

27   These Exhibits of the Amended Complaint [Doc. 35] comprehensively

28 demonstrate the propriety of Personal Jurisdiction this honorable Court has over

1  Defendants Howard, et al., supported by Plaintiff's Documents 25 and 32,

2  satisfying and meeting the standards for determining adherence to Due Process,

3  faithfully upheld by this honorable Court. Now that the burden has shifted to

4  Defendants to present a compelling case that Jurisdiction is unreasonable, they

5  have failed to do so. What they have offered is merely this [citing Defendants'

6  arguments in Doc. 37 page 8, lines 5-15 all in *italics*]:

7  *(1) the extent of Howard's alleged purposeful interjection into Arizona is minimal;*

8      This statement has been established by Prima Facie evidence to be a gross

9  and implausible exaggeration, which is misleading to this honorable Court.

10  *(2) the burden on Howard of litigating in Arizona is great;*

11      This is merely a conclusionary statement without foundation, beyond

12  Defendants desire not to be held liable in any Court. Defendants will require

13  counsel in Utah too, and no burden beyond that has presented itself, nearly 40

14  documents into this litigation. Their answer to factor two fails.

15  *(3) if this Court exercised jurisdiction over Howard it would conflict with the*

16  *sovereignty of Utah since the alleged actions took place in Utah and are governed*

17  *by Utah law;*

18      The sovereignty of Utah is not in conflict because this is a Federal Question

19  with a diversity of parties. This case is not before an Arizona State Court, where

20  this argument would not be as invalid as it is here. Fail.

21  *(4) Utah has an interest in adjudicating the dispute—under Utah law;*

22      Again, this Case involves a Federal question with a diversity of violations

23  and parties across state lines. Utah has no interest in resolving Federal questions.

24  *(5) the most efficient judicial resolution of the dispute would be in Utah where*

25  *witnesses and evidence are located (since most alleged events took place in*

26  *Utah);*

27      There are no allegations of proof that any specific material evidence is in

28  Utah, whereas, there is no doubt the Motorcycle [Doc. 35 Exhibit "M"] is located

1   within this Forum, and no list of material witnesses required to testify has yet been

2   established. Nearly 40 documents into this litigation, it is far more efficient to

3   remain in this Forum, as serving Process to Defendant Howard has already proven

4   to be a very inefficient task. Burdening another Court with repeated procedure at

5   this point is not efficient. Their answer to factor five fails.

6   *(6) if Plaintiff is indeed entitled to relief, a Utah court would afford him the same;*

7       No one can guarantee that a Utah Court would afford the same relief,

8   considering that Utah is well known as the L.D.S. (Mormon) world capital,

9   predominantly populated by the same. Plaintiff has been in that environment and

10   certainly believes that its reputation for prejudice exists within the greater L.D.S.

11   population, in favor of their own, *regardless of guilt*. To illustrate the validity of

12   that concern, Defendants' Counsel specializes in Intellectual Property law, in the

13   field of genetics, and quite accomplished in that field too. Why has he altered his

14   practice to defend Defendant Howard? Because he too is a Mormon, driven to

15   protect the greater good of the L.D.S. institution from the embarrassment of a

16   tortfeasor holding a Temple recommend, even if it means defending someone they

17   know is in violation of Church law (breaking a multitude of Commandments).

18   This is what can reasonably be expected to any unknown degree in Utah.

19   Therefore, their answer to the sixth factor of this test is murky at best.

20   *(7) and Utah is a viable alternative forum for this case.*

21       Utah is NOT a viable alternative because Plaintiff is I.F.P. and cannot afford

22   an attorney in this Forum, much less in Utah. Plaintiff cannot be expected to move

23   to Utah to prosecute this Case because he does not have the means. Moving this

24   Case to Utah would create an injustice, disqualifying Defendants' seventh factor.

25       THEREFORE, Plaintiff James Arnett respectfully requests that this

26   honorable Court DENY Defendants' Motion To Dismiss, based on their offering of

27   heavily flawed and/or groundless arguments against Personal Jurisdiction.

28

## II. VENUE

Defendants seek to either Dismiss, pursuant to Federal Rule 12(b) or, in the alternative, transfer this case to Utah under 28USC§1391(c), under the theory that this honorable Court is the improper Venue for this Case. Because Venue is proper in this honorable Court, pursuant to 28USC§1391(c)(2), due to the fact that a substantial part of property that is the subject of the action is situated in this Forum, Defendants' request for dismissal or transfer to Utah should be DENIED.

As the Moving party, Defendants bear the burden of demonstrating that Utah is clearly more convenient for the Parties, and will better serve the interests of justice [see *Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000)*]. The determination of whether to transfer is addressed on a case-by-case basis and requires a weighing of factors for and against transfer [see *id. at 498; Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986)*].

Plaintiff's choice of forum, while not dispositive, must be given deference – and unless all other factors balance strongly in favor of a transfer, a plaintiff's choice should not be disturbed [see *Gates Learjet Corporation v. Jensen, 743 F.2d 1325, 1335 (9th Cir. 1984) (reversing district court's order of dismissal based on forum non-convenience analysis); Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985) (finding courts will generally not order transfer unless convenience and justice factors strongly favor venue elsewhere)*].

