1

2

3

4

5

6          **IN THE UNITED STATES DISTRICT COURT**

7          **FOR THE DISTRICT OF ARIZONA**

8

James Arnett,                              )

9                                          )          No. CV-12-0311-TUC-DCB-DTF

         Plaintiff,                        )

10                                          )          **REPORT AND RECOMMENDATION**

vs.                                        )

11                                          )

Benjamin Snow Howard, et al.,              )

12                                          )

         Defendants.                       )

13                                          )

_____ )

14

15          Pending before the Court is Defendants' Motion to Dismiss the Amended Complaint.

16   (Doc. 37.) Plaintiff filed a response and Defendant replied. (Docs. 40, 41.) Pursuant to the

17   Rules of Practice in this Court, the matter was assigned to Magistrate Judge Ferraro for a

18   report and recommendation. The Magistrate recommends the District Court, after its

19   independent review of the record, enter an order denying the motion to dismiss and

20   transferring the case to Utah.

21                                      **BACKGROUND**

22          The Court summarizes the facts from Arnett's Amended Complaint (Doc. 35) that are

23   relevant to resolving the pending motion. Plaintiff alleges Defendant Howard contacted him

24   in Tucson by Skype in November 2010, asking him for free assistance in building a website.

25   Howard sent a Cricket phone to Arnett in Tucson in order to consult on the website. In

26   February 2011, Howard traveled to Tucson to finalize the website with Arnett. While in

27   Arizona, Howard solicited Arnett's services for a 2-month project to produce an audio book

28   and a motion picture in Utah. Howard offered him equity partnership. Arnett accepted the

1  arrangement and agreed to contact him when he was available, which he did in May. During

2  that phone conversation, Howard reiterated the agreement and offered to pay for Arnett's

3  Tucson work space and his Utah expenses. On June 5, 2011, Arnett flew to Utah on a ticket

4  purchased by Howard. Howard then stated the equity agreement could be drafted later.

5      With respect to the project, Howard was acting as the agent of Defendant Nationwide

6  Affordable Housing; he later paid Arnett's expenses through Defendant Lifeline Media. In

7  late August 2011, Arnett asked Howard to finalize the equity agreement or to pay him for his

8  services. Howard promised he would eventually do one or the other. As a bonus incentive,

9  Howard offered Arnett a motorcycle to ride back to Arizona, which Howard represented as

10  safe, in excellent condition and worth more than $3000. The motorcycle title was in the name

11  of the Ben Howard Trust. After completing the audio book, a television spot, and the voice

12  and picture track of the movie, Arnett returned to Arizona in October.

13      In December 2011, Howard called Arnett wanting to come to Tucson regarding the

14  audio mix for the project, but Arnett informed him that without payment he could not house

15  Howard. Howard then uploaded the motion picture onto the Lifeline Media websites, without

16  license to exhibit it without payment. Plaintiff invoiced Howard for $211,000 in services.

17  Howard has refused to make any payment to Arnett and continues to use the materials in

18  promotion of his business.

19      Arnett alleges four claims, one breach of contract, two fraud and one of

20  endangerment. In the contract claim, Arnett alleges that Defendant Howard represented the

21  project as having substantial earning power and offering Plaintiff a major equity interest.

22  Plaintiff accepted the offer and produced the goods. Howard breached the agreement by

23  failing to execute a written equity agreement or make payment for the product produced by

24  Arnett. In Claim 2, Plaintiff alleges Defendants misrepresented the value of the equity

25  partnership to induce Arnett to produce the media products. He also alleges Defendants

26  misrepresented their ability to pay to induce Plaintiff to forgo litigation. In the second fraud

27  claim, Arnett alleges that Howard and the Ben Howard Trust misrepresented the value and

28

- 2 -

1   condition of the motorcycle transferred to Plaintiff, in order to induce Plaintiff to continue

2   working on Howard's project. Plaintiff alleges that all Defendants committed endangerment

3   by knowingly not disclosing the dangerous condition of the motorcycle brakes and delaying

4   Plaintiff's departure until the weather conditions were poor with the intention of causing

5   catastrophic injury or death.

