FILED
U.S. DISTRICT COURT

2013 SEP -3 P 1: 24

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

James Arnett
Plaintiff, In Propria Persona (I.F.P.)
9288 N. Monmouth Court
Tucson, Arizona 85742
Telephone: (520)304-0129
Email: jamesarnettaz@gmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAMES ARNETT,<br><br>    Plaintiff,<br><br>v.<br><br>BENJAMIN SNOW HOWARD;<br>LIFELINE MEDIA LLC, a Utah entity; NATIONWIDE AFFORDABLE HOUSNG, a Texas corporation; and the BEN HOWARD TRUST, an Idaho trust,<br><br>    Defendants. | **REPLY**<br><br>Presiding Judge Ted Stewart<br><br>Referred to Magistrate Judge Dustin Pead<br><br>Case 2:13-CV-00591-TS-DBP |

    Plaintiff James Arnett, representing himself Pro Se, herein replies to Defendents' Response In Opposition [Doc. 64] to Plaintiff's Motion [Doc. 60].

Plaintiff James Arnett herein responds to Defendants' Opposition, pointing out their obvious breach of Federal Rule of Civil Procedure 11, due to its frivolous and harassing nature [Doc. 64, page 4], offered in lieu of any denial or reasonable justification for this honorable Court to turn a blind-eye to the allegation of a Title 18 USC§1512(b) violation, against the former **Mrs. Robin Howard**, a material witness in this case, who has alleged that Defendant Howard had made a series of threats against her [see attached memorandum], to induce her by unlawful means, to withhold her testimony from the proceedings of this honorable Court.

Whereas, Defendants characterize Plaintiff's reporting of a violation this serious as "*a pointless filing*" [Doc. 64 top of page 2] under Local Rule 83-1.1(f), it should be noted by this honorable Court that Defendants *do not* deny the violation, nor deny having made such threats, but rather, have asserted their bizarre "schizophrenia" diagnosis by Defendant Howard, who moved for this honorable Court [Doc. 64 page 4] to issue an Order – based solely upon his unsupported, sophomoric rant, designed to distract from the issue requiring immediate attention – the allegation of an 18 USC§1512(b) violation against the terrorized Witness.

Whereas, Plaintiff has given notice that he possesses audio recordings of the allegations made by the Witness, not to be construed as evidence toward this case or for criminal prosecution, but as a non-prohibited means of showing Good Cause to this honorable Court for the appropriateness of a Law Enforcement inquiry as soon as possible – not based upon hearsay, but based upon the recorded audio of the compelling statements made by the Witness herself.

Because an 18 USC§1512(b) violation carries a twenty year maximum penalty, it should come as no surprise that Defendants object strenuously to any inquiry and have recklessly stepped across the Rule 11 line to prevent the same.

## PROPRIETY OF PLAINTIFF'S MOTION

Whereas, Defendants assert that there is no provision for such an inquiry by this honorable Court, neither does any prohibition exist, which would prevent this honorable Court from calling upon the appropriate Law Enforcement assets to determine if an 18 USC§1512(b) violation has indeed occurred – for Good Cause, demonstrated by Plaintiff's audio recording of the Witness' statements, which may be delivered expediently via email or by compact disc to this honorable Court.

Therefore, it is the Duty of Plaintiff to immediately report criminal activity, and by the nature of an 18 USC§1512(b) violation, which is a Federal crime against the United States, Plaintiff's Motion [Doc. 60] should likewise be constructed liberally by this honorable Court (due to the necessity for prompt reporting taking priority over the exact construction of said Motion), and due to the immediate threat to the Witness. Plaintiff's document was clearly a rushed pro se draft but the potential danger to the Witness supersedes Defendants' objections to the Document's exact construction. The powers of a Court of the United States obviously include the enforcement of Federal Law.

## DEFENDANT HOWARD'S STATEMENTS

Whereas, the statements of Defendant Howard were made in Defendants' Opposition [Doc. 64] in an official filing in this honorable Court, all statements are construed as a sworn affidavit, under the Rules.

Therefore, Plaintiff respectfully requests that Defendant Howard's statements remain in the Record, in the event that their Opposition is withdrawn, or otherwise struck from the Record. Plaintiff wishes to hold Defendant Howard to all of his statements at trial, in order to complete the impeachment of his testimony.

