IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JAMES ARNETT,<br><br>                    Plaintiff,<br><br>v.<br><br>BENJAMIN SNOW HOWARD;<br>LIFELINE MEDIA LLC, a Utah entity;<br>NATIONWIDE AFFORDABLE<br>HOUSING, a Texas corporation; and the<br>BEN HOWARD TRUST, an Idaho trust,<br><br>                    Defendants. | MEMORANDUM DECISION AND<br>ORDER ON PENDING MOTIONS<br><br><br><br>Case No. 2:13-CV-591 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff James Arnett's ("Arnett") first Motion for

Leave to Amend;[1] Defendants Benjamin Snow Howard ("Howard"), Lifeline Media LLC

("Lifeline"), Nationwide Affordable Housing ("NAH"), and the Ben Howard Trust's ("the

Trust") (collectively, "Defendants") Motion to Dismiss;[2] Plaintiff's Motion for Preliminary

Injunctive Relief and Temporary Restraining Order;[3] and Plaintiff's second Motion for Leave to

Amend.[4] For the reasons set forth below, the Court will deny Plaintiff's first Motion for Leave

to Amend, grant in part and deny in part Defendants' Motion to Dismiss, deny Plaintiff's Motion

for Preliminary Injunctive Relief and Temporary Restraining Order, and grant in part and deny in

part Plaintiff's second Motion for Leave to Amend.

---

[1] Docket No. 57.

[2] Docket No. 59.

[3] Docket No. 65.

[4] Docket No. 71.

## I. BACKGROUND

In or around February 2011, Arnett and Howard began discussing a potential project to create a movie and audio book based on a live presentation that Howard had performed numerous times in Utah, titled *Overcoming Life's Trauma*. Initially, Howard offered to give Arnett the Director and Producer roles and to make Arnett a major equity partner in the project. At that time, Arnett's schedule did not allow him to begin the project.

In or around May 2011, Howard contacted Arnett again about the project. This time, Howard's offer also included payment of all of Arnett's expenses including rent for his work studio in Tucson, meals, a telephone, lodging, a vehicle, per diem for gas, cigarettes, and round-trip airfare from Tucson to Salt Lake City. Arnett accepted Howard's offer but the parties did not create a written agreement. On June 5, 2011, Arnett flew to Salt Lake City on a ticket booked by Howard.

Once Arnett arrived at Howard's home, they began discussing the project. Howard explained he believed he was commissioned by God to create the project and showed Arnett a temple recommend from the Church of Jesus Christ of Latter-Day Saints ("LDS Church").

Arnett completed the audio book and television commercial within a few weeks. Shortly thereafter, Arnett and Howard began filming the full-length movie. The relationship between Arnett and Howard soured over the course of the next two months.

Arnett repeatedly asked Howard to assign an equity partner interest in the project, but Howard refused. To incentivize Arnett to continue working, Howard gave Arnett a motorcycle as a bonus. Howard told Arnett that the motorcycle was a 1995 Suzuki Intruder that was in good condition, and that it was worth more than $3,000.

By late September 2011, Arnett had completed the video portion of the film. Howard's Utah facilities lacked the audio equipment necessary to complete the audio portion, so Arnett traveled back to Arizona on the motorcycle to complete the project. While driving home, the motorcycle broke down due to electrical problems.

In December 2011, Howard contacted Arnett to arrange a trip to Arizona to finalize the project. But at that time Arnett was facing eviction and was unable to work on the project. Howard completed a small portion of the film on his own and uploaded it to the Internet. Arnett demanded that Howard cease using the film until Arnett had been compensated. Howard subsequently registered the materials for copyright protection, without listing Arnett as a copyright holder.

Arnett originally filed suit in the United States District Court for the District of Arizona. After Arnett amended his complaint and the parties fully briefed a motion to dismiss, the court transferred the case to this Court.

## II. PLAINTIFF'S FIRST MOTION FOR LEAVE TO AMEND

On July 30, 2013, Plaintiff first moved for leave to amend his First Amended Complaint to add three claims and to provide additional allegations and evidence. On September 11, 2013, Plaintiff filed a second Motion for Leave to Amend wherein he withdrew the initial Motion for Leave to Amend. Therefore, the Court will not consider the initial Motion. The second Motion for Leave to Amend will be discussed below.