"Greater deference is due [to Plaintiff's choice of forum] because 'a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.'" *Gates Learjet, 743 F.2d at 1335*, quoting *Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n.23 (1981)* (quotation omitted). When a discretionary Venue transfer would only shift the inconvenience from Defendants to Plaintiff, the Motion to transfer should be denied [see *Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834 (9th Cir. 1985) (affirming district court's denial of transfer for convenience)*].

1    In addition to the judicial preference of according substantial weight to the
2    Plaintiff's choice of forum, Arizona also has an interest in providing a Venue for
3    its citizens to seek resolution of their legal disputes. Additionally, Arizona Courts
4    have already expended time and resources on this matter. Arizona courts are also
5    most familiar with Arizona law. Should this matter be transferred to Utah, there
6    would be judicial inefficiency in having to get the matter reassigned – not to
7    mention the further delay and prohibitive costs to Plaintiff to hire a lawyer in Utah
8    when he cannot afford one in Arizona and must represent himself Pro Se.

9    Defendants have simply not met their burden of proof in establishing that a
10   transfer of this case is warranted.

11   Additionally, there is an another aggrieved party now, Plaintiff Gerren Ard
12   in Case 4:2013-CV-00058-TUC-DCB suing Defendants in this same matter, the
13   convenience of the Parties is <u>twice amplified</u> for Proper Venue in this Forum.

14   THEREFORE, Plaintiff believes, Venue remains properly and firmly
15   anchored in this Forum, and under all applicable Case Law cited in Plaintiff's
16   Documents 25 & 32. Plaintiff respectfully requests that this honorable Court
17   DENY Defendants' Motion To Dismiss, based on Improper Venue.

18

19                    **III. FAILURE TO STATE A CLAIM**

20   Defendants argue that Plaintiff has failed to state claims upon which relief
21   can be granted on all Four of his Causes Of Action. However, even a cursory read
22   of Plaintiff's Complaint, makes it evident that Plaintiff Arnett has indeed made
23   facially plausible claims for relief in each of his Causes of Action.

24   Defendants argue, that Plaintiff has failed to allege the actual involvement of
25   the additionally named Defendants, despite Defendant Howard acting as the sole
26   owner and authorized agent for each, in order to create the injustices illustrated
27   within the Complaint [Doc. 35], by engaging in tortious conduct that qualified
28   each additionally named Defendant as an Alter Ego of Defendant Howard.

First Cause Of Action

Defendants argue that the Goods delivered to Defendants by Plaintiff are to be somehow interpreted to be "Services", disqualifying them for protection under the Uniform Commercial Code (UCC) in Title 47 of the Arizona Revised Statues. Now, A.R.S. 47-2105 sufficiently defines "Goods" to the extent that Defendants' assertion may be completely disregarded by this honorable Court. The Goods in this matter consist of tangible, movable items: a Motion Picture; an Audio Book; and, a 30 second TV Commercial Spot.

Regarding Defendants' side note, Plaintiff has NOT made any Claims on behalf of Mr. Gerren Ard in his Amended Complaint [Doc. 35]. In fact, Mr. Ard has filed his own Complaint [**4:2013-CV-00058-TUC-DCB**] against Defendants Howard and Life Line Media LLC., on his own behalf in this matter.

Whereas Defendants further argue that "*Plaintiff has failed to allege sufficient facts that establish the existence of a contract...*" Plaintiff's Performance and Defendants' Acceptance of said Goods established that Contract in no uncertain terms. Merely because Defendants indefinitely failed to formalize the original terms of the Contract (his elusive Equity ownership offer), that does not negate his agreement to make cash payment to Plaintiff, in lieu thereof. That cash amount is easily quantifiable at the prevailing price at the time, as a direct matter of law. That  amount is the foundation of Plaintiff's First Cause Of Action, <u>not</u> the Equity, which was rendered moot by the secondary offer of payment.

THEREFORE, supported by the allegations in Plaintiff's First Amended Complaint [Doc. 35] and its supporting Exhibits, and the evidence on DVD discs, Plaintiff has indeed stated a facially plausible claim for relief, and respectfully requests that this honorable Court DENY Defendants' Motion To Dismiss, based on a failure to state a claim for Plaintiff's First Cause Of Action.

Second Cause Of Action

Defendants argue, *"Plaintiff has failed to allege facts that would satisfy each of the elements of fraud, and has failed to state with particularity the circumstances constituting fraud."*

Whereas Plaintiff has alleged sufficient facts evident in his First Amended Complaint [Doc. 35], supported by Prima Facie evidence, and the affidavit of **Mr. Ard** [Doc. 35 Exhibit H], concurring with, and testifying to the factuality of Plaintiff's allegations, Defendants merely ignore the allegations of Defendant Howard's Omissions and Misrepresentations of Material Facts to Plaintiff.