## DISCUSSION

7       Defendants argue that Plaintiff's Amended Complaint should be dismissed for lack

8   of personal jurisdiction, improper venue and because it fails to state a claim. At a minimum,

9   Defendants argue the case should be transferred to a court in Utah.

10  **PERSONAL JURISDICTION**

11      Defendants move to dismiss for lack of personal jurisdiction, as provided for by

12  Federal Rule of Civil Procedure 12(b)(2). Because this is a diversity case, the Court applies

13  Arizona's long-arm statute, *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995),

14  which provides for personal jurisdiction to the full extent allowed by the Due Process Clause,

15  Ariz. R. Civ. P. 4.2(a).

16      Due process requires that a defendant not present within the court's state "have certain

17  minimum contacts with it such that the maintenance of the suit does not offend 'traditional

18  notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of*

19  *Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*,

20  311 U.S. 457, 463 (1940)). A defendant has fair warning that he may be subjected to suit in

21  a forum if he has "'purposefully directed' his activities at residents of the forum" and the suit

22  is due to injuries allegedly resulting from those activities. *Burger King Corp. v. Rudzewicz*,

23  471 U.S. 462, 472 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774

24  (1984)). When a party reaches out beyond one state to create continuing contractual

25  relationships with citizens of another state, that party can be subject to jurisdiction in the

26  other state based on its activities there. *Id.* at 473. This rule is based in part on a state's

27  interest in providing a convenient forum for its citizens to seek recovery for damages caused

28  by an out of state person. *Id.*

1

The Court may exercise specific jurisdiction if:

2

3

4

(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

5

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

6

**Defendant Howard**

7

First, factor one is satisfied as to Defendant Howard. He traveled to Arizona to

8

conduct business with Plaintiff Arnett, an Arizona resident. While in Arizona, Howard

9

proposed a contract to Arnett for the creation of an audio book and a motion picture, to which

10

Arnett agreed. Because Howard sought to enter into a contract with an Arizona resident

11

while in Arizona, he purposefully availed himself of the privileges of conducting activities

12

in the forum. *Burger King Corp.*, 471 U.S. at 476 (finding that a party avails himself of the

13

privilege of doing business in a state when he creates "continuing obligations" with a resident

14

of that state). A contract alone does not establish sufficient minimum contacts. *Id.* at 478

15

(considering prior negotiations, contemplated future consequences, terms of the contract and

16

actual course of dealing). However, here, Howard negotiated a contract while in Arizona that

17

involved paying an Arizona resident for services, including paying Arnett's Arizona

18

expenses while he worked on the project in Utah. Further, Howard continued his refusal to

19

compensate Arnett after Arnett returned to Arizona, causing foreseeable injuries to him in

20

Arizona. *See id.* at 480.

21

Second, Arnett's contract and tort claims arise out of Howard's contract with an

22

Arizona resident and his failure to make the agreed payment for Arnett's services. *See*

23

*Bancroft & Masters, Inc.*, 223 F.3d at 1088 (applying a "but for" causation test, that is the

24

contacts satisfying purposeful availment must give rise to the suit).

25

Third, Defendant must make a "compelling case" that it is unreasonable for this Court

26

to exercise personal jurisdiction over him. *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476-

27

77). In making this determination, the Court considers several factors:

28

(1) the extent of the defendant's purposeful interjection into the forum state,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> (2) the burden on the defendant in defending in the forum state, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Id.* (citing *Burger King Corp.*, 471 U.S. at 477). Although Howard's time in Arizona was limited he intentionally sought out an Arizona resident with whom to contract for services he sought to have performed. Defendant states that the burden on him to defend in Arizona would be great, however, he provides no reasoning in support of that assertion. Defendant resides in Utah, which is a neighboring state and he has retained an Arizona attorney. Inconvenience is more readily accommodated through a change of venue and rarely rises to the level of a constitutional issue. *Burger King Corp.*, 471 U.S. at 484.

Defendant contends that Utah's law governs and Arizona's exercise of jurisdiction would conflict with Utah's sovereignty as the actions took place in Utah. As the Supreme Court has noted, any conflicting sovereignty can be accommodated through choice-of-law rules. *Burger King Corp.*, 471 U.S. at 477; *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 761 (9th Cir. 1990). Arizona has an interest in providing a convenient forum for redress of its residents' injuries. *Burger King Corp.*, 471 U.S. at 473. While the performance of the contract was primarily in Utah, Defendant provides no support for his argument there are significant numbers of witnesses or voluminous evidence that would be inefficient to present in an Arizona Court. Arguably Plaintiff will be equally inconvenienced to litigate in Utah as Defendant to defend here in Arizona. Because Plaintiff is representing himself, it would be more challenging to present his case in a different state. Review of the seven factors does not weigh strongly in either party's favor. Because the Court has found sufficient minimum contacts and that the claim arose out of Howard's contact with the forum, Defendant's suggestion of unreasonableness is not sufficiently compelling to defeat this Court's personal jurisdiction.