## DEFENDANTS DEMAND FOR SANCTIONS

Whereas, reporting a criminal act to this honorable Court, supported by available recorded audio, can in no way be construed as "pointless", frivolous nor harassing, as Defendants have asserted [Doc. 64]. Reporting criminal activity, upon information and belief, is a well-known Duty under the Law.

Whereas, Counsel for Defendants contacted Plaintiff by telephone on or about 16 August 2013, in response to Plaintiff's Motion [Doc. 60], in an attempt to coerce Plaintiff into withdrawing his Motion, Counsel threatened to demand sanctions against Plaintiff – if Plaintiff did not withdraw said Document from the Record. Because Plaintiff cannot negotiate the safety of the Witness, nor withhold knowledge of a Federal offense from Law Enforcement (including this honorable United States Court), Plaintiff did not agree to withdraw his Motion. Defendants carried out their threat, as promised, in filing their Opposition [Doc. 64].

Therefore, Plaintiff respectfully requests that this honorable Court disregard Defendants' demand for Plaintiff to pay their fees for drafting and filing what is essentially a bizarre personal attack against Plaintiff James Arnett, which has no place being presented by Defendants' Counsel before a Court of the United States.

## POTENTIAL TO CARRY OUT THREATS

Whereas, Defendants indeed carried out their telephonic threat to make a harassing and frivolous filing [Doc. 64], the honorable District Judge Orinda D. Evans, the Trier of Fact in Defendant Howard's "Grafton" case [Doc. 35 exhibit L], characterized Defendant Howard as a "straw buyer", acting on behalf of the "Coadum Defendants" in the infamous Repke and Jeffery real estate ponzi scheme, "...that defrauded investors out of approximately $30 million.", materially tying Defendant Howard to Utah's largest organized crime ring [see memorandum].

Whereas, Defendants attempt to characterize Defendant Howard's involvement in this organized crime enterprise as "inflammatory" and "unrelated", the facts of this matter of Record are supported by Self-Authenticating evidence – in case 1:09-CV-02799-ODE. Defendants' current Counsel were the lead attorneys in that case too, defending Defendant Howard before that United States Court.

BUT FOR Defendant Howard misrepresenting these material facts to Plaintiff Arnett, he would never have agreed to enter into any contract with Defendants, making these facts material to this case. And understanding these criminal ties, the potential for Defendant Howard carrying out any of his alleged threats is not an unreasonable fear for the Witness to expect. Any reasonable person would be concerned that the potential danger is clearly present.

## CONCLUSION

Wherefore, Plaintiff James Arnett urges this honorable Court to hear the allegations made by the former Mrs. Robin Howard in the audio recordings to determine the appropriateness of Federal Law Enforcement taking her statement firsthand, for this honorable Court to determine whether issuing a Temporary Restraining Order is a prudent action, according to the terms it deems necessary and just. Respectfully submitted this 31st day of August 2013.

James Arnett, In Propria Persona (I.F.P.)
9288 N. Monmouth Court
Tucson, Arizona 85742
Telephone: (520)304-0129
Email: jamesarnettaz@gmail.com

## **MEMORANDUM**

This Memorandum in support consists of four parts, which may effect the showing of Good Cause:

1. The transcribed audio statements of the former Mrs. Robin Howard (demonstrating the allegation of current threats by Defendant Howard);

2. Defendant Howard's potential to carry out criminal acts (demonstrating past threats, violent behavior, tortious acts, etc.);

3. Defendant Howard's statements before this honorable Court [Doc. 64] (to be preserved for the Record).

4. The Order of the honorable United States District Judge David C. Bury (demonstrating Defendant Howard's repeated evasion of U.S. Marshals);

This Memorandum is intended to provide this honorable Court with sufficient information and Good Cause to Order a Federal Law Enforcement Officer to interview a material witness in this case, the former Mrs. Robin Howard, and to take her statement and return the same to this honorable Court – in order to determine the necessity of a T.R.O., in response to an allegation of a Title 18 USC §1512(b) violation by Defendant Howard.

Because a Title 18 USC §1512(b) violation is a crime against the United States, the Federal Bureau of Investigation (FBI) is authorized under Title 28 USC §533 to investigate this allegation, and to take Mrs. Howard's statement.