## III.  MOTION TO DISMISS

On a 12(b)(6) motion to dismiss, the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."[5]  "[C]ourts must consider the complaint in its entirety, . . . [including] documents incorporated into the complaint by reference . . . ."[6]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[7]  But, the Court "will disregard conclusory statements."[8]  "We construe a pro se litigant's pleadings liberally."[9]  "[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[10]  Nonetheless, "it is not 'the proper function of the district court to assume the role of advocate for the pro se litigant.'"[11]  Courts "will not

---

[5] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

[6] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[8] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

[9] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[10] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[11] *Cathey v. Jones*, 505 F. App'x 730, 733 (10th Cir. 2012) (unpublished) (quoting *Hall*, 935 F.2d at 1110).

supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[12]

Defendants argue that Plaintiff fails to state a claim for each of his four claims and that Plaintiff fails to allege facts demonstrating the involvement of Lifeline, NAH, or the Trust. Plaintiff contends that each claim is sufficiently pleaded and that Lifeline, NAH, and the Trust are alter egos of Howard, which he used as instrumentalities of his alleged misconduct.

A.    BREACH OF CONTRACT

The parties dispute whether Arnett performed services or provided goods, and therefore whether the Uniform Commercial Code ("UCC") governs the parties' transaction. Defendants also argue that Plaintiff fails to allege the existence of a contract because the parties had not decided upon a definitive price.

*1. Goods or Services*

Chapter 2 of the UCC governs transactions in goods, not services.[13] To determine whether a transaction is in goods or services, Utah courts apply the predominant purpose test.[14] Under that test, "[i]f service predominates, and the transfer of title to personal property is only an incidental feature of the transaction, the contract does not fall within the ambit of chapter 2 [of the UCC]."[15] Plaintiff argues that he provided Howard with the following goods under the

_____

[12] *Whitney v. State of N.M.*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[13] Utah Code Ann. § 70A-2-102 (West 2004); *Beehive Brick Co. v. Robinson Brick Co.*, 780 P.2d 827, 832 (Utah Ct. App. 1989).

[14] *Utah Local Gov't Trust v. Wheeler Mach. Co.*, 199 P.3d 949, 956 (Utah 2008) (citing *Beehive Brick Co.*, 780 P.2d at 832).

[15] *Beehive Brick Co.*, 780 P.2d at 832.

agreement: a three-hour motion picture, an audio book, and a television commercial. But Plaintiff's description of his role in the transaction focuses largely on the production work of editing, directing, and filming. The Court finds that Arnett's services predominated the transaction and the transfer of title in the goods ultimately produced through his services was an incidental feature of the transaction. Therefore, the transaction is governed by common law, not the UCC.

## 2. *Existence of a Contract*

"A condition precedent to the enforcement of any contract is that there be a meeting of the minds of the parties, which must be spelled out, either expressly or impliedly, with sufficient definiteness to be enforced."[16] "An agreement cannot be enforced if its terms are indefinite or demonstrate that there was no intent to contract."[17] "[W]here there was simply some nebulous notion in the air that a contract might be entered into in the future, the court cannot fabricate the kind of contract the parties ought to have made and enforce it."[18] "[W]hen parties have not agreed on a reasonable price or a method for determining one, 'the agreement is too indefinite and uncertain for enforcement.'"[19] "The terms of a contract are reasonably certain if they

---

[16] *Valcarce v. Bitters*, 362 P.2d 427, 428 (Utah 1961).

[17] *Richard Barton Enters. v. Tsern*, 928 P.2d 368, 373 (Utah 1996).

[18] *Valcarce*, 362 P.2d at 428–29.

[19] *Richard Barton Enters.*, 928 P.2d at 373 (quoting Corbin on Contracts § 4.3, at 568 (rev. ed. 1993)).

provide a basis for determining the existence of a breach and for giving an appropriate remedy."[20]

As alleged by Arnett, Howard's initial offer in or around early February 2011 contained an indefinite price term. At that time, Howard allegedly offered to make Arnett a major equity partner and to credit Arnett as Director and Producer of the projects.