Defendant Howard omitted any disclosure to Plaintiff of his career in an organized criminal enterprise [Doc. 35 Exhibit L], predating the year 2006, which, upon discovery (through any number of online public record search services), directly impacts the market value of commercial products promoted by an individual passing himself off as a "spiritual healer" of abuse victims, when in fact, he is going to trial in another Federal Court in the Northern District of Georgia [1:09-cv-02799-ODE], brought before the bar by the United States S.E.C. Receiver for refusing to restore the victims of said criminal enterprise for the funds Defendant Howard and others defrauded many victims. *But for* Defendant Howard's omissions, Plaintiff would have *in no way* accepted Defendant's offer.

Defendant Howard further misrepresented to Plaintiff that the United States government was unjustly persecuting him, and that he had no relationship with Grafton Enterprises (his co-defendant), when in fact, he was Grafton's authorized agent, who used his children (all minors at the time), as well as his wife at the time, as the sham owners and corporate board.

Defendant Howard also Misrepresented Material Facts to Plaintiff when he claimed that he was too "broke" to pay Plaintiff and **Mr. Ard**, when in fact Defendant Howard was busy purchasing a plurality of real estate properties in Nevada (beyond I.R.S. scrutiny) during that same time [Doc. 35 Exhibit K].

1    Defendant Howard made it evident in his email of the 25th of February 2012

2    [Doc. 35 Exhibit T] that his intent was to defraud Plaintiff by denying any

3    Contract existed – after he had Accepted the Goods and benefited from them, by

4    fraudulently exhibiting them online as his own property [Doc. 35 Exhibit Q].

5    Now, when Defendants parrot the phrase "Future Promises", it must be duly

6    noted that Omissions and Misrepresentation of Material Facts to induce

7    Performance with the intent to defraud do not qualify as a Future Promise, they

8    merely qualify as a deception when a Fraud has been committed.

9    Whereas Plaintiff's First Amended Complaint [Doc. 35] illustrated and

10   stated with particularity, "...*what exactly those representations were.*", Defendant's

11   intent to induce Plaintiff to perform under such a Contract is made self-evident by

12   the comprehensive recitation of events in said Complaint. There is no need to re-

13   state anything more herein than, Plaintiff hereby incorporates Document 35 into

14   this Response, as though set forth in full herein.

15   THEREFORE, supported by the allegations in Plaintiff's First Amended

16   Complaint [Doc. 35] and its supporting Exhibits, and the evidence on DVD discs,

17   Plaintiff has indeed stated a facially plausible claim for relief, and respectfully

18   requests that this honorable Court DENY Defendants' Motion To Dismiss, based

19   on a failure to state a claim for Plaintiff's Second Cause Of Action.

20

21                          Third Cause Of Action

22   Defendants argue that the Motorcycle was, "...*really a completely gratuitous*

23   *gift from Howard.*", whereas Plaintiff has already alleged that said Motorcycle was

24   offered as an inducement to continue working, stated in his Complaint [Doc. 35].

25   No speculation is required for a clear understanding that this property was *in*

26   *no way* offered as any kind of "*gratuitous gift*".  Plaintiff agreed to continue to

27   labor with this bonus, when he was lawfully entitled to cease all labor under the

28   provisions of A.R.S. 47-2705. **Mr. Ard** witnessed Defendant Howard transferring

1    said Motorcycle, not as a gift, but as an express incentive to continue laboring.

2    Defendant had put this "Bonus" in writing, which Mr. Ard retained until

3    Defendant Howard took possession of it.

4        THEREFORE, supported by the allegations in Plaintiff's First Amended

5    Complaint [Doc. 35] and its supporting Exhibits, and the evidence on DVD discs,

6    Plaintiff has indeed stated a facially plausible claim for relief, and respectfully

7    requests that this honorable Court DENY Defendants' Motion To Dismiss, based

8    on a failure to state a claim for Plaintiff's Third Cause Of Action.

9

10   <u>Forth Cause Of Action</u>

11       Defendants argue that, "*However, the Arizona Court of Appeals has*

12   *explained that "the general rule is that 'no private cause of action should be*

13   *inferred based on a criminal statute where there is no indication whatsoever that*

14   *the legislature intended to protect any special group by creating a private cause of*

15   *action by a member of that group.'"* AND "*...there is nothing in the criminal*

16   *"endangerment" statute cited by Plaintiff that provides an individual a private*

17   *cause of action for civil damages.*"

18       Defendants are mistaken. Despite this honorable Court's full knowledge and

19   just enforcement of the Arizona Revised Statutes, Plaintiff shall break it down for

20   the edification of Defendants:  It remains an *undisputed fact* that Plaintiff resided

21   at Defendant Howard's residence during his four months in Utah. Defendants

22   committed Endangerment against Plaintiff during that time. With that undisputed

23   fact in mind, A.R.S. 13-3601(A)(1) provides:

24       "<u>Domestic violence; definition;</u>

25       A. <u>"Domestic violence" means any act that is</u> ... <u>an offense prescribed in</u>

26       <u>section</u> ... <u>13-1201 [Endangerment]</u>, ... <u>if any of the following applies:</u>

27       1. <u>The relationship between the victim and the defendant is one of</u> ...

28       <u>persons residing or having resided in the same household.</u>

From that Statute, it is plain that Plaintiff does indeed qualify as belonging to a group which "...*the legislature intended to protect...*" from acts of Domestic Violence. Criminal Endangerment (13-1201) is classified as Domestic Violence.