1

2

**Defendants Nationwide Affordable Housing, Lifeline Media and the Ben Howard Trust**

3

Plaintiff has not alleged that any of the entity Defendants have sufficient minimum

4

contacts with Arizona. With respect to Lifeline Media LLC and the Ben Howard Trust,

5

Defendant has not alleged that they took any actions directed at Arizona. With respect to

6

Nationwide Affordable Housing, Inc., Arnett might be alleging that Howard was representing

7

this entity when they formed a contract in Arizona but the allegation is too vague in its

8

current form to establish personal jurisdiction. The Court finds it does not have personal

9

jurisdiction over these three defendants and they are subject to dismissal on that ground.

10

**VENUE**

11

Defendants contend venue is not proper in Arizona. The venue statute provides for

12

venue based on three possible factors. 28 U.S.C. § 1391(b). Plaintiff argues venue is proper

13

in Arizona because it is a "district in which a substantial part of the events or omissions

14

giving rise to the claim occurred, or a substantial part of property that is the subject of the

15

action is situated." 28 U.S.C. § 1391(b)(2).

16

Plaintiff bears the burden of establishing that venue is proper in Arizona. *Piedmont*

17

*Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). Venue must be

18

established as to each defendant and each claim. *See United Truck and Equip., Inc. v. Curry*

19

*Supply Co.*, No. CV08-01046-PHX-GMS, 2008 WL 4811368, *10 (D. Ariz. Nov. 5, 2008)

20

(citations omitted). The Ninth Circuit has suggested that venue for breach of contract claims

21

is best in the place of intended performance not the place of repudiation. *Decker Coal Co.*

22

*v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986) (noting that the place of

23

performance is anticipated at the time of contracting and is likely to have a close nexus to the

24

underlying events).

25

After closely reviewing the entirety of the Amended Complaint, the Court finds that

26

venue is not proper in this Court as to any Defendants or claims.

27

28

- 6 -

1

### Claim 1: Breach of Contract

2    A substantial part of the events giving rise to the breach of contract did not occur in

3 Arizona. The only nexus with this forum is that the initial contract was formed in Arizona.

4 However, the intention was always that contract performance would be in Utah. Further,

5 while Arnett was in Utah, the Amended Complaint alleges the contract was modified and re-

6 negotiated. Most critically, the central events or omissions giving rise to the claim were the

7 actions of Howard that occurred in Utah – he refused to reduce the equity agreement to

8 writing or to pay Arnett for his services.

9

### Claim 2: Fraud as to the Contract

10    Plaintiff alleges Defendants Howard, Nationwide Affordable Housing and Lifeline

11 Media misrepresented Howard as a tortfeasor in a case pending in Georgia, which devalued

12 Arnett's equity interest in the project. Defendants subsequently offered to make payment in

13 lieu of equity, but failed to do so. These alleged false statements were made in Utah and

14 Plaintiff alleges he was in Utah when he relied upon them. Arnett has not alleged that any

15 acts or omissions relating to this claim took place in Arizona.

16

### Claim 3: Fraud as to the Motorcycle

17    Plaintiff alleges that Howard and the Ben Howard Trust materially misrepresented the

18 condition and value of the motorcycle to induce Arnett to continue work on the projects.

19 These false statements are alleged to have occurred in Utah and Plaintiff was in Utah at the

20 time he alleges he relied upon them. No acts or omissions giving rise to this claim took place

21 in Arizona.

22

### Claim 4: Endangerment

23    Plaintiff alleges Defendants knew the condition of the motorcycle and delayed

24 Arnett's departure from Utah on the motorcycle until the weather conditions were terrible,

25 in order to place Arnett in great danger of physical harm. The acts of Defendants are alleged

26 to have taken place in Utah, with no actions occurring in Arizona.