## 1. TRANSCRIBED AUDIO STATEMENTS OF MRS. ROBIN HOWARD

The following transcription was made from an audio recording from a telephone interview conducted by Mr. Gerren Ard ( the Plaintiff in a potentially related action against Defendant Howard in the District of Arizona, case number 4:13-CV-00058-DCB) with the former Mrs. Robin Howard, a material witness in this case. This interview was conducted when her divorce from Defendant Howard was still pending in a Utah Court. These are her statements relating to the alleged Title 18 USC §1512(b) violation:

---

"And... Oh, dear. Oh dear... But I am nervous. I mean, he's threatened me a couple of times, if I ever did anything, he'd come after me - he would. He would hurt me."

"He's not a nice person. I don't want him to hurt you either, or, or James. I don't want him to hurt anyone."

"I'm still scared because Ben knows where I work. Ben knows. I'm very predictable, Gerren. I'm a boring person. I go to work, I come home. I'm with my family. I don't have any boyfriends because I'm married, I'm not even divorced. So I don't have a life. I go to church, or I'm at home, or I'm at work - that's all I do, I'm very predictable, I do an eight to five - I can be found, do you know what I mean?"

"Ben said, if I talked to Gerren or James any more, he would come after me."

"He knows he's abused the system. He knows he's done some wrong things. I think he knows he should have paid you and I think he's scared. And if I were to come into the picture, that's when he said he would come after me because I would add some clout to this picture for the law suit."

"Yes I do but I have to be kept safe - I mean, I have to be. If I have to be under the witness protection program, if the judge knows."

"I hold cards, only for the fact that I could prove him more guilty. That's what Ben's afraid of because Ben doesn't want me [to], in fact, he called me back in October and he wanted to sign [divorce] paperwork, he said, I don't really want to sign because', this is kind of how he said it, 'I've been holding off because I want to make sure I'm safe because of this law suit'. So I know that he wanted a divorce sooner but he's holding off for... To use me as insurance, and he doesn't want, because he thought if I was married to him I couldn't testify. And he said, 'I don't want you [to]', he said, 'I'm trying to keep you out of this court case Robin, because they're going to want you to go to Arizona and that will be costly for you.'"

"Gerren, I am so afraid of him. I mean, he has the power to hurt me."

"And I believe that, I mean, he has an intent in him, if he's scared, he can do crazy things."

"I'm scared of him. If Ben knows that I'm involved. But if the judge can keep me safe, then he has a witness."

"In fact, he texted me, umm, when did he text me? This was last Monday when my birthday, when he said... He said something like, 'I sent the divorce documents. Happy birthday, and you will not hear from me again, unless YOU...' and he puts it in caps, 'unless YOU do anything to...', umm, I can't remember the words he used... But he's referring to the case, 'unless you do anything to... That makes me come after you.', so he's, he's let me know many times, that if I do anything in this court case - I'm in trouble. So that's why I'm nervous. I live in the same state he does and he has all the time in the world and all the money. He can hide out and stake out, he doesn't have to go to work, do you know what I mean? I have to get up, I have to go to work and I have to pay bills, and I have to, I can't live like he lives. You know, he can even fly down to try and stake you and James out. He has the money, he has the time, he doesn't have to work. Do you know what I mean? And so, he could actually, he could do harm because he not only has the mindset to be crooked, you've seen it, he has the time and the money to do it. That's what makes criminals even worse."

---

These transcribed excerpts from the audio recording may be emailed to this honorable Court or sent on compact disc (CD) upon demand to show Good Cause for Federal Law Enforcement to make a direct inquiry into a Title 18 USC §1512(b) violation against the Witness, the former Mrs. Robin Howard.

## 2. DEFENDANT HOWARD'S POTENTIAL
## TO CARRY OUT CRIMINAL ACTS

**A.     Defendant Howard's association with the Repke organized crime ring.**

It was officially established in a United States Court for the Northern District of Georgia, in case 1:09-CV-02799-0DE, presided over by the honorable District Judge Orinda D. Evans, who stated in Document 101:

"As detailed in the Court's February and June 28, 2009 orders [Docs. 89, 62], this case is an ancillary proceeding to Civil Action No. 1:08-CV-0011-0DE, in which the United States Securities and Exchange Commission ("SEC") filed suit against James A. Jeffrey ("Jeffrey"), Thomas E. Repke ("Repke"), and several entities known in this case as the "Coadum Defendants" (including Mansell Capital Partners III, LLC: ("Mansell")). The SEC alleged that the Coadum Defendants, which Jeffrey and Repke controlled and directed, operated a massive Ponzi scheme that defrauded investors out of approximately $30 million."