In or around late May 2011, however, Arnett alleges that Howard extended an offer with more definite terms. At that time, Arnett allegedly offered to make Arnett a major equity partner, to credit Arnett as Director and Producer of the projects, and to pay all of Arnett's expenses, such as studio rent, lodging, meals, a vehicle, airfare, cigarettes, and more. Arnett accepted this offer. Although the percentage share of Arnett's major equity partnership remains unclear, the agreement to pay Arnett's expenses provides the Court with a basis for determining the existence of a breach and for crafting a remedy.

Based on the foregoing, the Court finds that Plaintiff successfully pleaded the existence of a contract and will deny Defendant's Motion as to the breach of contract claim.

B.    FIRST FRAUD CLAIM

To state a claim for fraud, Plaintiff must allege, with particularity,

(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance

---

[20] *Cea v. Hoffman*, 276 P.3d 1178, 1185 (Utah Ct. App. 2012) (quoting Restatement (Second) of Contracts § 33).

of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[21]

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[22] "As interpreted, the rule requires a plaintiff to identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequences thereof."[23]

Arnett alleges that Howard failed to inform Arnett of Howard's involvement in another civil action. Arnett also contends that Howard misrepresented his honest character by claiming to be a temple-worthy member of the LDS Church by showing Arnett a fraudulently obtained temple recommend. Defendants, on the other hand, argue that Arnett failed to plead each element of fraud, much less satisfy the heightened pleading standard for fraud claims imposed by Rule 9(b).

### 1. Howard's Failure to Disclose Separate Suit

Plaintiff asserts that Howard was alleged to be a tortfeasor in the United States District Court for the Northern District of Georgia, which caused devaluation of Plaintiff's ownership interest in the parties' film project. Defendants argue that this omission is irrelevant to the transaction at issue in this case and that Plaintiff failed to allege any other statements that could state a claim for fraud.

---

[21] *Daines v. Vincent*, 190 P.3d 1269, 1279 (Utah 2008) (quoting *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003)).

[22] Fed. R. Civ. P. 9(b).

[23] *Karacand v. Edwards*, 53 F. Supp. 2d 1236, 1241 (D. Utah 1999) (citing *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1251 (10th Cir. 1997)).

The Utah Supreme Court has recognized that fraud may be based on an "omission of a material fact when there is a duty to disclose."[24] Determining whether a duty exists "begins with an examination of the legal relationships between the parties, followed by analysis of the duties created by these relationships."[25] "[T]he burden of establishing [a duty to disclose] is on the party alleging the fraud . . . ."[26] "Such a duty will not be found where the parties deal at arm's length, and where the underlying facts are reasonably within the knowledge of both parties."[27]

Arnett has not alleged facts to support a finding that Howard had a duty to disclose allegations against him in unrelated federal court proceedings in Georgia. In fact, Arnett's allegations indicate that the parties had arm's length discussions about their transaction. Moreover, Plaintiff's First Amended Complaint includes an excerpt of one of the orders issued by the federal court in Georgia, which indicates that the proceedings were ongoing well beyond the parties' negotiations in the instant case. Additionally, even if Arnett had successfully pleaded a fraud claim, the economic loss rule likely bars this claim.

Based on the foregoing, the Court is unable to find that Plaintiff has met his burden to plead facts demonstrating the existence of a duty to disclose the allegations against him in a Georgia court while negotiating a separate transaction with Defendant.

---

[24] *Taylor v. Gasor, Inc.*, 607 P.2d 293, 294 (Utah 1980) (citing *Elder v. Clawson*, 384 P.2d 802, 805 (Utah 1963)).

[25] *Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 286 (Utah 2006) (quoting *Loveland v. Orem City Corp.*, 746 P.2d 763, 766 (Utah 1987)).

[26] *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1329 (Utah 1990) (citation omitted).

[27] *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980).

*2. Statement Concerning Defendant's Trustworthiness*

Arnett argues that Howard fraudulently misrepresented his eligibility to attend the LDS Church's temple in order to assure Arnett that Howard was trustworthy and had entered into the parties' transaction honestly.