Further, A.R.S. 12-511 provides for Civil Actions Arising From Criminal Conduct. Specifically, A.R.S. 12-511(2)(A) defines Criminal Conduct as:

> "Means any act, including all preparatory offenses, in violation of section ... 13-3601 [Domestic Violence]...

A solid foundation is evident to support that Endangerment A.R.S. 13-1201 fully applies to Plaintiff, as he belongs to a group the legislature intended to protect, specified under A.R.S. 12-511, and he is entitled to bring suit against Defendants because Endangerment is specified as an act of Domestic Violence under A.R.S. 13-3601, leaving no ambiguity to the proper application of these Arizona Revised Statutes against Defendants.

THEREFORE, supported by the allegations in Plaintiff's First Amended Complaint [Doc. 35] and its supporting Exhibits, and the evidence on DVD discs, Plaintiff has indeed stated a facially plausible claim for relief, and respectfully requests that this honorable Court DENY Defendants' Motion To Dismiss, based on a failure to state a claim for Plaintiff's Forth Cause Of Action.

## CONCLUSION

Plaintiff re-states the United States Supreme Court decision, "*The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome, and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.*" Cf. Maty v. Grasselli Chemical Co., 303 U. S. 197.

Plaintiff further re-states, "*The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short*

1  *and plain statement of the claim' that will give the defendant fair notice of what*
2  *the plaintiff's claim is and the grounds upon which it rests. The illustrative forms*
3  *appended to the Rules plainly demonstrate this. Such simplified "notice pleading"*
4  *is made possible by the liberal opportunity for discovery and the other pretrial*
5  *procedures"* Conley v. Gibson 355 US 41 47 48 S.Ct. 99 103, 2 L.Ed.2d 80 1957.

6      It remains evident, Defendants had solicited, contracted, received, accepted,
7  and benefited from Goods produced for him by Plaintiff, but has merely evaded
8  payment by systematic deception. Even now, Defendants pray in vain for this
9  honorable Court to create a further injustice by allowing them to abscond to Utah
10 with Plaintiff's unpaid Goods, beyond his ability to seek relief by judicial means.

11

12     WHEREFORE, Plaintiff James Arnett respectfully requests that this
13 honorable Court DENY Defendants' Motion To Dismiss [Doc. 37] in its entirety,
14 so that Justice may proceed here, without further and unnecessary delay to
15 entering the Discovery Phase, in this Forum, under the Jurisdiction of this
16 honorable Court, in the United States District Court For The District of Arizona.

17

18     Respectfully submitted on this first day of February 2013.

19

20

21

22

23 James Arnett, In Propria Persona (I.F.P.)
24 9288 N. Monmouth Court
25 Tucson, Arizona 85742
26 (520)878-9779 (home)
27 (520)304-0129 (field)
28 jamesarnettaz@gmail.com (email)

4:12-CV-00311-DCB-DTF

**REPLY TO DEFENDANTS' MOTION TO DISMISS [Doc. 37]**

**ATTACHMENTS (Doc.  35 Exhibits)**

**1 FEBRUARY 2013**


(A)   Affidavit: Steven M. Adelson          (H)   Affidavit: Gerren B. Ard

(B)   Affidavit: Edgar A. Ybarra            (K)   Nevada Real Estate

(C)   Field Phone Records                   (L)   Doc. 101 Huddleston vs. Howard

(D)   Plane Reservations                    (M)   Motorcycle

(E)   Payment Into Forum                    (Q)   Motion Picture On Vimeo

(F)   CSS Emails Into Forum                 (T)   Defendants Negotiation Email

# EXHIBIT "A"

### MR. ADELSON'S STATEMENT

In or around February 2011, I attended a gathering of individuals in the apartment of James Arnett of Tucson, Arizona. At the time, Mr. Arnett was editing his feature motion picture BLOCKED. The purpose of this gathering was to look over the progress of this movie and offer comments.

I recognize the individual in the two photographs below. Although I do not recall his name, I do recall seeing him at the apartment on the evening Mr. Arnett presented his film. I also recall Edgar A. Ybarra was also there on the same occasion.

State of Arizona
County of Pima
On this __ day of __, 20__, _STEVEN M. ADELSON_
personally appeared before me whose identity
I proved on the basis of satisfactory evidence
to be the signer of the above instrument and
he/she acknowledged that he/she executed it

_Notary Public_

OFFICIAL SEAL
LAUREN DAY
NOTARY PUBLIC-ARIZONA
PIMA COUNTY
My Comm. Exp. Sept. 6, 2016

Steven M. Adelson
(520)721-4233

AZDL. B14644601
AZ License

10-9-12
Date

 

Photographs of Ben S. Howard from his Facebook.com page at http://www.facebook.com/benshoward

# EXHIBIT "B"

### MR. YBARRA'S STATEMENT

I recognize the individual in the two photographs below from James Arnett's apartment in Tucson, Arizona, where I saw him, in or around February 2011.

I also recall Steven M. Adelson there on the same occasion, as we were looking over the progress of Arnett's "Blocked" film.