27

28

1      **Transfer**

2          Defendants request that if the Court is not inclined to dismiss the case for improper

3   venue, that it transfer the case to Utah. Pursuant to 28 U.S.C. § 1406(a), this Court may, in

4   the interest of justice, transfer a case filed in an improper venue to a district in which it could

5   have been brought originally. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)

6   (venue transfer allowed regardless of whether a court has personal jurisdiction over

7   defendants).

8          The Court first assesses whether the case could have been brought originally in Utah.

9   Because this action is between citizens of different states and the amount in controversy

10  exceeds $75,000 any district court has subject matter jurisdiction over the case. 28 U.S.C.

11  § 1332(a). Based on the allegations in the Amended Complaint, a district court in Utah would

12  have personal jurisdiction over all Defendants. Defendant Howard is domiciled in Utah and

13  was personally served there. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780,

14  2787 (2011) (plurality opinion). Further, all Defendants are subject to specific jurisdiction

15  under Utah's long-arm statute. The Court applies a three-part test for personal jurisdiction:

16  "identifying the defendant's acts implicating Utah; (2) determining whether a nexus exists

17  between the plaintiff's claim and the defendant's conduct; and (3) assessing the nature of the

18  defendant's contacts against due process standards." *STV Int'l Mktg v. Cannondale Corp.*,

19  750 F. Supp. 1070 (D. Utah 1990). As to part one, any person acting in person or through an

20  agent is subject to jurisdiction in Utah if he transacts any business within the state. Utah

21  Code Ann. § 78B-3-205. All Defendants are alleged to have transacted business within the

22  borders of Utah, and Arnett's claims arise out of the business each Defendant conducted with

23  him in Utah. Finally, Defendants have sufficient minimum contacts with Utah such that

24  requiring them to defend suit there does not offend "traditional notions of fair play and

25  substantial justice." Defendants performed acts within the forum state, Arnett's claims arise

26  out of those acts and jurisdiction in Utah is reasonable. Therefore, Utah has personal

27  jurisdiction over all Defendants. *See Bancroft & Masters, Inc.*, 223 F.3d at 1086. Finally, as

28  evaluated above, venue is proper in Utah because a substantial part of the events or omissions

1 giving rise to Arnett's claims occurred there. 28 U.S.C. § 1391(b)(2).

2 Next, the Court finds it is in the interest of justice to transfer this case to Utah.

3 Although Plaintiff believes venue is proper here and resists a transfer based solely on the

4 convenience of Defendants, he has expressed an intention to continue the suit even if

5 transferred. *Cf. King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992) (denying transfer, in

6 part, because plaintiff had no interest in a transfer). Further, Plaintiff had a difficult time

7 serving Defendants and ultimately the United States Marshal was employed to perfect in-

8 person service. (Docs. 6, 10, 17.) Plaintiff should not be required to engage in that process

9 again. Finally, there is no reason to believe Plaintiff was acting in anything but good faith in

10 filing in this District. *See King*, 963 F.2d at 1304-05 (denying transfer because action

11 suggestive of bad faith and harassment).

12 **CONCLUSION**

13 The Court has personal jurisdiction over Defendant Howard but does not have

14 personal jurisdiction over Defendants Lifeline Media LLC, Nationwide Affordable Housing

15 Inc., or the Ben Howard Trust. Venue is not proper in the District of Arizona as to any

16 Defendants or claims alleged in the Amended Complaint. However, the Court has discretion

17 to transfer this case to the District of Utah and it is in the interest of justice to do so. Because

18 it has determined that it does not have jurisdiction over all of the Defendants and this is not

19 the proper venue for the case, the Court does not reach Defendants' arguments that Plaintiff

20 has failed to state a claim.

21 **REPORT AND RECOMMENDATION**

22 Based on the foregoing, the Magistrate Judge recommends the District Court deny

23 Defendants' motion to dismiss and grant Defendants' alternative motion seeking a transfer

24 to the District of Utah.

25 Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file

26 written objections within fourteen days of being served with a copy of the Report and

27 Recommendation. A party may respond to the other party's objections within fourteen days.

28 No reply brief shall be filed on objections unless leave is granted by the district court. If

1    objections are not timely filed, they may be deemed waived.

2            DATED this 28th day of May, 2013.

                                        D. Thomas Ferraro
                                        United States Magistrate Judge