In that same Document, District Judge Evans characterized Defendant Howard's conduct as acting as a "straw buyer" for the "Coadum Defendants". The Plaintiff in that case was Pat Huddleston II, the Court appointed Receiver, charged with recovering the monies, rightfully belonging to the victims of said Ponzi scheme, whereby Defendant Howard and his alleged alter-ego, "Grafton", an LLC., allegedly owner-managed by his (deceased) wife and four children (ranging in ages from approximately toddler to pre-teen, which Defendant Howard personally operated), were the two Defendants liable in that case for returning approximately $185,000.00 US Dollars in the fraud recovery of the main case.

During the two and a half years of proceedings, which started in October 2009, the Plaintiff/Receiver complained that Defendant Howard had committed the Fraudulent Transfer of real estate in Hurst, Texas (evident in Tarrant County

Page 4 of 10

records) from himself, as "Grafton", to himself, as Defendant Howard, followed by another complaint by the Receiver, of what was essentially the manufacturing of false records in Document 112-1 in that case. Defendant Howard ultimately settled the case for approximately $25,000.00 in April 2013. Defendant Howard was represented by the same law firm in the Grafton case as his attorneys in this case, Tycksen & Shattuck LLC. Defendants Jeffrey and Repke pleaded guilty in a United States Court to the massive fraud charges brought by the S.E.C.

### B. Defendant Howard's alleged forgery of the name "Todd Eaton".

From the physical evidence in possession of Mr. Gerren Ard [Doc. 62 attachment], and his preliminary analysis of the similarities between the three signatures of "Todd Eaton" and Defendant Howard, the possibilities become limited to either evidence of forging the execution of another man's signature, or executing the signature of an Alias belonging to Defendant Howard, as no "Todd Eaton" appeared at Defendant Howard's residence on the dates in July 2011 when these executions were signed, when Plaintiff was living and working at that residence, from June 2011 to October 2011.

Now, "Todd Eaton" appears to be a mysterious character. Online searches provided only two leads to this identity – the partner of "Tony Larson", who own and operate "Nationwide Real Estate LLC" in nearby Ogden, Utah. Tony Larson maintained (in an email conversation with Plaintiff) that he lost track of Todd Eaton about a year ago – coinciding with the time when Todd Eaton was named as a defendant in another real estate fraud case 2:10-CV-01060-DS in this same Forum. Todd Eaton was represented by an attorney, not from any law firm, but by a corporate attorney named Michael P. Barry, from a health insurance brokerage and holding company named Cambia Health Solutions in Salt Lake City, Utah.

Page 5 of 10

Regardless of whether Defendant Howard's alleged forgery was that of an Alias, or that of an actual individual, the potential remains that something felonious may have occurred, which may be the tip of an iceberg involving many more millions of dollars in Utah real estate fraud.

### C. Defendant Howard's alleged fraudulent copyright filing.

By 15 February 2012, the United States Copyright Office received Defendant Howard's signed application and DVD disc, which was registered in the Library of Congress as Pau003684884, claiming, *"employer for hire"* without any proof of employment, with the claim of authorship for the *"entire motion picture"*, despite the film being conspicuously marked, "An A.I.A. Motion picture company production". This fraudulent filing was made by Defendant Howard, attempting to claim ownership of Plaintiff's 3 hour motion picture, in an alleged fraud scheme.

### D. Defendant Howard's violent fit of rage before three witnesses.

In Plaintiff's Complaint and his Amended Complaint [Doc. 35 ¶21], Mr. Gerren Ard, Mrs. Robin Howard and Plaintiff all witnessed the following episode:

"Defendant Howard then used intimidation to coerce these changes, by shouting, throwing and breaking objects, declaring that he would never pay neither Plaintiff nor Mr. Ard their rates, nor equity. A commotion ensued. This was witnessed by Defendant Howard's ex-wife, Mrs. Robin Howard. This resulted in more delays due to additional demands at threat, followed by Defendant Howard's apologies, but still no payment, nor equity materialized."