Arnett has not met his burden to state with particularity the circumstances constituting fraud. Arnett asserts—without factual support—that Howard fraudulently obtained a temple recommend. Rule 9(b)'s particularity requirement demands more than Arnett's conclusory assertion. Without additional facts demonstrating that Howard fraudulently obtained the temple recommend, the Court is unable to conclude that the statement was false, or that Howard made this statement with knowledge of its falsity. Based on the foregoing, the Court will grant Defendants' Motion as to this claim.

C.      SECOND FRAUD CLAIM

Arnett alleges that Howard gave Arnett a motorcycle as a bonus incentive to continue working on the project until Howard could pay Arnett according to the parties' oral agreement. Arnett asserts a second fraud claim arising from this bonus because Arnett alleges that Howard misrepresented the motorcycle's "value, condition, and year of manufacture."[28] First, Arnett alleges that Howard claimed the motorcycle was manufactured in 1995, when it was actually manufactured in 1994. Second, Arnett alleges that Howard claimed the motorcycle was in good condition when it was not. Specifically, the motorcycle allegedly required costly electromechanical repairs and the brake pads were worn down so severely that the motorcycle

---

[28] Docket No. 35, at 22.

was dangerous to drive. Third, the cost of these repairs was allegedly greater than the value of the motorcycle, effectively rendering the motorcycle valueless.

As explained above, to state a claim for fraud, plaintiffs must allege, with particularity, facts demonstrating the materiality of the statement, and that the defendant knew the statement was false. Arnett does not allege such facts regarding Howard's representations about the motorcycle's value, condition, or year of manufacture. Arnett does not allege that Howard knew the motorcycle's brake pads were in poor condition. Consequently, Arnett also does not allege facts that demonstrate Howard knew the motorcycle was effectively valueless. Finally, Arnett does not allege facts that demonstrate the materiality of the fact that the motorcycle was manufactured in 1994, rather than 1995. Therefore, the Court will dismiss Plaintiff's claim for fraud arising from the motorcycle bonus.

D.      ENDANGERMENT

Plaintiff asserts an endangerment claim based on an Arizona criminal statute. This claim arises from Plaintiff's allegation that the motorcycle Defendant provided in Utah suffered from certain defects. This requires the Court to determine what law applies.

Utah and Arizona both follow the most significant relationship test described in the *Restatement (Second) Conflict of Laws*.[29] Under that test, courts apply the substantive law of the state that has the most significant relationship to the transaction and parties. In so doing, courts consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place

---

[29] *Am. Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 190 (Utah 1996); *Aries v. Palmer Johnson, Inc.*, 735 P.2d 1373, 1380–81 (Ariz. Ct. App. 1987).

of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."[30]

Utah has the most significant relationship to the transaction at issue in this case. Most importantly, it appears that performance of the contract took place entirely in Utah, the location of the subject matter of the contract was in Utah, and the allegedly defective motorcycle was given to Plaintiff in Utah. The remaining factors do not weigh in favor of one forum over the other. The parties formed and negotiated the contract over the phone while Plaintiff was in Arizona and Defendant was in Utah. Similarly, the Defendant and his business reside in Utah and Plaintiff and his business reside in Arizona. The Court finds that Utah has the most significant relationship to the transaction at issue in this case and therefore Utah law governs the dispute.

Plaintiff argues that Utah law provides a basis for his endangerment claim. Utah does have a similar criminal statute prohibiting reckless endangerment.[31] But, as Utah courts have acknowledged, "[w]hen a statute makes certain acts unlawful and provides criminal penalties for such acts, but does not specifically provide for a private right of action, we generally will not create such a private right of action."[32] Utah's criminal statute does not specifically provide for a private right of action. Therefore, the Court will dismiss Plaintiff's endangerment claim.

---

[30] Restatement (Second) Conflict of Laws § 188.

[31] Utah Code Ann. § 76-5-112 (2004) ("(1) A person commits reckless endangerment if, under circumstances not amounting to a felony offense, the person recklessly engages in conduct that creates a substantial risk of death or serious bodily injury to another person. (2) Reckless endangerment is a class A misdemeanor.").