State of Arizona
County of Pima

On this _9th_ day of _OT_ 20_12_, _EDGAR A. YBARRA_ personally appeared before me whose identity I proved on the basis of satisfactory evidence to be the signer of the above instrument and he/she acknowledged that he/she executed it.

_Lauren A Day_
Notary Public

Edgar A. Ybarra
(520)480-8943

AR DL D01404643  9/45
AZ License

10-9-12
Date

OFFICIAL SEAL
LAUREN DAY
NOTARY PUBLIC-ARIZONA
PIMA COUNTY
My Comm. Exp. Sept. 6, 2016

 

Photographs of Ben S. Howard from his Facebook.com page at http://www.facebook.com/benshoward

# EXHIBIT "C" 1 of 2

## Payment History    Inbox   x

AL-MUNT CORP celiphonecity1@yahoo.com          2:08 PM (10 minutes ago)
to me

*Khalifa Riad Muntasser*

Office: 520-579-6679

Corporate Headquarters
3720 W Ina Rd, Suite 134
Tucson, AZ 85741

**Payment History List.docx**
35K   View   Download

| account summary | | | |
|---|---|---|---|
| **Name** | BEN HOWARD | **Amount Due** | $0.00 |
| **Account Number** | 340-9367508-1 | **Future Charges 10/09/2012** | $70.76 |
| **Billing Address** | PO BOX 223 HUNTSVILLE, UT 84317   Edit | **My Bill** | View |
| **Status** | Active | | |
| **Automatic Bill Pay** | Not Enrolled | | |
| | | | BridgePay Request |
| **Current Lines of Services** Wireless Lines: 2 | Broadband Lines: 0 | | |
| (520) 304-0129 (520) 358-5638 | | | |

Top of Form

/wEPDwUKLTezh

**Payment History List**

Re-print Receipt  Cancel

# EXHIBIT "C" 2 of 2

| Provider | Product | Date | Account ID | Confirmation ID | Payment | LD | Fee | Total | User | Payment Method | | Action |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cricket | Service Payment | 6/12/2012 1:10:34 PM | 5203040129 | QPAYWP327000285 | $34.00 | $0.00 | $3.00 | $37.00 | 12350041 | Cash | | |
| Cricket | Service Payment | 5/10/2012 1:41:41 PM | 5203040129 | QPAYWP318931571 | $70.76 | $0.00 | $3.00 | $73.76 | 12350041 | Cash | | |
| Cricket | Service Payment | 4/12/2012 1:57:49 PM | 5203040129 | QPAYWP311738809 | $70.76 | $0.00 | $3.00 | $73.76 | 12350041 | Cash | | |
| Cricket | Service Payment | 1/11/2012 2:25:31 PM | 5203040129 | QPAYWP287903708 | $70.76 | $0.00 | $3.00 | $73.76 | 12350041 | Cash | | |
| Cricket | Service Payment | 3/1/2011 4:46:03 PM | 5203040129 | QPAYWP208041189 | $117.00 | $0.00 | $3.00 | $120.00 | 12350041 | Cash | | |
| Cricket | Service Payment | 2/9/2011 5:56:07 PM | 5203040129 | QPAYWP203002596 | $38.00 | $0.00 | $3.00 | $41.00 | 12350041 | Cash | | |
| Cricket | Service Payment | 1/11/2011 4:57:31 PM | 5203040129 | QPAYWP196039484 | $37.40 | $0.00 | $3.00 | $40.40 | 12350041 | Cash | | |
| Cricket | Service Payment | 12/30/2010 5:01:59 PM | 5203040129 | QPAYWP193102386 | $39.78 | $0.00 | $3.00 | $42.78 | 12350041 | Cash | | |

# EXHIBIT "D"

**Changes have been made to your 6/5/2011 flight**  BEN x

Expedia Travel Services notifications@expedia.com                                5/28/11 
to me

### Your Flight Details Have Changed
**Passenger(s):** ARNETT/JAMES
**Expedia Itinerary Number:** 137137017384
**United Airlines confirmation code:** T1FX7M

Dear Expedia Traveler,

United Airlines made the following change(s) to your itinerary:

* Changed the flight number for 2 of your flights.

Airlines will occasionally adjust flight schedules. United Airlines has done their best to find an alternative that offers minimal disruption to your trip and we have updated your itinerary accordingly. It is not necessary to call us regarding the change.

Your updated flight itinerary is below, and you can always view your most up-to-date itinerary at Expedia.

**Tucson to Denver**

| Flight Change Details | Sunday, Jun 05, 2011 at 8:42 AM | Change in Flight |
|---|---|---|
| | United Airlines | Flight Number: UA6279 6858 (change) |
| | From: (TUS) Tucson AZ, USA | Depart: 8:42 AM |
| | To: (DEN) Denver CO, USA | Arrive: 11:40 AM |
| | Status: CONFIRMED | Class: Coach |
| | Equipment: CRJ-700 Canadair Regional Jet | Seat: 13B |
| | Operated By: /UNITED EXPRESS/SKYWEST AIRLINES(UA) | |

**Denver to Salt Lake City**

| Flight Change Details | Sunday, Jun 05, 2011 at 1:56 PM | Change in Flight |
|---|---|---|
| | United Airlines | Flight Number: UA6727 6617 (change) |
| | From: (DEN) Denver CO, USA | Depart: 1:56 PM |
| | To: (SLC) Salt Lake City UT, USA | Arrive: 3:27 PM |
| | Status: CONFIRMED | Class: Coach |
| | Equipment: CRJ-700 Canadair Regional Jet | Seat: |
| | Operated By: /UNITED EXPRESS/SKYWEST AIRLINES(UA) | |

Sincerely,
The Expedia Travel Team

Please do not reply to this e-mail as this mailbox is not monitored.