### E. Defendant Howard's assault weapons admission to Plaintiff.

In or around July 2011 in Defendant Howard's home, he opened his shoulder-high, free-standing gun safe, displaying his small cache of rifles, shotguns and handguns to Plaintiff. Plaintiff asked Defendant Howard about the location of a crate of ten SKS assault rifles he had seen when Howard purchased them in

Texas during the "Clinton Gun Ban", which Defendant Howard represented as heirlooms he bought to put away for the children he planned to have one day. More than a decade later, Plaintiff was curious about their absence from the gun safe, where they would easily fit.

Defendant Howard said he was unjustly persecuted by the government back then too, when the Hurst, Texas Police seized his crate of SKS ten rifles (under implausible circumstances) and he did not recover them under after the U.S. Bureau of Alcohol, Tobacco, Firearms & Explosives had run the serial numbers. He characterized this action against him as synonymous with "that Judge in Georgia", another unfair persecution by a government "out to get him".

When Plaintiff again asked where the ten SKS rifles were at that moment, Defendant Howard answered that he had sold them all and had made a tidy profit. Defendant Howard did not disclose in which State(s) he sold the weapons.

### F.   Defendant Howard's comment about a murder victim.

At cocktail hour, early in the production, Plaintiff was mixing gin & tonics for Defendant Howard and himself. A few drinks later, Defendant Howard confessed to Plaintiff that he was his "oldest *surviving* friend."

Plaintiff asked, "Oh, yeah? What happened to the last guy?"

Defendant Howard responded, "Remember Wade? He was murdered."

Plaintiff asked, "Who did it?"

Defendant Howard responded, "No one knows. He was shot through the chest with a hunting arrow."

"Wade" was Defendant Howard's hometown friend in the small L.D.S community of Blackfoot, Idaho. Population of approximately 12,000.

### G. Defendant Howard's alleged L.D.S. Temple Recommend.

Defendant Howard alleged that he possessed a "Temple Recommend" issued by the Church of Jesus Christ of Latter-Day Saints (L.D.S.), as stated in Plaintiff's Complaint [Doc. 35 ¶5], *"providing Plaintiff reason to have confidence that Defendant Howard was sincere in his motivations and practices."*

Although Plaintiff is not an L.D.S. member, he is familiar with what significance a "Temple Recommend" represents, in terms of those in possession of such a privilege being "fair and upright in all of their business dealings".

Nevertheless, the typical behavior Defendant Howard displayed to Plaintiff, such as smoking Plaintiff's cigarettes, drinking the wine, gin and rum until Plaintiff would complain of the excess, finishing the pot of coffee Plaintiff made before he could pour his own mug – as a daily annoyance.

This behavior was witnessed by Mr. Gerren Ard, Mrs. Robin Howard and Plaintiff innumerable times, in addition to the sleep-over parties with Defendant Howard's girlfriends that often delayed production.

While this is not uncommon behavior on a filming set or location, from what Plaintiff understands and believes, this alleged behavior would never earn anyone a Temple Recommend, therefore, Plaintiff alleges that Defendant Howard's Temple Recommend was fraudulently obtained and maintained, and used against Plaintiff as an instrument of fraud.

While a fraudulently maintained L.D.S. Temple Recommend is not necessarily unlawful, it does represent the breaking of a sacred covenant on the same level of any other act of perjury under an oath.

## 3. DEFENDANT HOWARD'S STATEMENTS
## BEFORE THIS HONORABLE COURT

This is excerpted from Defendants' Document 64, page 4, preserving the bizarre personal attack by Defendant Howard on Plaintiff. Plaintiff intends to use this at trial, should Defendants withdraw their document, or in the event that this honorable Court strikes their document as a violation of Federal Rule of Civil Procedure 11 – Plaintiff wishes this sworn statement to remain in the Record:

---

"Finally, and as a sidenote, Defendant Howard wishes to make the Court aware that based on his dealings with Plaintiff James Arnett over the last several years and his conduct in this lawsuit, Howard strongly suspects that Arnett has an undiagnosed and untreated mental illness. Howard is aware of one of Arnett's family members who has been diagnosed with paranoid schizophrenia (which runs in families), and Howard suspects that Arnett may also have that or another mental illness. If possible, Howard requests that this Court strongly urge or order Plaintiff to get an attorney as soon as possible and no longer file frivolous documents with the Court that Howard has to bear the expense of responding to.