[32] *Youren v. Tintic Sch. Dist.*, 86 P.3d 771, 773 (Utah Ct. App. 2004) (citing *Milliner v. Elmer Fox & Co.*, 529 P.2d 806, 808 (Utah 1974)).

E.       IMPROPERLY NAMED DEFENDANTS

Plaintiff asserts all claims against Lifeline, NAH, and the Trust, in addition to Howard. Defendants argue that Plaintiff failed to plead facts demonstrating the involvement of Lifeline, NAH, or the Trust in the conduct giving rise to this suit and therefore these entities should be dismissed.  Plaintiff contends that Howard was acting as the agent of Lifeline, NAH, and the Trust and that these entities were Howard's alter egos.

The Court need not reach the issue of whether these entities were alter egos of Howard. At the motion to dismiss stage, the Court views well-pleaded facts in the light most favorable to Plaintiff.  Plaintiff alleges that Lifeline paid Plaintiff an occasional petty cash stipend according to the parties' agreement.  Plaintiff also appears to allege that Lifeline's website continues to advertise Howard's books and seminar events, using Plaintiff's work.  Also, Howard allegedly informed Plaintiff that NAH was funding the project.  Based on these allegations, NAH and Lifeline appear to have been involved in some aspects of the conduct giving rise to this suit. Therefore, the Court is unable to conclude at this stage of the suit that Lifeline and NAH should be dismissed because of their lack of involvement in the parties' transaction.

According to Plaintiff's allegations, however, the Trust was only involved in the portion of the transaction in which Plaintiff received a motorcycle as a bonus.  As explained above, this claim will be dismissed.  Because Plaintiff has not otherwise alleged the Trust's involvement, the Court will dismiss the Trust from the case.

## IV. TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION

Plaintiff moves for a temporary restraining order and preliminary injunction against Defendants to prevent them from selling, distributing, or exhibiting the film, audio book, or television commercial until this suit has been resolved.

Issuance of temporary restraining orders and preliminary injunctions are governed by the same standard.[33]

> A party seeking a preliminary injunction must prove that *all four* of the equitable factors weigh in its favor: specifically, prove that "(1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest."[34]

"A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule."[35]

"Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal."[36]

"[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be

---

[33] *See Pines v. EMC Mortg. Corp.*, No. 2:08-CV-137 TC, 2008 WL 4844751, at *1 (D. Utah Nov. 7, 2008).

[34] *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013) (quoting *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009)).

[35] *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

[36] *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).

considered."[37]  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."[38]  "[A] plaintiff satisfies the irreparable harm requirement by demonstrating 'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.'"[39]  "It is also well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages."[40]

Plaintiff seeks only monetary damages and does not allege a harm that cannot be compensated after trial by monetary damages.  The Court finds that Plaintiff has not satisfied his burden to demonstrate that irreparable harm will occur if a temporary restraining order or a preliminary injunction is not issued.  Therefore, the Court will deny Plaintiff's requests for a temporary restraining order and preliminary injunction.

The Court also notes that both parties request attorneys' fees in the briefing relating to this Motion.  The Court will deny both requests.

## V.  SECOND LEAVE TO AMEND

Plaintiff seeks leave to file an amended complaint, in order to add claims for unjust enrichment and copyright infringement.  Defendants argue that leave should not be granted because Plaintiff's request was procedurally improper, an amendment would prejudice Defendants, and Plaintiff's proposed amendments would be futile.

---

[37] *Id.* at 1260.

[38] *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003)).

[39] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (quoting *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)).

[40] *Schrier*, 427 F.3d at 1267 (quoting *Heideman*, 348 F.3d at 1188).