You are receiving this transactional email based on a recent booking or account-related update on Expedia.com.

CONTACT US
To contact us or send feedback, please click here or contact us via postal mail at: Expedia, Inc., attn: EMC Team, 333 108th Avenue NE, Bellevue, WA 98004. For additional assistance, visit the Expedia Customer Support Center, or call 1-800-Expedia.

CST# 2029030-40

@2009 Expedia, Inc. All rights reserved. [obscured] plane logos are registered trademarks, or trademarks [obscured] mentioned herein may be trademarks of their respe[obscured]

For internal use only
* TPID: 1
* TUID: 230466865
* Itinerary Number: 137137017384

OQPOTG

| from: | James Arnett jamesarnettaz@gmail.com |
|---|---|
| to: | B Howard <elderb123@gmail.com> |
| date: | Sat, May 28, 2011 at 9:52 AM |
| subject: | Fwd: Changes have been made to your 6/5/2011 flight |
| mailed-by: | gmail.com |

**EXHIBIT "E"**



**EXHIBIT "F"**

| Sender | Subject | Date |
|---|---|---|
| me | Want to read my story? - Don't share it with anyone | 11/15/11 |
| Jason, me (2) | Jason Mallory - 2004 Robot Movie Project - Hi Jason, I went over your material - I saw that video for the exoskeleton before and I want to a... | 11/1/11 |
| B Howard | File names - Promo01 DSC_6163.mov promo 01 war Promo02 DSC_6164.mov promo 02 war Promo03 DSC_6165.mov promo 03 war | 10/29/11 |
| me | Utah film directory - http://ut.reel-scout.com/crew_log1.aspx | 8/31/11 |
| Kimber, me (3) | Fwd: This is about funding anything - Info from Kimber Forwarded message From: Kimber leigh <kimberaleigh@mac.com | 6/27/11 |
| DAWN, Connie (3) | FW: SPECIAL GUEST FILMMAKER Available- Free of charge - Thank you kindly for your offer. Dawn, but there's more in finishing the s... | 6/11/11 |
| Expedia, me (2) | Changes have been made to your 6/5/2011 flight - Forwarded message From: Expedia Travel Services <notifications@expedia.com | 5/28/11 |
| Expedia, me (3) | Expedia travel confirmation - Salt Lake City, UT (2) - Jun 05, 2011 - (Itin# 137197017384) - Forwarded message From: Expedia Travel S... | 5/24/11 |
| me | Extensions - See if these get there! | 2/4/11 |
| B, me (8) | Web - Here are two Dreamweaver Extensions you need to install from within Dreamweaver. You will need two | 1/25/11 |
| B Howard | Cleaned up version - Cleaned up version | 11/14/10 |
| B Howard | more - more | 11/14/10 |
| B Howard | Web stuff - Web Stuff | 11/14/10 |
| B Howard | Covers - Covers | 11/12/10 |
| me | Examples - See if you like the samples of this type of content presentation. http://www.propositseven.com/ | 11/12/10 |
| me | Look - http://www.jamesarnett.com/site/Backimages.html | 11/9/10 |
| me, B (4) | Cell Test - What happened to you? On Mon., Aug 9, 2010 at 9:47 AM, James Arnett <jamesarnettaz@gmail.com> | 8/9/10 |
| me, B (2) | Skype - Tried to reach you but you didn't show up online. my skype is on and will stay on for the evening | 5/24/10 |
| me | Great News! - Hi Ben, My friend Robert wanted to know more about the real estate collateral behind the film. Can | 5/4/10 |
| me, Robert (17) | New Images - More :) On Thu, Apr 29, 2010 at 1:56 PM, James Arnett <jamesarnettaz@gmail.com> wrote: Cool | 4/29/10 |

## EXHIBIT "H"

### MR. ARD'S STATEMENT

I, Gerren Ard, am a graphic artist and designer for multimedia production. I have a Bachelor of Arts degree in the field of Video Game Art and Design (GAD) and a Bachelor of Science Degree in Computer Information Systems (CIS). I have been an artist in the field for many years and worked directly with Mr. James Arnett on several successful projects since 2007, and I know his character very well.

I make the following statements under oath, swearing them to be the truth, which I can testify to honestly because I was a firsthand witness, directly involved with the matter of this case. I have read the complaint (**Document 1**) written by Mr. Arnett.

**I testify to the accuracy of paragraph 7**. I was called by telephone, by Mr. Arnett, who introduced me to Mr. Ben S. Howard on the telephone around June 8[*], 2011. At that time, I had accepted the offer of a job working on Mr. Howard's project in Utah. He bought me an airline ticket and I flew to Utah to work for him several weeks later.