Howard requests that the Court deny Plaintiff's Motion and award Howard his attorney's fees for having to respond to it."

---

It should be noted that Defendant Howard possesses no accreditation in psychiatry, nor post graduate or graduate degree, nor high school diploma, nor G.E.D. to presume to offer any psychiatric diagnosis or medical opinion of sufficient credibility to expect this honorable Court to accept it at face value, without any supporting documentation. His statements are merely a gratuitous personal attack on Plaintiff. Defendant Howard also personally demands that Plaintiff be sanctioned for having to respond to an allegation of a Title 18 USC §1512(b) violation without offering this honorable Court any kind of denial.

## 4. THE ORDER OF
## THE HONORABLE UNITED STATES
## DISTRICT JUDGE DAVID C. BURY

In the following Order [Doc. 9] of case 4:13-CV-00058-DCB, in the United States District Court for the District of Arizona, the honorable District Judge David C. Bury characterizes Defendant Howard in the following statements:

---

"A review of the record reflects that the United States Marshal attempted to serve the Defendants by certified mail, but the Complaint and Summons was returned as unclaimed. (Doc. 5.) The Marshal made three attempts to personally serve the Defendants, but the Defendant Howard was 'never home.'"

"The Court finds that in all likelihood Defendants are avoiding service."

"The service document in CV 12-311 TUC DCB reflects that the Defendant works at home, which further suggests that the inability by the Marshal to now serve the Defendant at his home address is an intentional evasion of service."

---

The referenced case (CV 12-311 TUC DCB) was this case, before it was moved into this Forum and assigned its current case number. The Record shows that Defendant Howard evaded service in this case too, for five months before the United States Marshal effected personal service upon him, prior to Defendant Howard's three separate evasions of the U.S. Marshals attempting Service upon him for the Ard v. Howard, et al case, still in the District of Arizona.

It is unlawful to evade a Federal Law Enforcement Officer, although Defendant Howard appears to be a somewhat dodgy individual in the eyes of the honorable United States District Judge David C. Bury.

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

Gerren Ard,

      Plaintiff,

v.

Benjamin Snow Howard, and Life Line Media, LLC.,

      Defendants.

CV 13-58 TUC DCB

**ORDER**

On June 28, 2013, this Court issued an Order for Plaintiff to show cause why Defendants have not been served in this case, within 120 days of the filing of the Complaint. Fed. R. Civ. P. 4(m). (Order OSC (Doc. 7)). The Court informed the Plaintiff, who proceeds *pro se* and *in forma pauperis*, that the case was subject to dismissal for failure to serve it.

In his Response to the OSC, Plaintiff complains that Defendants are avoiding service, and he appears to seek some form of alternative service, but does not propose anything specific. Because Plaintiff proceeds *in forma pauperis* the United States Marshal served Defendant by certified mail with a request for waiver of service, Fed. Rule 4(d), which was not accepted by the Defendant. The Marshal then attempted to personally serve Defendant Benjamin Snow Howard. This too failed.

A review of the record reflects that the United States Marshal attempted to serve the Defendants by certified mail, but the Complaint and Summons was returned as unclaimed. (Doc. 5.) The Marshal made three attempts to personally serve the Defendants, but the Defendant Howard was "never home." (Doc. 6). Because service has been unsuccessful under Rule 4(d) and Rule 4(e), Plaintiff may follow "state law for service . . . in the state

1  where the district court is located or where service is made." Rule 4(e)(1). Both Arizona and
2  Utah provide alternative means for serving a summons and complaint, when it is shown from
3  the efforts made to identify, locate and serve the party or circumstances that it is
4  impracticable to serve the defendant by certified mail or personally. Utah R. Civ. P.
5  4(d)(4)(A); Ariz. R. Civ. P. 4.1(k). The Court finds personal service is impracticable in this
6  case based on the multiple failed attempts by the Marshal to personally serve the Defendants.
7  The Court finds that in all likelihood Defendants are avoiding service. The Court finds that
8  Arizona's rule for alternative or substituted service would satisfy Utah law, which also
9  requires service of process by means reasonably calculated, under all the circumstances, to
10 apprise the interested parties of the pendency of the action to the extent reasonably possible
11 or practicable. Utah R. Civ. P. 4(d)(4)(B).