Where, as in this case, a motion under Rule 12(b) has been served, Federal Rule of Civil Procedure 15(a)(2) dictates that "a party may amend its pleading only with the opposing party's written consent or the court's leave."[41] The Rule specifies that "[t]he court should freely give leave when justice so requires."[42] "The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on the merits rather than on procedural niceties.'"[43] The Court may refuse to grant leave to amend, however, where it finds evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[44]

## A.   PROCEDURALLY IMPROPER

Defendants argue that Plaintiff should not be granted leave to amend because Plaintiff's second request for leave to amend was not filed in the format dictated by local rule DUCivR 7-1(a)(1). Defendants assert that Plaintiff simply filed a proposed amended complaint, rather than filing a motion stating the grounds for relief and a proposed amended complaint attached as an exhibit, in accordance with the local rule.

---

[41] Fed. R. Civ. P. 15(a)(2).

[42] *Id.*

[43] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[44] *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"[P]ro se status does not relieve [a party] of the obligation to comply with procedural rules,"[45] including local rules.[46]  As discussed above, Plaintiff initially requested leave to amend on July 30, 2013.  On September 11, 2013, Plaintiff moved to withdraw the prior request for leave to amend and renew the request based upon a proposed Second Amended Complaint that was attached to the Motion.  Although the proposed Second Amended Complaint is not labeled as an exhibit and the Motion stating grounds for relief is lean, the Court finds that Plaintiff's second Motion for Leave to Amend substantially complies with the local rules.  Therefore, the Court will not deny leave to amend based on procedural defects.

B.      PREJUDICE

Defendants argue that the substantial attorney's fees associated with defending against an amended complaint would be prejudicial and therefore Plaintiff's request for leave to amend should be denied.

"The court should freely give leave [to amend] when justice so requires."[47]  "Liberality, is, however, limited by prejudice the opposing party might bear in responding to the amended pleading . . . ."[48]  "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'"[49]  This generally occurs

---

[45] *Klein v. Wings Over the World Ministries*, No. 2:12-CV-23 DN, 2013 WL 5775773, at *3 (D. Utah Oct. 25, 2013).

[46] *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).

[47] Fed. R. Civ. P. 15(a)(2).

[48] *Donnell v. Taylor*, No. 2:09CV00127 TS, 2010 WL 3200239, at *2 (D. Utah Aug. 12, 2010).

[49] *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)).

"when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."[50]

The Court notes that granting leave to amend will likely cause Defendants to incur additional expenses defending this suit. The Court also acknowledges that Defendants have already filed two motions to dismiss in this case. But Defendants have not yet filed an answer, discovery has not yet opened, and Plaintiff's proposed amendment seeks to add facts and substantive claims that arise from the subject matter set forth in the original complaint. In light of Plaintiff's pro se status, and the substantive nature of the proposed amendments, the Court finds that amending the Complaint at this time would not unduly prejudice Defendants.

C.      FUTILITY

Defendants also argue that amending the Complaint with the proposed Second Amended Complaint would be futile because both claims Plaintiff seeks to add would not survive a motion to dismiss. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[51] "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim . . . ."[52]

The four causes of action raised in the First Amended Complaint and discussed above remain largely unchanged in the proposed Second Amended Complaint. Plaintiff has also added

---

[50] *Id.*

[51] *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (quoting *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)).

[52] *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

claims for unjust enrichment and copyright infringement. These two claims are the principal basis for Plaintiff's request for leave to amend.

### 1. Unjust Enrichment

Plaintiff asserts that Defendants have been unjustly enriched by Plaintiff's work on the movie, audio book, and advertisement. Specifically, Plaintiff argues that Howard filed a copyright claim for the movie, audio book, and advertisement, and used them for commercial purposes without compensating Arnett.

Parties asserting an unjust enrichment claim must demonstrate that "(1) a benefit was conferred, (2) the conferee appreciated or had knowledge of the benefit, and (3) the conferee accepted or retained the benefit under circumstances making it inequitable to retain the benefit without making payment of its value."[53] Ordinarily "recovery under an unjust enrichment theory is available only when 'no enforceable written or oral contract exists.'"[54]

Arnett alleges that he entered into a contract with Howard. But, as discussed above, Defendants argue that the terms are too uncertain to create an enforceable agreement. At this stage, the Court is unable to find that a contract exists as a matter of law. Therefore, the Court finds that amending the Complaint to add Arnett's unjust enrichment claim would not be futile.