**I testify to the accuracy of paragraph 10**. I was in Utah from July 25[*], 2011 to or around October 13th 2011, around a week after Mr. Arnett's departure from Utah in early October 2011. I can attest to everything he described after my arrival in Utah.

**I testify to the accuracy of paragraphs 12 through 34**. I was a firsthand witness. I saw and heard everything in the complaint, while living at the work site in Utah with Mr. Howard and Mr. Arnett until about October 13[*], 2011, and also afterwards while working with Mr. Arnett in Tucson.

The complaint from Mr. Arnett, while extensive and detailed, still doesn't fully convey the scope of Mr. Howard's petty actions, irresponsibility and deceptions. There are many more things I have to add, that will wait upon my opportunity to formally testify about not being paid-in-full for the work I have done for Mr. Howard. This complaint and testimony, I believe, would further illustrate the bad faith Mr. Howard practiced at what seemed to be any and every opportunity to take advantage of Mr. Arnett and myself.

STATE OF ARIZONA } ss
COUNTY OF PIMA

This instrument was acknowledged before me this _14th_ day of
_October_ 20 _12_ by _Gerren B. Ard_
In witness whereof I herewith set my hand and official seal.

_____ NOTARY PUBLIC

MIRIAM K. PATINO
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Commission Expires
June 30, 2014

_____
Gerren B. Ard
(520) 792-1847

B14922374
AZ License

10/19/12
Date

# EXHIBIT "K"

| ENTITY NAME | NEVADA ID | REG. NUMBER | FILE DATE |
|---|---|---|---|
| 4113 JEFFS HOLDINGS LLC | NV20111311527 | E0263972011-9 | 5/9/2011 |
| 4113 JEFFS PROPERTIES LLC | NV20111311536 | E0263982011-0 | 5/9/2011 |
| COUNT FLEET PROPERTIES LLC | NV20111343144 | E0291042011-2 | 5/20/2011 |
| COUNT FLEET ENTERPRISES LLC | NV20111344176 | E0291922011-8 | 5/20/2011 |
| 181 EAST HOLDINGS LLC | NV20111357905 | E0303792011-6 | 5/26/2011 |
| 181 EAST PROPERTIES LLC | NV20111358023 | E0303902011-1 | 5/26/2011 |
| 6622 WEST HOLDINGS LLC | NV20111369434 | E0313612011-8 | 6/1/2011 |
| 6622 WEST PROPERTIES LLC | NV20111369512 | E0313692011-6 | 6/1/2011 |
| 655 SOUTH HOLDINGS LLC | NV20111430635 | E0367982011-5 | 6/28/2011 |
| 655 SOUTH PROPERTIES LLC | NV20111430690 | E0368032011-3 | 6/28/2011 |
| SUMMER MEADOW ENT. LLC | NV20111470892 | E0402792011-6 | 7/18/2011 |
| SUMMER MEADOW PROP. LLC | NV20111470918 | E0402812011-0 | 7/18/2011 |
| BIRCHTREE HOLDINGS LLC | NV20111497223 | E0426782011-3 | 7/28/2011 |
| BIRCHTREE PROPERTIES LLC | NV20111497299 | E0426842011-1 | 7/28/2011 |
| WILD MAPLE HOLDINGS LLC | NV20111498130 | E0427602011-4 | 7/29/2011 |
| WILD MAPLE PROPERTIES LLC | NV20111498239 | E0427682011-2 | 7/29/2011 |
| SNOW PEAK HOLDINGS LLC | NV20111502143 | E0431202011-2 | 8/1/2011 |
| SNOW PEAK PROPERTIES LLC | NV20111502213 | E0431272011-9 | 8/1/2011 |
| DUSKYWING HOLDINGS LLC | NV20111502519 | E0431532011-1 | 8/1/2011 |
| DUSKYWING PROPERTIES LLC | NV20111502617 | E0431582011-6 | 8/1/2011 |
| CRIMSON PATCH HOLDINGS LLC | NV20111502798 | E0431692011-9 | 8/1/2011 |
| CRIMSON PATCH PROPERTIES LLC | NV20111502849 | E0431732011-5 | 8/1/2011 |
| EAST CIRCLE HOLDINGS LLC | NV20111518479 | E0445692011-5 | 8/7/2011 |
| 3114 SOUTH HOLDINGS LLC | NV20111530094 | E0455922011-6 | 8/11/2011 |
| 3114 SOUTH PROPERTIES LLC | NV20111530115 | E0455942011-8 | 8/11/2011 |
| SOUTH SILVERADO HOLDINGS LLC | NV20111613114 | E0529902011-3 | 9/24/2011 |
| SOUTH SILVERADO PROP. LLC | NV20111613133 | E0529912011-4 | 9/24/2011 |
| BURNING OAK HOLDINGS LLC | NV20111653889 | E0566512011-1 | 10/14/2011 |
| BURNING OAK ENTERPRISES LLC | NV20111654062 | E0566622011-4 | 10/14/2011 |
| 4819 ENOCH HOLDINGS LLC | NV20111671845 | E0582432011-1 | 10/25/2011 |
| 4819 ENOCH PROPERTIES LLC | NV20111671924 | E0582492011-7 | 10/25/2011 |
| 3839 WEST HOLDINGS LLC | NV20111677091 | E0587232011-2 | 10/27/2011 |
| 3839 WEST PROPERTIES LLC | NV20111677129 | E0587252011-4 | 10/27/2011 |
| 138 SOUTH HOLDINGS LLC | NV20111679001 | E0588982011-2 | 10/28/2011 |
| 138 SOUTH PROPERTIES LLC | NV20111679038 | E0589022011-9 | 10/28/2011 |
| 530 EAST HOLDINGS LLC | NV20111679064 | E0589042011-1 | 10/28/2011 |
| 530 EAST PROPERTIES LLC | NV20111679103 | E0589082011-5 | 10/28/2011 |