12        Under Arizona law, service may be accomplished in a manner, "other than by
13 publication, as the court, upon motion and without notice, may direct . . [so] that reasonable
14 efforts [are] undertaken by the party to assure that actual notice of the commencement of the
15 action is provided to the person to be served and, in any event, the summons and the pleading
16 to be served, as well as any order of the court authorizing an alternative method of service,
17 shall be mailed to the last known business or residence address of the person to be service."
18 Ariz. R. Civ. P. 4(k).

19        The Court liberally construes a *pro se* pleading liberally and affords a *pro se* plaintiff
20 the benefit of doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cir.
21 1988), *see also Bernhardt v Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) (liberal
22 construction applied to *pro se* pleadings applies to *pro se* motions as well). The Court
23 liberally construes Plaintiff's Response to the OSC as a request for alternative service and
24 orders the United States Marshal to serve the Defendants by mailing the copies of the
25 Complaint, Summons and this Order to the Defendants at their last known addresses.
26
27
28                                          2

Additionally, copies of the service documents for Defendant Life Line Media. LLC shall be mailed to the address for Defendant Benjamin Snow Howard, as its authorized agent.

Also, this Court recently transferred venue in another case, CV 12-311 TUC DCB, against these same Defendants to Utah. It appears that Defendant Howard authored a book, "How to Let Go of Life's Trauma," and hired James Arnett, plaintiff in CV 12-311 TUC DCB, to produce and direct a film production of the book. Defendant Howard hired Plaintiff Ard to create cover art, web design, a logo for LifeLine Media, LLC, and motion graphics for the film. Both Plaintiffs allege Defendant failed to pay them for work they did related to the book/movie project. The two actions involve separate contractual agreements. Plaintiff Arnett asked that the two cases be consolidated, but his action was transferred for a change of venue without consolidation. The service documents for CV 12-311 TUC DCB reflect that the United States Marshal was able to personally serve Defendant Benjamin Snow Howard, individually, and as the authorized agent for Defendant LifeLine Media, at the same street address used by Plaintiff Ard for service. The service document in CV 12-311 TUC DCB reflects that the Defendant works at home, which further suggests that the inability by the Marshal to now serve the Defendant at his home address is an intentional evasion of service.

In an effort to ensure the Defendant receives actual notice of this new and potentially related action, the Court directs the United States Marshal to also mail copies of the Summons, Complaint and this Order for the Defendants to the attorney representing them in the case brought by Plaintiff Arnett: Scott F. Gibson.

**Accordingly,**

**IT IS ORDERED** that alternative service is ordered to be completed by the United States Marshal, who shall file a notice with the Court upon service being completed as to both Defendants.

3

**IT IS FURTHER ORDERED** that the United States Marshal shall mail the Summons and Complaint and a copy of this Order for both Defendants to 3580 N. 2225 E. Layton, Utah 84040, and also mail Defendant LifeLine Media's copies to it at P.O. Box 223, Huntsville, Utah 84317-0223.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall mail Defendants' copies of the Complaint, Summons, and this Order to: Scott F. Gibson, Davis Miles McGuire Gardner PLLC, 80 E. Rio Salado Pkway., Ste. 401, Tempe AZ 85281.

**IT IS FURTHER ORDERED** that all costs of service shall be advanced by the United States, and upon completing service, the United States Marshal shall file an affidavit regarding the cost of service in this case.

**IT IS FURTHER ORDERED** that Defendants, upon being served, shall answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

DATED this 6th day of August, 2013.

David C. Bury
United States District Judge

4

## CERTIFICATE OF SERVICE

I hereby certify that on this day, Saturday the 31st day of August 2013, I mailed the preceding REPLY and MEMORANDUM to the Office of the Clerk of the United States Court for the District of Utah at:

> U.S. Court for the District of Utah
> 350 South Main Street
> Salt Lake City, Utah 84101

I also hereby certify that I have mailed these identical materials via United States Postal Service, to the following Attorneys for Defendants Howard, et al.:

> TYCKSEN & SHATTUCK, LLC
> Bryan J. Stoddard
> 12401 S. 450 E., Suite E-1
> Draper, UT 84020

James Arnett, In Propria Persona (I.F.P.)
9288 N. Monmouth Court
Tucson, Arizona 85742
Telephone: (520)304-0129
Email: jamesarnettaz@gmail.com