### 2. Copyright Infringement

Plaintiff asserts a copyright infringement claim, alleging that Defendants fraudulently obtained a copyright for Plaintiff's work.

---

[53] *Thorpe v. Washington City*, 243 P.3d 500, 507 (Utah Ct. App. 2010).

[54] *Wood v. Utah Farm Bureau Ins. Co.*, 19 P.3d 392, 396 (Utah Ct. App. 2001) (quoting *Bailey-Allen Co. Inc. v. Kurzet*, 876 P.2d 421, 425 (Utah Ct. App. 1994)).

"In order to prevail on its copyright infringement claim, Plaintiff must establish both: (1) that it possesses a valid copyright and (2) that Defendants 'copied' protectable elements of the copyrighted work."[55]  Copyright ownership vests initially in the work's author.[56]  "In the case of a work made for hire, the employer . . . for whom the work was prepared is considered the author . . . , unless the parties have agreed otherwise in a written instrument signed by them . . . ."[57]

Central to Plaintiff's copyright infringement claim is the nature of Plaintiff's employment.  Defendants argue that Plaintiff does not possess a valid copyright in the movie, audio book, or commercial because Plaintiff performed work for hire and created the materials within the scope of his employment.  Plaintiff contends that because there was no employment agreement between the parties, Plaintiff's employment was not work for hire and Plaintiff retained the copyright for the materials he created.

> A 'work made for hire' is--
> (1) a work prepared by an employee within the scope of his or her employment; or
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, answer material for a test, or as an atlas, if the parties agree in a written instrument signed by them that the work shall be considered a work made for hire.[58]

The Supreme Court has interpreted this statutory language to mean that "a work for hire can arise through one of two mutually exclusive means, one for employees and one for

---

[55] *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996) (footnote omitted).

[56] 17 U.S.C. § 201(a) (2012).

[57] *Id.* § 201(b).

[58] *Id.* § 101.

independent contractors, and ordinary canons of statutory interpretation indicate that the classification of a particular hired party should be made with reference to agency law."[59] However, as this Court has recognized, partners are typically not considered employees of the partnership unless, for example, the partners are not equal and have overlapping duties.[60]

Arnett's allegations provide some support for concluding that Arnett was Howard's employee, under agency law principles. Namely, Arnett alleges numerous facts indicating that Howard exercised control over Arnett's work and the materials produced. Nonetheless, the Court is unable to conclude at this stage of the litigation that Arnett's work falls under the work for hire doctrine. Arnett alleges that Howard offered to make him a "major equity partner"[61] in the project, and Arnett's allegations indicate that the two men had separate duties. Viewing the facts in the light most favorable to Arnett, the Court cannot foreclose the possibility that Arnett and Howard formed a partnership. Based on the foregoing, the Court concludes that Defendants have failed to demonstrate the futility of amending the Complaint to add Plaintiff's copyright infringement claim.

## VI. SUMMARY

The Court will grant leave for Plaintiff to file a new complaint consistent with this Order. In summary, Plaintiff may reassert the breach of contract claim and assert claims for unjust

---

[59] *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 743–44 (1989).

[60] *Heimerdinger v. Collins*, No. 2:07CV00844 DN, 2009 WL 1743764, at *3 (D. Utah June 18, 2009).

[61] Docket No. 71, at 4.

enrichment and copyright infringement.  All other claims are dismissed and should not be repleaded.

## VII.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Plaintiff's first Motion for Leave to Amend (Docket No. 57) is DENIED.  It is further

ORDERED that Defendants' Motion to Dismiss (Docket No. 59) is GRANTED IN PART AND DENIED IN PART.  It is further

ORDERED that Plaintiff's Motion for Preliminary Injunctive Relief and Temporary Restraining Order (Docket No. 65) is DENIED.  It is further

ORDERED that Plaintiff's second Motion for Leave to Amend (Docket No. 71) is GRANTED IN PART AND DENIED IN PART.

The Plaintiff is ordered to file an amended complaint consistent with this Order, within thirty (30) days.

DATED this 21st day of March, 2014.

BY THE COURT:

_____
TED STEWART
United States District Judge