## EXHIBIT "L" 1 of 2

FILED IN CHAMBERS
U.S.D.C. - Atlanta

AUG 0 7 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

James N. Hatten, Clerk
By: _____
Deputy Clerk

PAT HUDDLESTON, II,

        Plaintiff

v.

GRAFTON ENTERPRISES MIDWAY
LLC, BENJAMIN HOWARD, and
GRAFTON ENTERPRISES, LLC,

        Defendants

CIVIL ACTION NO.
1:09-CV-2799-ODE

ORDER

    This breach of contract case is before the Court on Defendant Benjamin Howard's ("Howard's") Renewed Motion for Summary Judgment [Doc. 95], to which Plaintiff Pat Huddleston II ("Huddleston") has responded in opposition [Doc. 99] and Howard has replied in support [Doc. 100].

    For the reasons discussed below, Howard's Renewed Motion for Summary Judgment [Doc. 95] is DENIED.

I.   <u>Case History</u>

    As detailed in the Court's February 17, 2011 and June 28, 2009 orders [Docs. 89, 62], this case is an ancillary proceeding to Civil Action No. 1:08-CV-0011-ODE, in which the United States Securities and Exchange Commission ("SEC") filed suit against James A. Jeffrey ("Jeffrey"), Thomas E. Repke ("Repke"), and several entities known in this case as the "Coadum Defendants" (including Mansell Capital Partners III, LLC ("Mansell")).  The SEC alleged that the Coadum Defendants, which Jeffrey and Repke controlled and directed, operated a massive Ponzi scheme that

# EXHIBIT "L" 2 of 2

defrauded investors out of approximately $30 million. On January 3, 2008, the Court issued a temporary restraining order in Civil Action No. 1:08-CV-0011-ODE, in which it appointed Plaintiff Huddleston as Receiver for the estates of the Coadum Defendants.

Huddleston, as Receiver, brought this action to hold Defendants Howard, Grafton Enterprises Midway LLC ("Grafton Midway"),[1] and Grafton Enterprises, LLC ("Grafton") liable for events that occurred prior to the establishment of the Receivership. In or around May 2007, Mansell — one of the Coadum Defendants — sought to acquire a parcel of real property located in Midway, Utah (the "Property"), owned at that time by Harbor Capital Partners ("Harbor") [Doc. 51-7]. Mansell decided to use Grafton as a straw buyer to conceal from Harbor its involvement in the transaction: Grafton would purchase the Property from Harbor on Mansell's behalf and would then transfer the Property to Mansell [Id.]. At that time, it is undisputed that Howard at least served as a manager for Grafton [Doc. 95-2 at 5; Doc. 99-1 at 3]. Mansell agreed in a signed contract to pay Grafton $25,000 regardless of whether the transaction was successful, as well as an additional $175,000 in commission if Grafton successfully bought and transferred the property to Mansell [Doc. 51-7].

---

[1]Although the existence of Grafton Midway is not in dispute, it is not clear that the company was involved in the events that formed the basis for this civil action. Grafton Midway is represented by the same counsel retained by Howard, but has filed no pleadings in this case since the April 21, 2010 answer, filed by Grafton Midway and Howard, to Huddleston's complaint [Doc. 25]. Further, Huddleston's first and second amended complaints do not specifically allege that Grafton Midway was involved in the events for which Huddleston seeks damages.

2

**EXHIBIT "M"**





EXHIBIT "Q"



**EXHIBIT "T"**

 **Ben S Howard** elderb123@gmail.com                    Feb 25  
to me

James,

I am not sure why you have chosen to do this. You were never contracted as you claim. I have received legal counsel on this matter and what you are doing constitutes extortion by very definition which holds serious *criminal* and *civil* penalties. I have been advised that the texts and e-mails you have sent me make this an open and shut extortion case.

extortion |ikˈstôrSHən|
noun
the practice of obtaining something, esp. money, through force or threats.
DERIVATIVES
**extortioner** noun

I suggest you seriously consider your next course of action since the consequences can be sever.

James, you've been one of my best friends for years am I have no interest in becoming enemies. I love you and I just don't understand. I would welcome a call from you.

 **James Arnett** jamesarnettaz@gmail.com                    Feb 25  
to Ben